# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### Case No. 1:24-cv-24669-DPG

**Leigh M. Rothschild**, an individual citizen of
Florida, and **Analytical Technologies, LLC**, a
Wyoming company,

        Plaintiffs,

vs.

**Starbucks Corporation**, a Washington
corporation, and **Rachel Lamkin**, an
individual citizen of California,

        Defendants.

 

## DEFENDANT STARBUCKS CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM, AND ANTI-SLAPP MOTION

Daniel B. Rogers
Lori-Ann Ridley
SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
(305) 358-5171
drogers@shb.com
lridley@shb.com

***Counsel for Defendant Starbucks Corporation***

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ................................................................................ 1

LEGAL STANDARD............................................................................................................... 4

I.      This Court Lacks Personal Jurisdiction Over Starbucks....................................... 5

II.     Starbucks Cannot Be Held Liable for Attorney Lamkin's Statement to Bloomberg. ........ 7

III.    Plaintiffs' Claims Are Barred by Florida's Litigation Privilege........................................ 9

        A.      The Absolute Litigation Privilege Bars Plaintiffs' Claims. ................................... 9

        B.      Alternatively, the Qualified Litigation Privilege Bars Plaintiffs' Claims............. 10

IV.     Rothschild Does Not and Cannot Plead a Viable Defamation Claim.............................. 12

        A.      The Statement at Issue Is True, Not False. ........................................................... 12

        B.      Rothschild is a Limited Public Figure, and He Cannot Establish Malice............. 16

V.      Plaintiffs' Other Claims Should Be Dismissed................................................................ 17

        A.      The Single Publication Rule Bars the Non-Defamation Claims........................... 17

        B.      Alternatively, the Non-Defamation Claims Fail to State a Claim. ....................... 18

VI.     The Complaint Suffers from Other Problems. ................................................................. 19

VII.    Anti-SLAPP Motion to Dismiss and For Attorneys' Fees. ............................................. 20

CONCLUSION...................................................................................................................... 20

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

*AIDS Healthcare Foundation, Inc. v. Carrel*,
    2016 WL 11528922 (S.D. Fla. June 29, 2016) ...................................................9

*Alternate Energy Corp. v. Redstone*,
    328 F. Supp. 2d 1379 (S.D. Fla. 2004)........................................................... 6-7

*Alvi Armani Med., Inc. v. Hennessey*,
    629 F. Supp. 2d 1302 (S.D. Fla. 2008).............................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................5

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................5, 18

*Bongino v. Daily Beast Co.*,
    477 F. Supp. 3d 1310 (S.D. Fla. 2020)................................................ 13, 17-20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..........................................................................................6

*Clemente v. Horne*,
    707 So. 2d 865 (Fla. 3d DCA 1998) ...............................................................18

*Cramer v. State of Fla.*,
    117 F.3d 1258 (11th Cir. 1997)........................................................................19

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..........................................................................................5

*Dapeer v. Neutrogena Corp.*,
    95 F. Supp. 3d 1366 (S.D. Fla. 2015)..............................................................20

*Davis v. Bailynson*,
    268 So. 3d 762 (Fla. 4th DCA 2019) ................................................................9

*Davis v. Coca-Cola Bottling Co.*,
    516 F.3d 955 (11th Cir. 2008)..........................................................................19

*De La Campa v. Grifols Am., Inc.*,
    819 So. 2d 940 (Fla. 3d DCA 2002) ...............................................................18

*Della-Donna v. Nova University, Inc.*,
  512 So. 2d 1051 (Fla. 4th DCA 1987) .......................................................................... 9-10

*DelMonico v. Traynor*,
  116 So. 3d 1205 (Fla. 2013)......................................................................................... 10-11

*Del Pilar v. DHL Global Customer Solutions (USA), Inc.*,
  993 So. 2d 142 (Fla. 1st DCA 2008)...................................................................................8

*Elandia Intern., Inc. v. Ah Koy*,
  690 F. Supp. 2d 1317 (S.D. Fla. 2010)..............................................................................14

*Epperson v. Rupp*,
  157 So. 2d 537 (Fla. 3d DCA 1963) ...................................................................................8

*Ethyl Corp. v. Balter*,
  386 So. 2d 1220 (Fla. 3d DCA 1980) .......................................................................... 18-19

*Fridovich v. Fridovich*,
  598 So. 2d 65 (Fla. 1992)......................................................................................... 11, 17

*Gill as Next Friend of K.C.R. v. Judd*,
  941 F.3d 504 (11th Cir. 2019)..............................................................................................5

*Giuliani v. NCL (Bahamas) Ltd.*,
  558 F. Supp. 3d 1230 (S.D. Fla. 2021)........................................................................... 4-5

*Gursky Ragan, P.A. v. Ass'n of Poinciana Villages, Inc.*,
  314 So. 3d 594 (Fla. 3d DCA 2020) ..................................................................................11

*Harbaugh v. Greslin*,
  436 F. Supp. 2d 1315 (S.D. Fla. 2006)...........................................................................6, 9

*Jackson v. BellSouth Telecoms.*,
  372 F.3d 1250 (11th Cir. 2004)............................................................................................9

*Jews for Jesus, Inc. v. Rapp*,
  997 So. 2d 1098 (Fla. 2008)...............................................................................................12

*Keep Santa Rosa Beautiful Inc. v. Butterflies in Motion, Inc.*,
  2022 WL 19078118 (N.D. Fla. Dec. 5, 2022),
  *adopted*, 2023 WL 2561786 (N.D. Fla. Mar. 17, 2023)....................................................19

*Keller v. Miami Herald Pub. Co.*,
  778 F.2d 711 (11th Cir. 1985)......................................................................................13, 16

iv

*LeGrande v. Emmanuel,*
  889 So. 2d 991 (Fla 3d DCA 2004) ......................................................................18

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,*
  639 So. 2d 606 (Fla. 1994) ..........................................................................9, 11

*Levine v. McLeskey,*
  881 F. Supp. 1030 (E.D. Va. 1995),
  *aff'd in relevant part*, 164 F.3d 210 (4th Cir. 1998) ..........................................15

*Lipsig v. Ramlawi,*
  760 So. 2d 170 (Fla. 3d DCA 2000) ..................................................................8

*Llauro v. Tony,*
  470 F. Supp. 3d 1300 (S.D. Fla. 2020) ..............................................................14

