UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-24669-DPG

**Leigh M. Rothschild**, an individual citizen of Florida, and **Analytical Technologies, LLC**, a Wyoming company,

                Plaintiffs,

      v.

**Starbucks Corporation**, a Washington corporation, and **Rachael Lamkin**, an individual citizen of California,

                Defendants.
                                          /

**OPPOSITION TO STARBUCKS' MOTION TO DISMISS AND ANTI-SLAPP MOTION**

Plaintiffs Leigh M. Rothschild ("LMR") and Analytical Technologies, LLC ("ATL") oppose hereby the motion to dismiss of Defendant Starbucks Corporation ("Starbucks").[1]

---

[1] This Court should ignore Starbucks' baseless criticisms of Plaintiffs as "underfunded" and "NPEs" and "abus[ing] the litigation process," which is just a poorly-contrived attempt to engender bias in favor of behemoths like Starbucks who have the financial resources to avoid accountability to patent owners without sufficient resources to endure the inevitable "scorched-earth" litigation.  As the most active patent litigation fora have long recognized, "[M]any businesses and academic institutions enforce their patent rights through private companies []; such a business strategy is not nefarious."  *Advanced Processor Techs. LLC v. Atmel Corp.*, No. 12-152, at *15 (E.D. Tex. Mar. 26, 2013) (noting as improper to "treat such non-practicing entities as anything less than holders of constitutionally protected property rights, those rights having been legitimized by the Patent & Trademark Office") (quoting *Cradle IP, LLC v. Texas Instruments, Inc.*, No. 11-1254, slip op. (D. Del. February 12, 2013).

1

### This Court Has Personal Jurisdiction Over Starbucks, An Omnipresent Business

Starbucks first argues this Court lacks personal jurisdiction, but not only does Starbucks do business ***everywhere nationally*** including throughout this District, but it has litigated often in this and other districts in this Eleventh Circuit. *See, e.g., Torres v. Starbucks Corp.*, No. 20-311 (M.D. Fla.); *Lengyeltoti v. Starbucks Coffee Co. & Dart Container Corp.*, No. 16-60213 (S.D. Fla.); *Coleman v. Starbucks*, No. 14-527 (M.D. Fla.). "A court can exercise general jurisdiction over foreign corporations without offending due process when the corporation's contacts with the forum state are 'so continuous and systematic as to render them essentially at home' there." *Jastrjembskaia v. Incruises, LLC*, No. 23-12601, at *13 (11th Cir. Dec. 30, 2024) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted)). Certainly, if any such corporation exists, Starbucks qualifies.

Even if Starbucks is not subject to this Court's general jurisdiction by its omnipresence including in Florida (of which this Court may take judicial notice),[2] specific personal jurisdiction exists because as alleged in the Complaint, Starbucks' actions of making defamatory statements about qualifies as a tortious act causing the alleged injury within Florida; specifically, the alleged injury to Plaintiff LMR (a resident of this Florida District). *See Del Valle v. Trivago GMBH*, 56 F. 4th 1265, 1272 (11th Cir. 2022) (defendant "commits a tortious act in Florida by performing

---

[2] Judicial notice is proper of facts "not subject to reasonable dispute [as] generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); Fed. R. Evid. 201(c) (court "may take judicial notice on its own; or must take judicial notice if a party requests it and the court is supplied with the necessary information"); *see, e.g., McHale v. Chase Home Fin. LLC*, No. 17-6089, at *7 (E.D.N.Y. Dec. 29, 2020) (taking judicial notice—via Google Maps—of "a local Chase branch" for purposes of confirming "the address where Chase was served"). Here, Google Maps reveals the unsurprising fact that there are more than several dozen Starbucks locations in an around the City of Miami alone.

an act . . . that causes injury within Florida"); *see id.* ("Section 48.193(1)(a)(2) of Florida's long-arm statute "provides that a nonresident defendant is subject to personal jurisdiction for any cause of action 'arising from' a 'tortious act' committed in Florida."); *Ross v. Archer Publ'ns*, No. 24-20991, at *6-7 (S.D. Fla. Jan. 18, 2025); *Marti v. Iberostar Hoteles Y Apartamentos S.L.*, No. 20-20078, at *10 (S.D. Fla. Jan. 17, 2025).