*Madara v. Hall,*
  916 F.2d 1510 (11th Cir. 1990 ...................................................................... 6-7

*Magnum Constr. Mgmt., LLC v. WSP USA Solutions, Inc.,*
  522 F. Supp. 3d 1202 (S.D. Fla. 2021) ..........................................................11, 20

*Markle v. Markle,*
  2024 WL 1075339 (M.D. Fla. Mar. 12, 2024) ................................................11, 15

*Masson v. New Yorker Magazine, Inc.,*
  501 U.S. 496 (1991) ................................................................................. 12-13

*Miami Herald Pub. Co. v. Kendall,*
  88 So. 2d 276 (Fla. 1956) ............................................................................7

*Miller v. Berman,*
  289 F. Supp. 2d 1327 (M.D. Fla. 2003) ...............................................................5

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964) ..................................................................................12

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
  297 F.3d 1182 (11th Cir. 2002) ......................................................................5

*Parekh v. CBS Corp.,*
  820 F. App'x 827 (11th Cir. 2020) ..................................................................20

*Pomfret v. Atkinson,*
  137 So. 3d 1161 (Fla. 4th DCA 2014) ..............................................................12

*Resha v. Tucker*,
 670 So. 2d 56 (Fla. 1996) ................................................................................9

*Rodriguez v. Recovery Perf. & Marine, LLC*,
 38 So. 3d 178 (Fla. 3d DCA 2010) ................................................................19

*Rosanova v. Playboy Enters., Inc.*,
 580 F.2d 859 (5th Cir. 1978) ..................................................................11, 16

*Rothschild Connected Devices Innovs., LLC v. Guardian Prot. Servs.*,
 858 F.3d 1383 (Fed. Cir. 2017) ........................................................... 1, 13-14

*Saro Corp. v. Waterman Broadcasting Corp.*,
 595 So. 2d 87 (Fla. 2d DCA 1992) ............................................................ 16-17

*Scott v. Experian Info. Sols., Inc.*,
 2018 WL 3360754 (S.D. Fla. June 29, 2018) ................................................11

*Singer v. Star*,
 510 So. 2d 637 (Fla. 4th DCA 1987) ..............................................................7

*Smith v. Cuban Am. Nat'l Found.*,
 731 So. 2d 702 (Fla. 3d DCA 1999), ............................................................12

*Snow v. DirecTV*,
 450 F.3d 1314 (11th Cir. 2006)................................................................... 5-6

*State ex rel. Personal Fin. Co. v. Lewis*,
 191 So. 295 (Fla. 1939) ..................................................................................8

*Stewart v. Sun Sentinel Co.*,
 695 So. 2d 360 (Fla. 4th DCA 1997) ......................................................... 9-10

*Tamiami Trail Tours, Inc. v. Cotton*,
 463 So. 2d 1126 (Fla. 1985).........................................................................18

*Turner v. Wells*,
 198 F. Supp. 3d 1355 (S.D. Fla. 2016)................................................. 12-13, 15

*Turner v. Wells*,
 879 F.3d 1254 (11th Cir. 2018)................................................... 12, 15-17

*Universal Express, Inc. v. S.E.C.*,
 177 F. App'x 52 (11th Cir. 2006) .................................................................14

*Verbena Prods. LLC v. BeSweet Creations Inc.*,
 2022 WL 18864660 (S.D. Fla. Feb 16, 2022)...................................................................18

*Waite v. All Acquisition Corp.*,
 901 F.3d 1307 (11th Cir. 2018)..........................................................................................5

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
 792 F.3d 1313 (11th Cir. 2015)........................................................................................19

**<u>Statutes</u>**

Fla. Stat. § 48.193 ..........................................................................................................................6

Fla. Stat. § 95.11 ............................................................................................................................4

Fla. Stat. § 501.203 ......................................................................................................................19

Fla. Stat. § 501.204 ......................................................................................................................19

Fla. Stat. § 501.2105 ....................................................................................................................20

Fla. Stat. § 501.211 ......................................................................................................................19

Fla. Stat. § 768.295 ......................................................................................................................20

Fla. Stat. § 770.07 ..........................................................................................................................4

**<u>Rules</u>**

Fed. R. Civ. P. 11 ..........................................................................................................................11

Fed. R. Civ. P. 12 ........................................................................................................................4-5

**<u>Other Authorities</u>**

Black's Law Dictionary .................................................................................................................15

Oxford English Dictionary.............................................................................................................15

## INTRODUCTION AND BACKGROUND

This case arises from Plaintiff Leigh Rothschild's displeasure with the manner in which Attorney Rachael Lamkin defends her clients, including Starbucks Corporation, from frivolous patent lawsuits filed by Rothschild-controlled companies, such as his Co-Plaintiff here Analytical Technologies, LLC ("AT"). AT is what many refer to as a Non-Practicing Entity ("NPE"), which owns patent rights but uses them only for litigation and licensing. NPEs are commonly underfunded (since they have no real business), their litigation is typically financed by others, and any recovery is dispensed to the NPEs' owners, lawyers, and/or funders. Thus, when courts find that the litigation the NPE filed is frivolous and award attorneys' fees, the NPE lacks funds to satisfy the award. (*See generally* Compl. [ECF No. 1] Exs. A-B.)

A public controversy exists concerning whether NPE-filed lawsuits are an abuse of the litigation process. (*See generally* Compl. Exs. A-B.) The controversy has resulted in demands for Congressional action, including lobbying by both sides. (Compl. Ex. B at 10.) Rothschild has thrust himself into this public controversy. (*Id.*) It directly affects his business model of acquiring patent rights, placing them in undercapitalized entities, and then using those entities to sue wide swaths of defendants and seek quick settlements. (*Id.* at 3, 8.) Some courts have found the claims filed by Rothschild's NPEs so lacking in merit that they awarded attorneys' fees to the defendants. *E.g.*, *Rothschild Connected Devices Innovs., LLC v. Guardian Prot. Servs.*, 858 F.3d 1383 (Fed. Cir. 2017); *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*, No. 1:19-cv-01109-MN (D. Del.). Despite the weakness of the Rothschild-entity claims, however, many will "settle [these] suits quickly to avoid the high cost of mounting a defense" and because "pursuing fees from poorly capitalized and judgment-proof patent-holding LLCs is a crapshoot." (Compl. Ex. A at 3.)