As alleged in Paragraph 2 of the Complaint, Starbucks "knowingly directed and targeted its unlawful acts alleged herein toward Plaintiffs—including Plaintiff LMR personally—in Florida in this District, causing damages to Plaintiffs in this District." *See* ECF No. 1 at 1; se*e id.* at 5 (alleging in Paragraph 24 that Starbucks "published at least three false and defamatory statements about [Defendant] LMR"); *id.* (alleging in Paragraph 26 that "[a]s a result of [Starbucks'] publication of these false and defamatory statements, LMR has suffered and continues to suffer actual damages"). These allegations are sufficient to confer specific personal jurisdiction over Starbucks, including because "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Creeled, Inc. v. The Individuals*, No. 23-60780, at *7 (S.D. Fla. Oct. 23, 2023) (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

Starbucks argues that Plaintiffs' jurisdictional allegations are "conclusory," but the allegations are specifically tied to the facts sustaining the causes of action. For example, a claim of defamation requires allegations of (1) publication; (2) falsity; (3) knowledge or negligent disregard as to falsity; (4) actual damages; and (5) statement must be defamatory. *See Sullenberger v. City of Coral Gables*, No. 22-21830, at *72 (S.D. Fla. Jan. 15, 2025) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008)). The Complaint here details facts

satisfying each of these elements in the Complaint. *See* ECF No. 1 at 3-6 (Complaint ¶¶ 17-27). To the extent this Court finds Plaintiffs' factual allegations lacking in any respect, Plaintiffs should be permitted leave to amend the allegations in order to remedy any defects. *See Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (denying leave to amend "severely restrict[ed]" by Rule 15(a) "which directs that leave to amend 'shall be freely given when justice so requires'"); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Where a more carefully drafted pleading might state a viable claim, a district court should allow the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice.").[3]

Finally, Starbucks cites to *Madara* and *Alternate Energy* for a due process argument against personal jurisdiction, but each of those cases is readily distinguishable. In *Madara*, the plaintiff was a resident of California, and the defendant at most had "mere awareness, if he indeed was aware, that a small number of copies of the magazine might find their way to Florida." *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990). Here, by contrast, Starbucks knew that the very subject of the statements at issue was Plaintiff LMR, a Florida resident who suffered the alleged injury here. This was indeed a "deliberate exploitation of the Florida market" and specifically its resident, which supports specific personal jurisdiction. Similarly in *Alternate Energy*, the plaintiff was not a resident of Florida, and this Court therefore found insufficient "the mere fact that allegedly libelous statements appeared in a publication sold to

---

[3] For example, Starbucks argues the allegations lack a statement that the defamatory statements were made on behalf of Starbucks, but Plaintiffs do allege that "Starbucks' litigation counsel in the ATL Action is Defendant Lamkin of the Baker Botts law firm," and that the statements were made by Defendant Lamkin in the Bloomberg Article entitled "**Starbucks** Levels Fraud Claim In New Tactic To Fight Patent Suit." *See* ECF No. 1 at 3-4 (Complaint ¶¶ 15, 17). The agency connection is inherently alleged, as it is clearly implied. At a minimum, leave to amend should be permitted, if this Court finds any insufficiency in Plaintiffs' allegations.

4

Florida residents." *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004).

### Starbucks Is A Proper Defendant On Plaintiffs' Plausible Defamation Claim

Starbucks presents several arguments for dismissal under Rule 12(b)(6), but none should succeed and even if any is merited, Plaintiffs should be permitted leave to amend the allegations to remedy any defects. *See Thomas*, 847 F.2d at 773 (denying leave to amend "severely restrict[ed]" by Rule 15(a) "which directs that leave to amend 'shall be freely given when justice so requires'"); *Bryant*, 252 F.3d at 1163 ("Where a more carefully drafted pleading might state a viable claim, a district court should allow the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice."). Initially, it is notable that Starbucks' own attorney, Defendant Lamkin, did not find any allegations of the Complaint lacking, and instead filed an answer and amended answer. *See* ECF Nos. 8, 14.

Starbucks argues that the Complaint fails to specifically allege that Defendant Lamkin in the Bloomberg Article "made the [defamatory] statement as Starbucks' agent," though Starbucks acknowledges the allegation that the statement is "attributable to" Starbucks.[4] Though the parties' specific words chosen to characterize Starbucks' role may differ, Paragraph 17 of the Complaint states specifically that the Bloomberg Article is entitled "***Starbucks*** Levels Fraud Claim In New Tactic To Fight Patent Suit," thereby identifying Starbucks as the "speaker." Of course, Starbucks is a corporation which may "speak" only via the mouths of its agents, one of whom is its litigation counsel "Defendant Lamkin of the Baker Botts law firm," as alleged

---

[4] If necessary, this Court should take judicial notice of the Bloomberg Article attached with the Complaint. *See* ECF No. 1-1 (Complaint ¶ 17, Ex. A).