Attorney Lamkin has been "pioneering" new strategies to reach past judgment-proof NPEs to controlling parties with funds to cover the fees owed. (*See generally* Compl. Exs. A-B.) For

Netflix, for example, she secured the dismissal of frivolous patent claims and an injunction against the NPE-plaintiff transferring litigation proceeds, thereby allowing Netflix to pursue recovery of its attorneys' fees. (Compl. Ex. A at 4.) In another case filed against Garmin by Rothschild and one of his NPEs, Attorney Lamkin refused to settle and threatened to invalidate the patent, resulting in a voluntary dismissal and Garmin seeking attorneys' fees. (Compl. Ex. B at 4-9.)

When AT filed a patent-infringement lawsuit against Starbucks in the Eastern District of Texas ("EDTX"), Starbucks retained Attorney Lamkin and her firm Baker Botts to defend it. (Compl. ¶ 15 & Ex. A at 3.) She has deployed her strategies, filing a Counterclaim alleging AT's patent-infringement claims are frivolous, requesting attorneys' fees for having to defend against them, and seeking to hold Rothschild individually responsible for the expected fee award. (*Id.* ¶ 16 (citing Countercl., *AT v. Starbucks*, No. 2:24-CV-00445-JRG (EDTX Sept. 5, 2024), ECF No. 31, Ex. A.) The Counterclaim includes the following allegations:

- "AT and PAM[1] are sham entities formed to shield Rothschild from personal liability for filing meritless patent infringement actions, such as the case at-bar." ¶ 8(d).

- "The alter ego exception to the fiduciary shield doctrine applies to Rothschild because (1) AT is undercapitalized, (2) PAM/Rothschild is actually the bookkeeper for AT, (3) Rothschild commingles his finances with AT (actually diverts settlement monies intended for AT to himself through PAM) (4) AT is used to promote fraud or illegality (5) Rothschild fails to observe corporate formalities, and (6) AT is merely a sham." ¶ 8(l).

- "Mr. Rothschild admitted in a 2022 deposition that his sham parent companies (first RTH and then PAM) pay all of the expenses for all of Rothschild's shell entities," that "his shell entities have no income," and that "RTH used to 'pay the bills' for his shell entities and that role is now performed by PAM," and that "the demand letter and litigation settlement monies earned from his shell entities are paid directly to his sham parent entities (RTH and now PAM)." ¶¶ 71, 73-75.

- "[N]either Rothschild nor his shell entity Rothschild Connected Devices Innovations, LLC ever paid the attorneys' fees owed ADS Security. And, neither Rothschild nor his shell entity Rothschild Dig. Confirmation LLC ever paid the attorneys' fees owed CompanyCam, Inc." ¶ 79.

---

[1] "Rothschild is an or the owner of Patent Asset Management ("PAM") either directly or indirectly. PAM is the owner of Analytical Technologies either directly or indirectly." ¶ 4.

- "[W]hen settlement monies are received they do not flow to the corporation named as a Plaintiff in the suit, instead the money is transferred to Defendant, RTH [later PAM] where it is fraudulently converted for Rothschild's personal use in order to defraud creditors from monies that are due and owing." ¶ 82(c).

- "The litigant shell companies do not receive reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." ¶ 83(f).

After this Counterclaim was filed, Bloomberg published an article. (Compl. Ex. A.) The article

described the EDTX lawsuit and Starbucks' Counterclaim:

> Starbucks in September called claims it infringed US Patent No. 8,799,083 "meritless" and filed a counterclaim seeking to hold Rothschild responsible for its attorneys' fees, alleging he "created AT as a sham shell entity to shield himself from personal liability."

> The coffee company accuses Rothschild of exploiting a dynamic where risk-averse companies will settle patent suits quickly to avoid the high cost of mounting a defense—and where recouping the cost of defending a suit by pursuing fees from often poorly capitalized and judgment-proof patent-holding LLCs is a crapshoot.

> "Rothschild causes demand letter and litigation settlement monies to be transferred fraudulently directly to" a parent company, "as opposed to his litigation shell entities such as AT, with the actual intent to hinder, delay, or defraud creditors with a contingent claim for attorneys' fees," Starbucks said.

(*Id.* at 3.)

The article then identifies Lamkin as Starbucks' attorney and transitions to ***discussing her***:

she is "carving out a new litigation strategy" and "pioneering a technique" to "defend against such

suits," thereby "effectively challeng[ing] what is otherwise a sad fact of life for a lot of

companies—an annual stream of these judgment-proof bottom feeders." (*Id.*) The article continues

to discuss her practice, including the Netflix case. (*Id.* at 3-4.) It also discusses similar tactics used

by another attorney. (*Id.* at 4-5.) The article then recites Rothschild's "Long History," describing

his "1,347 patent cases" that have "long" put him in the "crosshairs of tech companies and the IP

lawyers that defend them." (*Id.* at 5.) The article quotes Rothschild's defense of his patent suits,

and then concludes with Attorney Lamkin discussing her ***prior experiences*** with Rothschild:

Lamkin said she's tussled with the prolific inventor for years and has been particularly frustrated by the early settlement offers from Rothschild, which she called "obnoxiously low."

"The settlement amounts are so low that companies aren't going to pay attorneys the thousands of hours it takes to catch him at his game," she said in an interview. "And with Leigh Rothschild, we never get the money because the shells go bankrupt."

(*Id.*) These quotes are neither about the Starbucks case nor noted as made on behalf of Starbucks.

In response to the Bloomberg article, Rothschild filed this action against Starbucks and Attorney Lamkin alleging the final statement in the article (which simply repeat the allegations in Starbucks' Counterclaim) supposedly constitutes defamation.[2] Rothschild (and AT) assert a host of other claims, all based on the same statement. For the reasons set forth below, the Complaint must be dismissed against Starbucks for lack of personal jurisdiction, based on litigation privilege, and because it fails to state a claim for relief, is an impermissible "shotgun" complaint, seeks unauthorized relief, and constitutes a Strategic Lawsuit Against Public Participation ("SLAPP"), which must be dismissed, with fees awarded to Starbucks.