5

specifically. *See* ECF No. 1 at 3-4 (Complaint ¶¶ 15, 17); *see also supra* n.3. The "agency" connection is inherently alleged as it is clearly implied. At a minimum, leave to amend should be permitted, if this Court finds any insufficiency in Plaintiffs' allegations.[5]

Starbucks argues that the *Lipsig* case is "instructive," but the case is not binding on this Court, and moreover, it is readily distinguishable. *See Lipsig v. Ramlawi*, 760 So. 2d 170 (Fla. 3d DCA 2000). The statements at issue in *Lipsig*, the court determined after a full trial, had "nothing to do with the performance of Lipsig's legal services for [his client]." *Id.* at 186. But Plaintiffs allege that the statements at issue here were made directly in furtherance of Defendant Lamkin's performance of her legal services in defending her client—Starbucks.

Starbucks next presents a directly inconsistent argument—*i.e.*, that the "litigation privilege" applies because its defamatory statements do, in fact, relate to Starbucks' ongoing litigation. But the defamatory statements cited in Paragraph 24 of the Complaint are not from Starbucks' court pleadings, they are from its press interview with Bloomberg. Specifically, Starbucks' statement to Bloomberg that "with Leigh Rothschild, we never get the money because the shells go bankrupt" falsely misrepresents that (a) LMR owes money to one or more Defendants that they have been unable to "get;" (b) LMR is involved with one or more companies that is a "shell;" and (c) LMR is involved with one or more companies that has "go[ne] bankrupt." *See* ECF No. 1 at 5 (Complaint ¶ 24). Starbucks again cites to a non-binding

---

[5] Starbucks argues that "certainly" it had no "control over Attorney Lamkin's conduct, especially what she says in media interviews," but why is this "certain"? Only discovery could reveal the extent to which Starbucks controlled, directed and/or influenced the statements of its own attorney to Bloomberg in an article that attributes its content—in context and specifically in the title—to Starbucks. As is an ethical practice most litigation attorneys observe, no press interviews are given unless the client (in this case, Starbucks) specifically approves the attorney's statements.

case, which also is distinguishable because after a trial in that case, the court properly found that the statements at issue were taken directly from pleadings as "a matter of public record," and further there was no evidence defendant provided the pleadings "to the media or to anyone else." *See Della-Donna v. Nova University, Inc.*, 512 So. 2d 1051, 1056 (Fla. Dist. Ct. App. 1987). Here, by contrast, the statements at issue were quotes from Starbucks' attorney, not Bloomberg's citation to any pleadings.

Starbucks argues next for a "qualified litigation privilege," citing *DelMonico v. Traynor*, 116 So. 3d 1205 (Fla. 2013). But Starbucks' case is again non-binding, as well as distinguishable including because its narrow holding is inapposite here:

> [W]e hold that Florida's absolute privilege ***does not extend*** to statements made by an attorney during ex-parte, out-of-court questioning of a potential, nonparty witness in the course of investigating a pending lawsuit. In this ***narrow scenario***, a qualified privilege instead applies . . . [which] requires the plaintiff to prove express malice.

*Id.* at 1220 (emphasis added). Moreover, Starbucks' admits that the required "malice" is alleged, and could be alleged more specifically with leave to amend, if necessary.

Starbucks argues the defamation claim is not plausible because, it claims, Plaintiff LMR is a "public figure," and the statement at issue—"with Leigh Rothschild, we never get the money because the shells go bankrupt"—is "not false" because "bankrupt" equates to "lack[ing] assets to pay [] debts." But Starbucks' proposed "contextual reading" of the alleged defamatory statement is not accurate, and nevertheless the meaning of the statement is an issue for the factfinder, not one to resolve on a motion to dismiss. "Bankrupt" does not mean simply being