## LEGAL STANDARD

Rule 12(b)(1): In this diversity case, the Court must "undertake[] a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists." *Giuliani v. NCL (Bahamas) Ltd.*, 558 F. Supp. 3d 1230, 1236 (S.D. Fla. 2021). "First, the court must determine whether the exercise of jurisdiction is appropriate under the state long-arm statute." *Id.* "Second, the court must determine whether exercising personal jurisdiction over the nonresident defendant violates the Due Process Clause," which requires sufficient minimum contacts with this state. *Id.*

---

[2] The Complaint also attaches a 2017 article with statements by Attorney Lamkin about Rothschild. (Compl. Ex. B.) The Complaint's claims are not based on those statements. If they were, the 2024 claims would be barred by the statute of limitations of two years (defamation) or four years (other claims), Fla. Stat. § 95.11(3)(e)&(n), (4)(h), since the clock started in 2017, Fla. Stat. § 770.07.

Rule 12(b)(6): "[A] complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The Court considers exhibits to the Complaint, which govern when they "contradict the general or conclusory allegations." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511-14 (11th Cir. 2019).

**I.      This Court Lacks Personal Jurisdiction Over Starbucks.**

The "two categories of personal jurisdiction" are general and specific. *Miller v. Berman*, 289 F. Supp. 2d 1327, 1331 (M.D. Fla. 2003). The allegations here do not support either.

_First_, the Court lacks general personal jurisdiction over Starbucks. "Because Florida's long-arm provision extends to the limits on personal jurisdiction imposed by the Due Process Clause, the Court need only determine whether the exercise of general jurisdiction...would exceed constitutional bounds." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1316 (11th Cir. 2018). The Supreme Court set those bounds and held general jurisdiction exists "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (cleaned up). A corporation is "at home" in its "place of incorporation and principal place of business." *Id.* at 137-39. Starbucks is incorporated and has its principal place of business in Washington. (Compl. ¶ 6.) It is not "at home" and subject to general personal jurisdiction here.

_Second_, the Court also lacks specific personal jurisdiction over Starbucks. The Complaint alleges Starbucks "knowingly directed and targeted its unlawful acts alleged herein toward Plaintiffs…in Florida in this District, causing damages to Plaintiffs in this District" (Compl. ¶ 2), but that conclusory allegation is not enough, *Snow v. DirecTV*, 450 F.3d 1314, 1318 (11th Cir. 2006)

(conclusory jurisdictional allegations insufficient). Nor could the Complaint offer facts to make that conclusion plausible. After all, Starbucks did not make the allegedly defamatory statement in the Bloomberg article, and there is no allegation Attorney Lamkin did so as an agent of Starbucks (*i.e.*, that Starbucks exercised operational control over her) or that Starbucks was even aware she made that statement to the reporter or that it would be included in the published article. No basis for specific jurisdiction exists over Starbucks under the long-arm statute. Fla. Stat. § 48.193(1)(a); *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315, 1320-22 (S.D. Fla. 2006) (dismissing for lack of personal jurisdiction over principal because it lacked "operational control" over the purported agent).

Even if the statement in the Bloomberg article were an act by Starbucks (it was not), that still would not support personal jurisdiction over Starbucks. The Due Process inquiry requires: (1) the defendant's contacts with the forum are "purposeful"; and (2) the plaintiff's claim arises out of or relates to such contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Additionally, "personal jurisdiction is proper...only when the defamatory publication was 'expressly aimed' at the forum state, which impels the conclusion that the defendant reasonably anticipated being haled into court there." *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1381 (S.D. Fla. 2004).

An out-of-state interview with a reporter that results in a broadly-circulated story, including in Florida, is not enough to support jurisdiction. *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990). As the Eleventh Circuit explained, no personal jurisdiction exists over a libel defendant that did nothing more than "giv[e] an interview to a reporter" because that is "not enough to cause [the defendant] to anticipate being haled into court in Florida." *Id.* "[G]iving the interview…did not exhibit the continuous and deliberate exploitation of the Florida market" that can support personal jurisdiction. *Id.* (cleaned up). This Court similarly found no personal jurisdiction over a company that made defamatory statements on a portion of its website available to "residents of Florida."

6

*Alternate Energy*, 328 F. Supp. 2d at 1381-84. This Court lacked jurisdiction because "the mere fact that allegedly libelous statements appeared in a publication sold to Florida residents is not sufficient to give a defendant fair warning that he may be haled into court" here. *Id.* at 1383.

As in *Madara* and *Alternate Energy*, Plaintiffs here allege nothing more than a Bloomberg reporter obtaining pleadings filed by Starbucks in Texas and interviewing Attorney Lamkin, who resides in California (Compl. ¶ 7), which resulted in an article published on the internet that was accessible in Florida (and everywhere else in the world). That is insufficient to establish personal jurisdiction over Starbucks. The Court should thus dismiss all claims against Starbucks.

## II.    Starbucks Cannot Be Held Liable for Attorney Lamkin's Statement to Bloomberg.

The statement alleged to be defamatory was made by Attorney Lamkin during an interview with Bloomberg. The Complaint does not allege she gave that interview or made the statement as Starbucks' agent. Plaintiffs instead allege the statement is "attributable to" Starbucks (Compl. ¶ 17), but provides no facts supporting that conclusion. To the contrary, the context of the article establishes she made the statement on her own behalf about her own past practice and experiences.

Plaintiffs do not plead Attorney Lamkin made the statement as an agent of Starbucks. Nor could they. She is not a Starbucks employee. Starbucks is in the business of selling beverages, food, and other consumer products. She is a partner in the law firm Baker Botts, where she provides legal services to different clients. (*See generally* Compl. Exs. A-B.) Like all outside counsel that work for multiple clients and control the means by which they accomplish the clients' tasks, she is an ***independent contractor***. *Singer v. Star*, 510 So. 2d 637, 640 (Fla. 4th DCA 1987) (citing *Miami Herald Pub. Co. v. Kendall*, 88 So. 2d 276, 277 (Fla. 1956)). Starbucks certainly did not exercise the requisite control over Attorney Lamkin's conduct, especially what she says in media interviews about her broader practice. To be sure, every statement Attorney Lamkin makes is not automatically deemed attributable to every client she represents. Starbucks cannot be vicariously

liable for her statement. *Del Pilar v. DHL Global Customer Solutions (USA), Inc.*, 993 So. 2d 142, 145 (Fla. 1st DCA 2008) (employer not liable for the acts of independent contractor).