7

unable presently to pay a debt; instead, this is a "loaded" word that conveys to the public reading the Bloomberg Article that Plaintiffs have a practice of setting up and then legally "bankrupting" multiple entities. This is false. Defendants easily could have explained their real assertion about alleged non-payments instead of using the term "bankrupt," but being accurate in their aspersions would have frustrated their dramatic, defamatory purpose to harm Plaintiffs. The same is true of Defendants' use of the term "shell," which Defendants admit is a company without "significant assets." What is "significant" when a company holds title to patents for the purpose of licensing and otherwise asserting infringement? Starbucks' arguments are not pleading defects, but factual determinations which a jury must weigh, consider, and ultimately decide.[6]

### Plaintiffs' Other Claims Are Plausible As Well

Starbucks argues about the "single publication rule," but that rule applies only "in situations where the underlying defamation claim *has failed*. *See Block v. Matesic*, No. 21-61032, at *12 n.5 (S.D. Fla. June 5, 2023); *Grayson v. No Labels, Inc.*, 2022 WL 1222597, at * 5 (M.D. Fla. Apr. 21, 2022) (rule "prevents a plaintiff from recasting defamation as other actions, thereby potentially extending the statute of limitations or blocking defenses inherent in defamation actions" but "does not prevent one from pleading defamation and civil conspiracy to commit defamation, as both actions have the same defenses and the same statute of limitations").

---

[6] Finally, Starbucks argues that Plaintiff LMR is a "limited public figure," but the cited cases do not support such a determination, particularly at the pleading stage. Even in *Saro*, for example, the court concluded that, like Plaintiff LMR here, "[W]hen viewed in the light most favorable to Transmission Kingdom, the facts show Transmission Kingdom was dragged into a limelight it least desired." *Saro Corp. v. Waterman Broadcasting Corp.*, 595 So. 2d 87, 89 (Fla. Dist. Ct. App. 1992). Moreover, Starbucks' admits that the required "malice" is alleged, and could be alleged more specifically with leave to amend, if necessary.

Starbucks argues that for the claim of intentional infliction of emotional distress, the Complaint fails to allege Starbucks' conduct was "outrageous." If this Court finds the allegations for this claim lacking, they can easily be amended to characterize the conduct appropriately; to be sure, a jury likely would find that destroying someone's reputation through false statements indeed is "outrageous" conduct. The same is true for the unfair competition claim and the claim for tortious interference with business relationships, which Starbucks asserts is defective because there is no identification of a particular "businesses with which Plaintiffs are currently engaging in 'efforts to acquire and license patents.'" For the rest of its brief, however, Starbucks touts Plaintiff LMR as a "public figure" who acquires and licenses patents on a regular basis with numerous businesses, as a leader in this "cottage" industry.[7]

## The Anti-SLAPP Doctrine Is Inapplicable Here

Starbucks argues about Florida's anti-SLAPP statute, but that doctrine is inapplicable here. The only argument is itself a "shotgun"—*i.e.*, "For the reasons explained, Plaintiffs' claims are 'without merit.'" But this "bootstrap" argument should fail because the cases cited are inapplicable here. *See Parekh v. CBS Corp.*, No. 19-11794, at *16 (11th Cir. June 19, 2020) (suit was "without merit" and "arose out of the defendants' protected First Amendment activity—publishing a news report on a matter of public concern"); *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1322 (S.D. Fla. 2020) (suit "fails to state a claim for defamation" and "arose out of" defendant's news report).

---

[7] Starbucks argues about a "shotgun" pleading, but this argument is itself a "shotgun" argument. It argues that an allegation of "future harm" is lacking, but the Complaint contains these allegations. *See* ECF No. 1 at 5-8 (Complaint ¶¶ 26-27, 31, 37 and 42).

**Conclusion**

For each of the foregoing reasons, Plaintiffs respectfully request that this Court should deny Defendant Starbucks motion to dismiss and under Florida's anti-SLAPP statute, in all respects. To the extent this Court finds Plaintiffs' factual allegations lacking in any respect, Plaintiffs should be permitted leave to amend the allegations in order to remedy any defects.

Dated: February 24, 2025                                    Respectfully submitted,

**EDWARD F. O'CONNOR**
Florida Bar No. 132223
efo@avynolaw.com
**Law Offices Edward F. O'Connor**
104 Seabreeze Circle
Jupiter, Florida 33477
Tel: 949.291.2894

Stephen M. Lobbin (CA-SBN 181195)
sml@smlavvocati.com
**SML Avvocati P.C.**
888 Prospect Street, Suite 200
San Diego, California 92037
Tel: 949.636.1391

Attorneys for Plaintiffs