Though attorneys are generally independent contractors, they can bind their clients when making statements in court or court filings. *State ex rel. Personal Fin. Co. v. Lewis*, 191 So. 295, 296 (Fla. 1939) ("in matters of procedure or practice which affect solely the conduct of a cause, an attorney may bind his client"); *Epperson v. Rupp*, 157 So. 2d 537, 538 (Fla. 3d DCA 1963) ("an attorney is an agent for his client" in matters directly related to the conduct of a legal cause, such as signing objections or filing claims). Thus, the statements in the Counterclaim Attorney Lamkin filed in the EDTX case can be attributed to Starbucks. Importantly, however, no Florida law makes clients liable for press interviews given by their attorney on broader topics of public concern.

*Lipsig v. Ramlawi*, 760 So. 2d 170 (Fla. 3d DCA 2000), is instructive. The court explained that although professionals, such as lawyers, can be agents in certain circumstances, an attorney cannot bind a client for acts committed outside the scope of the legal duties. *Id.* at 186. The court held an attorney's defamatory comments to a third party concerning his client's business did not bind the client because the statements were personal opinions unrelated to the legal services. *Id.*

Similarly, here, Attorney Lamkin's statement was made during an out-of-court interview about her "tussl[ing] with [Rothschild] for years." (Compl. Ex. A at 5.) Her statement was not made in course of performing her legal duties for Starbucks. Indeed, conducting interviews with reporters about other cases for other clients falls ***outside*** the scope of her legal duties for Starbucks. The Complaint offers no facts suggesting otherwise. It does not allege she gave the interview in the course of her legal duties for Starbucks, or even with Starbucks' knowledge and consent. Nor does the Complaint offer facts establishing Starbucks exercises any ***operational control*** over the manner in which Attorney Lamkin accomplishes Starbucks' legal objectives, much less what she

says in interviews about other cases. *Harbough*, 436 F. Supp. 2d at 1320 (noting "operational control" includes controlling agents' "internal affairs" or how they "operated on a daily basis").

Because Attorney Lamkin is an independent contractor and did not make the statement at issue on behalf of Starbucks, all claims against it based on that statement should be dismissed.

## III.    Plaintiffs' Claims Are Barred by Florida's Litigation Privilege.

### A.    The Absolute Litigation Privilege Bars Plaintiffs' Claims.

Florida's litigation privilege "affords absolute immunity for acts occurring during the course of judicial proceedings," including "defamation," *Jackson v. BellSouth Telecoms.*, 372 F.3d 1250, 1274 (11th Cir. 2004), and "reckless or even outrageous conduct," *Davis v. Bailynson*, 268 So. 3d 762, 769 (Fla. 4th DCA 2019). "Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 607-08 (Fla. 1994). Whether the privilege applies is a question of law for the Court, *Resha v. Tucker*, 670 So. 2d 56, 59 (Fla. 1996), and can be decided on a motion to dismiss, *Jackson*, 372 F.3d at 1277. "Where the facts are not in dispute in defamation cases, [] pretrial dispositions are especially appropriate because of the chilling effect these cases have on freedom of speech." *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997).

The privilege applies here, as the only statements attributed to Starbucks in the Bloomberg article are from Starbucks' court pleadings and are thus undisputedly acts occurring in the course of a judicial proceeding. (*Compare* Compl. Ex. A at 3 *with* Countercl. ¶¶ 8, 57-59, 70-84.) *E.g.*, *AIDS Healthcare Foundation, Inc. v. Carrel*, 2016 WL 11528922, at *4-5 (S.D. Fla. June 29, 2016) (dismissing based on privilege where news "picked up" and published content of court filing). That is precisely the result reached in *Della-Donna v. Nova University, Inc.*:

> Although there is no evidence in the record of Russell's publishing the counterclaim to the media or to anyone else, the pleadings were a matter of public record and anyone, including the news media, had a right to obtain and publish them. Thus, the allegedly defamatory statements in the pleadings are protected by an absolute privilege afforded judicial statements.

512 So. 2d 1051, 1056 (Fla. 4th DCA 1987) (citations omitted). *Stewart* reached the same result where the attorney actually provided the litigation paperwork to a reporter:

> Hurtado, a lawyer,…was required by section 768.29, Florida Statutes, to send a notice of claim to the state agencies involved, before he could file suit to recover for his client's injuries. He gave a copy of the notice of claim to a reporter who published portions of it in a newspaper. Hurtado, as the trial court correctly found, was entitled to the absolute immunity afforded statements made in the course of judicial proceedings, even though the lawsuit had not yet been filed.

695 So. 2d at 362. Here, there is no allegation Starbucks provided a copy of its Counterclaim to the Bloomberg reporter or that Starbucks itself or any of its employees ever communicated with the reporter. But even if they did, the result is the same: the privilege bars the claims against Starbucks because the claims are predicated on statements made in judicial proceedings.

### B.    Alternatively, the Qualified Litigation Privilege Bars Plaintiffs' Claims.

Where tort claims are based on statements made out of court, but "bear some relation to or connection with the subject of inquiry in the underlying lawsuit," Florida applies a "qualified privilege." *DelMonico v. Traynor*, 116 So. 3d 1205, 1208 (Fla. 2013). "[W]hether a statement is connected with or related to the subject of inquiry is a threshold determination to be made by a judge." *Id.* at 1219. If it is connected or related, the qualified privilege bars the claims unless the plaintiff can establish the defendant committed the tortious acts with "express malice." *Id.*

Even assuming Starbucks could be liable for Attorney Lamkin's statement to Bloomberg (it cannot), that statement is connected with or related to the subject of inquiry in the underlying EDTX case. After all, the statement is about the type of litigation prosecuted by Rothschild entities, like the EDTX case. Given the broad standard applied to the "connected with or related to" inquiry,

*DelMonico*, 116 So. 3d at 1219; *Gursky Ragan, P.A. v. Ass'n of Poinciana Villages, Inc.*, 314 So. 3d 594, 595 (Fla. 3d DCA 2020), the Court should find that requirement easily satisfied here.

Plaintiffs' claims survive only if they establish malice. They allege, "[o]n information and belief," that Starbucks acted "with malice, knowing each of the statements to be false and defamatory." (Compl. ¶ 25.) But Plaintiffs allege no facts supporting that bare conclusion. Such "allegations stated upon information and belief that do not contain any factual support fail to meet the [plausibility] standard." *Magnum Constr. Mgmt., LLC v. WSP USA Solutions, Inc.*, 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) (quoting *Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018)); *see also, e.g.*, *Markle v. Markle*, 2024 WL 1075339, at *23 (M.D. Fla. Mar. 12, 2024) (finding malice insufficiently pled without supportive facts).

Nor could Plaintiffs ever plead that Starbucks knew the statements it and Attorney Lamkin made were false. The statements are consistent with prior reports, including the 2017 Ars Technica article, and courts cannot find malice when statements are supported by prior reports. *E.g.*, *Markle*, 2024 WL 1075339, at *23 (citing *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978)). In addition, the statements are quotes or paraphrases of Starbucks' EDTX Counterclaim, which was filed pursuant to Rule 11, indicating its filers believed it had evidentiary support. The Florida Supreme Court instructs that any misconduct in making those allegations should be addressed by the EDTX court, not through this independent action. *Levin*, 639 So. 2d at 608-09.

At bottom, the Complaint provides no facts establishing Starbucks' "***primary*** motive in making the statements was the intent to injure the reputation of the plaintiff." *DelMonico*, 116 So. 3d at 1220 (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992) (emphasis added)). Even assuming (for purposes of this motion only) that Starbucks knew the statements were false (it did not and they are not), such knowledge alone is insufficient to establish Starbucks intended to harm

11

Plaintiffs, as opposed to Starbucks protecting its interests in the EDTX case. Because there can be no claim that Starbucks "was motivated *primarily* by a desire to harm the plaintiff's reputation," the claims against Starbucks are barred by the qualified litigation privilege. *Pomfret v. Atkinson*, 137 So. 3d 1161, 1164 (Fla. 4th DCA 2014) (affirming judgment under qualified privilege).

## IV.   Rothschild Does Not and Cannot Plead a Viable Defamation Claim.

The defamation claim asserted by Rothschild (not AT) is insufficiently pled and can never be sufficiently pled. Defamation has five elements: (1) publication; (2) falsity; (3) defendant acted with knowledge or reckless disregard as to the falsity (public figure), or negligently (private person); (4) actual damages; and (5) statement must be defamatory. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). In addition, where the plaintiff is a public figure, as Rothschild is, he must also show by clear and convincing evidence that the statements were made with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

The statement at issue—"with Leigh Rothschild, we never get the money because the shells go bankrupt"—is not actionable for a simple reason: it is not false. It is true that defendants awarded fees from Rothschild's entities did not "get the money" because the undercapitalized "shells" lacked assets to pay those debts—*i.e.*, "bankrupt." This claim also fails because no facts establish the statement was made with actual malice. Dismissal with prejudice is warranted.

### A.   The Statement at Issue Is True, Not False.

"Falsity exists only if 'the publication is substantially and materially false, not just if it is technically false.'" *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) (quoting *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999)), *aff'd*, 879 F.3d 1254 (11th Cir. 2018). The statement "does not have to be 'perfectly accurate' if the 'gist' or the 'sting' of the statement is true." *Id.* Even a flawed assertion of fact is not actionable if it is "substantially true" because the law "overlooks minor inaccuracies." *Masson v. New Yorker Magazine, Inc.*, 501 U.S.

496, 516 (1991). The Court must consider the context in which the statement was made. *Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 715-16 (11th Cir. 1985) (instructing courts to determine "how a reasonable individual would have interpreted" the statement at issue); *Turner*, 198 F. Supp. 3d at 1367 (refusing to "look at this phrase in a vacuum, uncoupled from the surrounding facts").

Applying this standard, the Complaint fails to plead the statement by Attorney Lamkin was false. Rothschild puts his own spin on the statement by breaking it into three parts: (a) he "owes money to one or more Defendants that they have been unable to 'get'"; (b) he "is involved with one or more companies that is a 'shell'"; and (c) he "is involved with one or more companies that has 'go[ne] bankrupt.'" (Compl. ¶ 24.) Starbucks disputes this recasting of the statement because it erroneously changes its meaning, divorcing it from its context. *See Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1319 (S.D. Fla. 2020) (rejecting cherry-picking words out of their context to support a defamation claim). Rothschild replaces "we" with "one or more Defendants," wrongly representing that Attorney Lamkin's reference to "we" was a reference to herself and Starbucks, the "Defendants" in this case. Read in context, Attorney Lamkin was not referring to herself and Starbucks as the "we." That would make no sense since no court has entered a judgment for Attorney Lamkin against Rothschild. She was obviously referring to the other companies for which she has "tussled with [Rothschild] for years." (Compl. Ex. A at 5.)

Properly considered, the statement by Attorney Lamkin is true. It is supported by multiple instances—documented in judicially-noticeable filings—of courts ordering Rothschild-controlled entities to pay fees and them admitting they lack assets to do so. Companies he controlled have (at least) ***twice*** been ordered to pay fees to defendants they frivolously sued, and both times the companies said they lacked money to pay. Rothschild Connected Devices Innovations, LLC ("RCDI") was found liable to ADS Security for fees for filing a meritless patent lawsuit. *RCDI*,

858 F.3d at 1388-90. The court ordered RCDI to pay $288,911.99 to ADS within 30 days. (Mem. Order at 3, *RCDI v. ADS*, No. 2:15-cv-01431-JRG (EDTX), ECF No. 104, Ex. B.)[3] But more than six months later, RCDI had not paid. (Decl. of Blake D. Roth ¶ 7, *RCDI*, ECF No. 107-2, Ex. C.) Similarly, the court ordered Rothschild Digital Confirmation, LLC ("RDC") to pay $86,150 in fees (including $37,910 for work performed by Attorney Lamkin) within 45 days. (Mem. Op. at 9, *RDC v. CompanyCam, Inc.*, No. 1:19-cv-01109-MN, ECF No. 40 (D. Del. Oct. 13, 2020), Ex. D; Mem. Order at 3, *RDC*, ECF No. 45, Ex. E.) Yet, seven months later, the award still had not been paid. (Ltr. Br. to Compel Disco. at 1-2, *RDC*, ECF No. 51, Ex. F.) The *RCDI* and *RDC* cases establish Attorney Lamkin's statement "with Leigh Rothschild, we never get the money" is true. She accurately described a pattern of defendants being unable to recoup fees Rothschild's entities were ordered to pay them. The "gist" and "sting" of this statement is surely true.

The *RCDI* and *RDC* cases further establish the truth of Attorney Lamkin's reference to Rothschild's entities as "shells." "A 'shell company' can be defined as a company without active business operations or significant assets." *Llauro v. Tony*, 470 F. Supp. 3d 1300, 1307 n.3 (S.D. Fla. 2020); *Elandia Intern., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1324 (S.D. Fla. 2010) ("Datec Group became a shell corporation that lacked business and assets..."). The Complaint similarly admits a company with no significant assets or operations is a "shell." (Compl. ¶ 19.) RCDI and RCD failed to pay the ordered fees because they ***lacked assets***. RCDI "admit[ted]" it had "not paid the fee award" because it "only has *de minimus* [sic] funds in its bank account" and "[t]he only other assets of RCDI are three patents and one patent application." (RCDI's Resp. to ADS's Mot. for OSC at 1, *RCDI*, ECF No. 108, Ex. G; *accord* Decl. of RCDI ¶ 3, *RCDI*, ECF No. 108-1, Ex.

---

[3] Courts may take judicial notice of public dockets and filings in ruling on a motion to dismiss. *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53-54 (11th Cir. 2006). As such, Starbucks asks that the Court take judicial notice of these public records in ruling on this motion.

H.) Similarly, "[c]ounsel for RDC stated that RDC has no assets and no way to satisfy the fee judgment." (Ltr. Br. to Compel Disco. at 2, *RDC*, Ex. F.) Hence, any suggestion Rothschild is "involved with one or more companies that is a 'shell'" is true because the companies lack active operations and assets. It is, at a minimum, substantially true.

It is also true that the "shells go bankrupt." Bankrupt means "[i]ndebted beyond the means of payment" or "without enough to pay back what one owes." *Bankrupt*, Black's Law Dictionary (12th ed. 2024); *Bankrupt*, Oxford English Dictionary ("unable to pay outstanding debts; having no more money"). Given RCDI and RDC admitted having no money to satisfy their debts, the "bankrupt" statement is literally true, or at least substantially true. In *Levine v. McLeskey*, for example, the court found a statement that a company "was going bankrupt" was "not a false statement," in part because the company "ha[d] never been able to pay its debts as they bec[a]me due," "was losing money," and was "not paying" a specific note. 881 F. Supp. 1030, 1049-50 (E.D. Va. 1995), *aff'd in relevant part*, 164 F.3d 210 (4th Cir. 1998). This Court should reject any effort to define "bankrupt" as an official declaration in bankruptcy court as overly-narrow and technical, particularly in the defamation context. Using that definition to find the statement false runs afoul of the established principle that one cannot predicate a defamation claim on a statement that is "technically false" when the "gist" is certainly true. *Turner*, 198 F. Supp. 3d at 1365; *see also Markle*, 2024 WL 1075339, at *10-12 (dismissing defamation claim based on judicially-noticed materials and where statement was substantially true despite slight inaccuracies).

Finally, any dispute by Rothschild over whether his entities constitute "shells [that] go bankrupt" actually establishes the statement is an ***opinion***. "[O]pinions are protected from defamation actions by the First Amendment." *Turner*, 879 F.3d at 1262. Whether a "statement is one of fact or opinion" is a "question[] of law for the court." *Id.* at 1262-63. The statement "the

shells go bankrupt" is an opinion because it is "based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener." *Id.* at 1262. The Bloomberg article sets forth the facts upon which the statement is based and refers readers to publicly-available court filings for additional information. The statement is non-actionable opinion. *Id.* at 1264-65; *Keller*, 778 F.2d at 717-18.

The Court should accordingly find, based on the exhibits to the Complaint and judicially-noticeable materials, that it is true—or at least substantially true—for defendants facing frivolous patent cases that, "with Leigh Rothschild, we never get the money because the shells go bankrupt."

**B.     Rothschild is a Limited Public Figure, and He Cannot Establish Malice.**

It is for the Court to determine if Rothschild is a "limited public figure." *Rosanova*, 580 F.2d at 861. It should find he is because he "ha[s] thrust [himself] forward in a particular public controversy." *Saro Corp. v. Waterman Broadcasting Corp.*, 595 So. 2d 87, 88-89 (Fla. 2d DCA 1992). As discussed, he is involved in a public controversy over underfunded NPEs filing frivolous patent cases to either secure quick settlements or be judgment-proof should the court award fees.

The exhibits to the Complaint demonstrate this public controversy. In the Ars Technica article, Rothschild admits the public controversy is so significant that "he is concerned that Congress might tweak patent laws." (Compl. Ex. B at 10.) Both sides of the controversy are "lobbying" Congress. (*Id.*) The Bloomberg article likewise recognizes the public controversy, sharing the viewpoints of multiple individuals involved in patent litigation by NPEs. (Compl. Ex. A.) The *RDC* and *RCDI* cases are prime examples. A public controversy unquestionably exists.

The Court applies a two-part test to determine if Rothschild is a "limited public figure" for the purpose of that controversy. "First, the court must determine whether the individual played a central role in the controversy." *Saro Corp.*, 595 So. 2d at 88-89. The articles establish Rothschild plays a central role, having filed more than 1,300 of these lawsuits, having one of his patents being

16

featured as "Stupid Patent of the Month," and himself being promoted in an "Investor Spotlight" post. (Compl. ¶ 9, Ex. A at 5, & Ex. B at 9-10.) "Second, [the Court] must determine whether the alleged defamation was germane to the individual's role in the controversy." *Saro Corp.*, 595 So. 2d at 88-89. The statement at issue clearly relates to Rothschild's involvement in the public controversy surrounding use of underfunded NPEs (*i.e.*, "shells") to assert patent rights in frivolous litigation and then avoid paying fees awarded to defendants (*i.e.*, "never get the money") because the NPEs have insufficient assets (*i.e.*, "bankrupt"). Rothschild is a "limited public figure."

Rothschild cannot establish the statement was made with "actual malice." *Turner*, 879 F.3d at 1273. This is a "subjective test, focusing on whether the defendant actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* Although the Complaint alleges the conclusion that Starbucks knew "the statements to be false and defamatory" (Compl. ¶ 25), it offers no facts to make that conclusion plausible. Dismissal is required. *Turner*, 879 F.3d at 1273 (affirming dismissal of defamation claim that did "not allege sufficient relevant facts to support a claim of actual malice" but relied on allegations "set forth in a conclusory manner"). Nor could Rothschild plausibly allege Starbucks (or Attorney Lamkin) knew the statement was false given the *RDC* and *RCDI* litigation, prior reports on Rothschild's activities, as well as Attorney Lamkin's own experiences set forth in the exhibits to the Complaint and the judicially-noticeable filings.

## V.   Plaintiffs' Other Claims Should Be Dismissed.

### A.    The Single Publication Rule Bars the Non-Defamation Claims.

A plaintiff cannot repackage a defamation claim under a different theory based on same facts. *Fridovich*, 598 So. 2d at 69-70. "[A] single publication sustains a single cause of action." *Bongino*, 477 F. Supp. 3d at 1320. This rule prevents plaintiffs from "elud[ing] the constitutional safeguards that are part and parcel of defamation law by simply renaming the cause of action and

repleading the same facts." *Id.* Because Plaintiffs' other claims are "based on the same publication" that underlies the defamation claim, *id.*, the Court must dismiss those other claims under the single publication rule, *E.g.*, *Verbena Prods. LLC v. BeSweet Creations Inc.*, 2022 WL 18864660, at *3-4 (S.D. Fla. Feb 16, 2022) (dismissing FDUTPA, unfair competition, and tortious interference claims predicated on same conduct as defamation claim).

**B.      Alternatively, the Non-Defamation Claims Fail to State a Claim.**

For each claim, the Complaint recites the elements in conclusory fashion with no facts in support. Such "a formulaic recitation of the elements…will not do." *Twombly*, 550 U.S. at 555. For example, intentional infliction of emotional distress requires "outrageous" conduct, *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla 3d DCA 2004), which is a question of law for the Court, *De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 943 (Fla. 3d DCA 2002). But the Complaint has no facts establishing Starbucks' conduct was "beyond all bounds of decency" and "odious and utterly intolerable in a civilized community" to be "outrageous." *LeGrande*, 889 So. 2d at 994. Protecting oneself from frivolous litigation by making allegations in support of a Counterclaim cannot meet that high standard. *See Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. 3d DCA 1998) (standard for outrageousness is high; criminal, tortious, or malicious intent not enough).

The tortious interference with business relationships claim pleads no facts that Starbucks is aware of any businesses with which Plaintiffs are ***currently*** engaging in "efforts to acquire and license patents" or other undisclosed "business" (Compl. ¶ 33) with which to "intentionally" interfere, *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). Plaintiffs also fail to even plead the required element that the interference was unjustifiable. *Id.* Nor could they plead that element where, as here, the conduct at issue—making allegations to support a Counterclaim and its attorney speaking with a reporter—was unquestionably lawful and justifiable conduct. *Cf. Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) (lawful acts do not

give rise to a claim, even if done with a bad motive).

Finally, the unfair competition claim brought under the FDUTPA (Compl. ¶ 39 (citing Fla. Stat. § 501.211)) is not only pled in a threadbare fashion, it seeks unauthorized "economic damage to business interests including hindering the ability to acquire and license patents" (Compl. ¶ 40). Such "consequential" damages for "reputational harm" do not qualify as "actual damages" recoverable under Fla. Stat. § 501.211(2). *Keep Santa Rosa Beautiful Inc. v. Butterflies in Motion, Inc.*, 2022 WL 19078118, at *3 (N.D. Fla. Dec. 5, 2022), *adopted*, 2023 WL 2561786 (N.D. Fla. Mar. 17, 2023); *Rodriguez v. Recovery Perf. & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010). Further, the acts at issue did not take place "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Neither alleging a Counterclaim nor being interviewed by a reporter (if attributed to Starbucks) constitute "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Hence, "the FDUTPA does not apply and [Plaintiffs'] claim fails." *Bongino*, 477 F. Supp. 3d at 1321.

## VI.    The Complaint Suffers from Other Problems.

*First*, the Complaint is an impermissible "shotgun" pleading. *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008). "[E]ach count adopts the allegations of all preceding counts," *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015), and it makes allegations against "Defendants" without specifying each's conduct, *Magnum Constr. Mgmt.*, 522 F. Supp. 3d at 1206-08. Shotgun pleadings "exact an intolerable toll on the trial court's docket…and impose unwarranted expense." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997). Dismissal is required.

*Second*, the Complaint erroneously seeks injunctive relief for alleged "irreparable injury,"

Compl. ¶¶ 27, 31, 37, 42, Prayer F, without alleging a threat of future harm, *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) ("Article III…requires that a plaintiff seeking injunctive relief allege a threat of future harm."). An injunction would also restrict speech, and the First Amendment precludes such an "impermissible prior restraint on speech." *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1308-09 (S.D. Fla. 2008).

*Third*, the Complaint seeks "increased and/or treble damages," Compl. Prayer E, but none of the claims pled authorize that relief. The unauthorized request should be dismissed or stricken.

**VII.    Anti-SLAPP Motion to Dismiss and For Attorneys' Fees.**

Florida's anti-SLAPP statute authorizes "dismissing [an] action" that is "without merit" and brought "primarily because [the defendant] has exercised the constitutional right of free speech in connection with a public issue." Fla. Stat. §§ 768.295(3)-(4). "The court shall award the prevailing party reasonable attorney fees and costs." *Id.* For the reasons explained, Plaintiffs' claims are "without merit." *E.g.*, *Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020); *Bongino*, 477 F. Supp. 3d at 1322-24. The claims were also "primarily" brought because Defendants "exercised the constitutional right of free speech." *E.g.*, *Parekh*, 820 F. App'x at 835-36 (claim "arose out of" "publishing a news report"); *Bongino*, 477 F. Supp. 3d at 1322 (claims "arose out of" news report). The Court should thus dismiss and award Starbucks its fees here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety and with prejudice. The Court should also order Plaintiffs to pay Starbucks' attorneys' fees. *See* Fla. Stat. § 768.295; Fla. Stat. § 501.2105.

Dated: February 10, 2025                    Respectfully submitted,

                                            */s/Daniel B. Rogers*
                                            Daniel B. Rogers (Florida Bar No. 195634)
                                            Lori-Ann Ridley (Florida Bar No. 1044695)

SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
(305) 358-5171
drogers@shb.com
lridley@shb.com

***Counsel for Defendant Starbucks Corporation***