**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:24-cv-24669-DPG**

LEIGH M. ROTHSCHILD and
ANALYTICAL TECHNOLOGIES, LLC,

        *Plaintiffs*,

                                 **JURY TRIAL DEMANDED**

v.

STARBUCKS CORP. and
RACHAEL LAMKIN,

          *Defendants*.

_____

**DEFENDANT RACHAEL LAMKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

MATERIAL FACTS .......................................................................................................... 4

LEGAL STANDARD.......................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

    I.  Plaintiffs' Motion for Judgment on the Pleadings is premature
        and insufficient on the merits........................................................................... 6

        A.  Plaintiffs' Motion for Judgment on the Pleadings is premature. ................... 6

        B.  Plaintiffs' Motion fails on the merits. .......................................................... 7

    II.  Plaintiffs' Motion to Dismiss Attorney Lamkin's counterclaim
       for abuse of process must be denied. ............................................................. 15

CONCLUSION.................................................................................................................. 20

## INTRODUCTION

Plaintiff Leigh M. Rothschild ("Rothschild") is a prolific asserter of his own patents. He has filed more than 1,300 patent litigations that almost never reach the merits.[1] U.S. District Judge Maryellen Noreika has called Rothschild's litigation tactics "troubling" and "vexatious." *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc*., 494 F. Supp. 3d 263, 267 (D. Del. 2020). The Federal Circuit similarly described Rothschild's litigation conduct as "vexatious" and called his representations to courts "incongruent." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs*., 858 F.3d 1383, 1388, 1390 (Fed. Cir. 2017). The Electronic Frontier Foundation—a leading non-profit that works to address abusive legal threats in the patent space— has repeatedly characterized Rothschild's patents as "stupid."[2]

Beginning on June 20, 2023, Plaintiff Analytical Technologies, LLC ("AT"), an entity owned and operated by Rothschild, began filing a series of what would become twenty patent cases in the Eastern District of Texas. AT settled nineteen of these twenty litigations for trivial sums, revealing that AT and Rothschild knew their claims lacked merit: patent plaintiffs with strong claims against Fortune 100 companies typically do not settle those claims for paltry amounts.

In the E.D. Tex. patent actions, the one defendant that did not settle for nuisance value was Defendant Rachael Lamkin's ("Attorney Lamkin's") client, Starbucks. AT accused Starbucks of patent infringement even though Starbucks could not possibly be liable—AT's patent had expired

---

[1] In the only one of these cases of which Defendant Rachael Lamkin is aware that did reach the merits, Rothschild was ordered to pay attorneys' fees because of his claims' complete lack of merit. *Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.*, No. 215CV01431JRGRSP, 2017 WL 5178998, *2 (E.D. Tex. Nov. 8, 2017).

[2] *See* D. Nazer, *Federal Circuit Hits Stupid Patent Owner With Fee Award* (Electronic Frontier Found., June 6, 2017), https://www.eff.org/deeplinks/2017/06/federal-circuit-hits-stupid-patent-owner-fee-award; J. Mullin, *Stupid Patent of the Month: Digital Verification Systems Patents E-Signatures* (Electronic Frontier Found., Jan. 30, 2023), https://www.eff.org/deeplinks/2023/01/stupid-patent-month-digital-verification-systems-patents-e-signatures.

and Starbucks had no notice of the patent prior to expiration.[3] In an attempt to overcome their inability to show infringement, AT and Rothschild manufactured facts, including by stating falsely in AT's Complaint that Starbucks "has had actual notice of the [patent at issue] and [Starbucks] infringing activities since at least March 23, 2023."[4] After being pressed for evidence supporting its false claim by Attorney Lamkin, AT's counsel admitted that its allegation about actual notice was a "misrepresentation" to the court.[5] While Starbucks could have settled this claim like the other defendants, Starbucks stood its ground on principle, refused to settle, and instead asserted a counterclaim under the Texas Uniform Fraudulent Transfer Act against Rothschild, which makes him personally responsible for Starbucks attorneys' fees.[6]

In retribution, Rothschild filed the action before this Court, and his attorneys began personally threatening Attorney Lamkin. *See* Lamkin's Am. Answer and Countercl. 14-17, ¶¶ 40-54, ECF No. 14. Rothschild accuses Attorney Lamkin of waging a "personal vendetta campaign" against Rothschild, but this is pure projection. Mot. at 7 n.3. Attorney Lamkin specializes in defending companies against meritless patent actions.[7] She has been a patent litigator for two decades; has won numerous awards for her work, including the Daily Journal's Litigator of the

---

[3] *See* Starbucks Ans., Aff. Defenses, and Countercl. 13, ¶¶ 17-23, *Analytical Technologies, LLC v. American Dairy Queen Corp.*, Case No. 2:24-cv-00445-JRG-RSP (E.D. Tex. Oct. 17, 2024), ECF No. 52.

[4] *Id.* at 13, ¶¶ 20-25 (explaining the falsity of this allegation).

[5] *See* Starbucks Corrected Opp. to Pl.'s Mot. to Dismiss Ex. 4, *Analytical Technologies, LLC v. American Dairy Queen Corp.*, Case No. 2:24-cv-00445-JRG-RSP (E.D. Tex. Dec. 16, 2024), ECF No. 84-4.

[6] *See generally* Starbucks Ans., Aff. Defenses, and Countercl., *Analytical Technologies, LLC v. American Dairy Queen Corp.*, Case No. 2:24-cv-00445-JRG-RSP (E.D. Tex. Oct. 17, 2024), ECF No. 52.

[7] *See Rachael Lamkin* (BAKER BOTTS), https://www.bakerbotts.com/people/l/lamkin-rachael.

Year in 2024 and 2025; volunteers her time as an adjunct law professor at Southern University Law Center; and devotes much of her time to pro bono efforts, including the defense of small companies facing litigation from patent monetization entities. Attorney Lamkin is also the founder of the Lead Counsel Summit, a training academy to increase the number of female first-chair patent litigators.[8]

In short, Attorney Lamkin's work reflects a core belief that attorneys have a duty to the courts and to the legal profession to assure that the legal process operates with fairness and integrity. As a client explains, "In spite of Rachael's extraordinary litigation skills, the thing that has consistently impressed me the most about her is her integrity and desire to do the right thing."[9] What Rothschild attributes to some sort of personal spite that Attorney Lamkin supposedly harbors against Rothschild uniquely is instead simply just one of many examples of Attorney Lamkin defending her clients against meritless patent claims. Tellingly, Rothschild's Motion for Judgment on the Pleadings and to Dismiss Counterclaim (the "Motion") references (but does not cite) a 2013 interview wherein Attorney Lamkin calls upon national law firms to devote pro bono time to helping curb abuse of the legal and patent systems by "patent trolls."[10] *See* Mot. at 7 n.3. Contrary to his machinations, Attorney Lamkin does not single Rothschild out; she defends people against meritless patent actions, including but not limited to Rothschilds'.

---

[8] *The LCS Team* (LEAD COUNSEL SUMMIT), https://www.leadcounselsummit.com/team.

[9] *See Rachael Lamkin*, *supra* note 7 (quoting James Parke, the CEO of Blue Ocean Enterprises).

[10] G. Quinn, *A Patent Troll Conversation—One on One with Rachael Lamkin* (IP WATCHDOG, June 21, 2013), https://ipwatchdog.com/2013/06/21/a-patent-troll-conversation-one-on-one-with-rachael-lamkin/id=42133/; G. Quinn, *It Takes a Village to Kill a Patent Troll—Part 2 with Rachael Lamkin* (IP WATCHDOG, June 23, 2013), https://ipwatchdog.com/2013/06/23/it-takes-a-village-to-kill-a-patent-troll-part-2-with-rachael-lamkin/id=42241/.

As explained below, Rothschild's Motion for Judgment on the Pleading is premature because the pleadings have not closed. But even if the Motion were ripe, Rothschild cannot demonstrate that the statements in the Bloomberg article were false, a quintessential element of his defamation claim, and the Motion does not even attempt to make a showing as to other required elements of defamation. Moreover, the facts in Rothschild's own Complaint demonstrate that he is at least a limited public figure, a point re-emphasized by Starbucks and the *amicus* seeking leave to file briefs in this case. Starbucks Mot. to Dismiss 16-17, ECF No. 10; Unified Patent, LLC's Proposed Amicus Br., ECF No. 17-1. Accordingly, Rothschild must demonstrate that Attorney Lamkin knew (or was negligently reckless in not knowing) that her above-quoted statements were false, something that Rothschild's Motion for Judgment on the Pleadings does not even address.

Rothschild's Motion for Judgment on the Pleadings only reveals his claims' complete lack of merit. Rothschild's own Motion confirms that he did not initiate these claims against Attorney Lamkin based on a good-faith belief about their merit, but instead on an inappropriate motive to harass Attorney Lamkin, drive a wedge between Attorney Lamkin and her client Starbucks, and seek a more favorable settlement in the E.D. Tex. Litigation against Starbucks. For these reasons, the Court should reject Plaintiffs' Motion to Dismiss Attorney Lamkin's abuse-of-process counterclaim.

## MATERIAL FACTS

On October 10, 2024, Bloomberg Law published an article titled "Starbucks Levels Fraud Claim in New Tactic to Fight Patent Suit." Compl. Ex. A, ECF No. 1-1. The article discusses the use of the Uniform Fraudulent Transfer Act ("UFTA") by Attorney Lamkin in two cases: *AT v. Starbucks* (discussed above) and *Valjakka v. Netflix* in the Northern District of California. *Id.* at 3-4. The article incorrectly states that Attorney Lamkin "pioneer[ed]" the use of UFTA in patent

cases as she was not the first.[11] *Id.* at 3. The article quotes five people, including Attorney Lamkin.[12] *Id.* at 3-5.

Under a section titled "Long History," the Bloomberg article cites Attorney Lamkin's past experience with litigating against Rothschild. Specifically, the relevant section states:

> Lamkin said she's tussled with the prolific inventor for years and has been particularly frustrated by the early settlement offers from Rothschild, which she called "obnoxiously low."
>
> "The settlement amounts are so low that companies aren't going to pay attorneys the thousands of hours it takes to catch him at his game," she said in an interview. "And with Leigh Rothschild, we never get the money because the shells go bankrupt."

*Id.* at 5.

Rothschild complains specifically about the statement, "With Leigh Rothschild, we never get the money because the shells go bankrupt," which Rothschild insists is defamatory, untrue, and caused him harm. Compl. ¶¶ 24-26, ECF No. 1. On the contrary, in these quotes, Attorney Lamkin relates her observation—based on her past experience representing clients facing claims asserted by Rothschild-owned or -operated entities—that these entities' settlement offers are so low that they disincentivize defending against the underlying claims and that, even when a defendant chooses to fight and wins an attorneys' fees award, the defendants are often unable to obtain the fees because Rothschild's entities have insufficient funds. *See* Lamkin's Am. Answer and

---

[11] For example, a Westlaw search for "patent" and "fraudulent transfer act" yields forty-five results, including cases that pre-date Attorney Lamkin's use of this strategy.

[12] While no parties have taken discovery to confirm the accuracy of any purported quotes, Plaintiffs' Motion for Judgment on the Pleadings fails even assuming that Attorney Lamkin's quotes in the Bloomberg article are accurate.

Countercl. at 9-14, ¶¶ 5-39. What's more, this excerpt from the Bloomberg article makes no mention of Starbucks, Attorney Lamkin's co-defendant in this action.

## LEGAL STANDARD

Judgment on the pleadings "is appropriate" only "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and [courts] view those facts in the light most favorable to the non-moving party." *Id.* "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.*

A "motion to dismiss a counterclaim pursuant to Federal Rule 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Geter v. Galardi South Enters., Inc.*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard "does not require 'detailed factual allegations,'" just "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geter*, 43 F. Supp. 3d at 1325 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

**I.**    **Plaintiffs' Motion for Judgment on the Pleadings is premature and insufficient on the merits.**

### A.    Plaintiffs' Motion for Judgment on the Pleadings is premature.

Under Federal Rule of Civil Procedure 12(c), a party may move for "judgment on the pleadings," a procedural mechanism that "provides a means of disposing of cases when a judgment

6

on the merits can be achieved by focusing on the content of the *competing* pleadings." *Perez*, 774 F.3d at 1336 (emphasis in original) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004)) (cleaned up). As *Perez* makes clear, "Rule 12(c) . . . permit[s] motions for judgment on the pleadings only after the pleadings have 'closed.'" 774 F.3d at 1336 (quoting Fed. R. Civ. P. 12(c)). *Perez* expressly holds that because Federal Rule of Civil Procedure 7 contains an "express provision for an answer to a counterclaim," the Federal Rules "anticipate[] that the pleadings do not 'close' until an answer has been filed by the counter-defendant." *Id.* Because Attorney Lamkin filed an Amended Answer and Counterclaim, and Plaintiffs have not yet answered the Counterclaim, Plaintiffs' Rule 12(c) Motion is premature. That is reason alone for denying Plaintiffs' Motion for Judgment on the Pleadings.

Indeed, Plaintiffs suggest that "no issues of material fact exist," Mot. at 1, but Plaintiffs have yet to admit or deny many of the critical facts asserted in Attorney Lamkin's Counterclaim, including the following:

- Rothschild and/or his attorneys fabricated material facts in the Complaint, *see* Lamkin's Am. Answer and Counterclaim at 9-10, ¶¶ 5-17;

- Rothschild sued Starbucks to gain leverage even though the statement at issue cannot possibly be attributed to Starbucks, *id.* at 10-11, ¶¶ 18-20;

- Attorney Lamkin's statements are demonstrably true, *id.* at 11-14, ¶¶ 21-37; and

- Plaintiffs' motives in filing this case are improper, *id.* at 17, ¶ 54.

The facts contained within each of the paragraphs cited and summarized above must be either admitted or denied by Rothschild and AT before the pleadings are ripe for adjudication under Rule 12(c).

## B.   Plaintiffs' Motion fails on the merits.

Even if it were ripe, Plaintiffs' Motion does not come anywhere close to meeting Plaintiffs' burden of establishing that they are "entitled to judgment as a matter of law based on the substance

of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Off. for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). Plaintiffs' Motion addresses only their defamation claim and, for the reasons explained below, falls far short in explaining why Plaintiffs are entitled to judgment on that claim.

To succeed in any defamation claim, a plaintiff must show: (1) publication; (2) falsity; (3) actual damages; and (4) that the statement is defamatory. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). In addition to these elements, where the plaintiff is a limited public figure, as Rothschild is, the plaintiff must show that the defendant acted with "actual malice," defined as acting with "knowledge that the statement was false or [with] reckless disregard of whether it was false or not." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

### 1. Plaintiff fails to demonstrate that Attorney Lamkin's statements in the Bloomberg article are false.

Plaintiffs' Motion for Judgment on the Pleadings addresses just one element of their defamation claims—falsity—but, even with respect to that lone element, the Motion fails to establish that any of the three statements purportedly communicated by Attorney Lamkin is false. "Falsity exists only if 'the publication is substantially and materially false, not just if it is technically false.'" *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) (Gayles, J.) (quoting *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999)), *aff'd*, 879 F.3d 1254 (11th Cir. 2018). The statement "does not have to be 'perfectly accurate' if the 'gist' or the 'sting' of the statement is true." *Id.* Even a "flawed assertion of fact is not actionable if it is 'substantially true' because the common law of libel 'overlooks minor inaccuracies.'" *Turner*, 198 F. Supp. 3d at 1365 (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)). Moreover, the Court must consider the context in which the statement was made. *Keller v. Miami*

*Herald Pub. Co.*, 778 F.2d 711, 715-16 (11th Cir. 1985) (instructing courts to determine "how a reasonable individual would have interpreted" the statement at issue); *Turner*, 198 F. Supp. 3d at 1367 (refusing to "look at this phrase in a vacuum, uncoupled from the surrounding facts").

In a case similar to this one, a Kansas state court applied that state's defamation standard that, similar to Florida's, finds no defamation liability where the statements at issue "are substantially true." *McQuay v. Montgomery Publications, Inc.*, No. 62,771, 1989 Kan. App. LEXIS 197, *5 (Mar. 24, 1989). In that case, the court held that a statement that the plaintiffs had "declared bankruptcy" was substantially true where, although the plaintiffs had not actually filed for bankruptcy, the plaintiffs could not pay their debts and were facing foreclosures on their homes and businesses. *Id.* at *7-8. The court declined the plaintiffs' invitation to engage in hair-splitting over the meaning of "declared bankruptcy" and any "legal distinction between bankruptcy and insolvency" because, as a matter of law, "[s]light inaccuracies of expression are immaterial if the defamatory charge is true in substance." *Id.* at *8; *accord Turner*, 198 F. Supp. 3d at 1365 (explaining that the "common law of libel overlooks minor inaccuracies") (internal quotation marks omitted).

Plaintiffs allege that Attorney Lamkin's Bloomberg statement is false because the statement "'with Leigh Rothschild, we never get the money because the shells go bankrupt' falsely misrepresents that (a) [Rothschild] owes money to one or more Defendants that they have been unable to 'get'; (b) [Rothschild] is involved with one or more companies that is a 'shell'; and (c) [Rothschild] is involved with one or more companies that has 'go[ne] bankrupt.'" Compl. ¶ 24. Plaintiffs' Motion fails to demonstrate that any of these three statements satisfy defamation's falsity element.

9

*First*, the Motions fails to demonstrate the "substantial[] and material[] fals[ity]" of the purported statement that "LMR owes money to one or more Defendants that they have been unable to 'get,'" Compl. ¶ 24. *Turner*, 198 F. Supp. 3d at 1365. Plaintiffs accuse Attorney Lamkin of lying about the multiple courts that have ordered Rothschild's entities to pay attorneys' fees and the well-documented inability of those entities to pay:

> [I]n response to Paragraph 11 of the Complaint, Lamkin alleged falsely that the entity RDCI "was ordered to pay attorneys' fees in another matter and could not pay." *See* ECF No. 1 at 2; ECF No. 14 at 3. This is false, and may be the one of several subjects of Rule 11 sanctions, because a settlement was reached in the "other matter."

Mot. at 2.

These fee awards and the respective Rothschild entities' inability to satisfy them are well-documented in publicly available court filings, as explained in Attorney Lamkin's Answer and Counterclaim, at 11-14, ¶¶ 21-37. In fact, in an effort to obfuscate the readily verifiable nature of these facts, the above-quoted excerpt from the Motion omits Attorney Lamkin's reference, in Paragraph 11 of her Answer, to the Eastern District of Texas Memorandum Order that confirms the truth of this statement. As that document shows, Magistrate Judge Roy Payne expressly found: "The Court ordered RCDI to pay $288,911.99 in attorneys' fees and costs to ADS Security by December 8, 2017[.] Apparently, RCDI never paid the attorneys' fees award." *Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.*, No. 215CV01431JRGRSP, 2019 WL 6002198, at *1 (E.D. Tex. Mar. 11, 2019); *see also* Attorney Lamkin's Am. Countercl. at 11, ¶ 27 (referencing this Memorandum Order).

Plaintiffs offer the non-sequitur that Attorney Lamkin's statement with respect to "never get[ting] the money" is false because the issue of the Rothschild entities' non-payment was purportedly later addressed by a settlement. Mot. at 2 ("[A] settlement was reached in the 'other

matter.'"). As an initial matter, this purported fact of settlement is inappropriate for consideration on a motion for judgment on the pleadings because it is a fact that is not found in *any* of the pleadings. Attorney Lamkin's Amended Answer and Counterclaim asserts that the court-ordered attorneys' fees were not paid—thereby establishing the truth of the Bloomberg quote at issue— and Plaintiffs offer nothing but attorney argument in response. Even if the fact of settlement was appropriate for consideration at this stage of the case, it is irrelevant. Even in their Motion, Plaintiffs never claim that the Rothschild entities actually paid the court-ordered attorneys' fees. Whatever settlement was ultimately entered into to address this non-payment is simply a red herring.

On this issue and elsewhere in their Motion, Plaintiffs complain that Attorney Lamkin denies facts "without citing any alleged facts supporting her denial." *See, e.g.*, Mot. at 3. But Federal Rule of Civil Procedure 8(b)(1)(B) provides that, to respond to the allegations in a complaint, an answer need only "admit or deny the allegations asserted against it by an opposing party." Attorney Lamkin has done that.

***Second***, Plaintiffs' Motion fails to demonstrate the "substantial[] and material[] fals[ity]" of the purported statement that "LMR is involved with one or more companies that has 'go[ne] bankrupt.'" Compl. ¶ 24; *Turner*, 198 F. Supp. 3d at 1365. Plaintiffs argue, "there is no plausible dispute that 'go[ing] bankrupt' means following a process under the U.S. Bankruptcy Code[.]" Mot. at 3. But Attorney Lamkin directly disputes that assertion. Attorney Lamkin's Am. Countercl. at 13-14, ¶¶ 35-37. In context, Attorney Lamkin's statement, "we never get the money because the shells go bankrupt," means defendants who obtain attorneys' fees awards do not get paid because the Rothschild entities do not have money to pay; that is the "gist" of what she is saying. *Turner*, 198 F. Supp. 3d at 1365. And the "gist" of her statement is true. *See* Attorney Lamkin's Am.

Countercl. at 11-13, ¶¶ 22-34. Plaintiffs resist this conclusion by resorting to the exact sort of hair-splitting that the "gist" standard of defamation rejects. *Turner*, 198 F. Supp. 3d at 1365; *McQuay*, 1989 Kan. App. LEXIS 197, at *7-8.

Of course, setting aside the "gist" standard for falsity, Attorney Lamkin's broader understanding of the term "bankrupt" is more well-supported than Plaintiffs'. Black's Law Dictionary defines "bankrupt" as "[i]ndebted beyond the means of payment," "without enough money to pay back what one owes," or "insolvent." *Bankrupt*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also* Ex. 1-1, Cooper Decl. Ex. 1 (attaching this dictionary entry). Further distancing the term from exclusive use in formal bankruptcy judicial proceedings, Black's Law Dictionary also explains that, when used as a noun, "bankrupt"—defined as "[s]omeone who cannot meet current financial obligations" or "an insolvent person"—is a term that has not been used by formal bankruptcy statutes since 1979 and that the "Bankruptcy Code uses *debtor* instead of *bankrupt*." *Bankrupt*, BLACK'S LAW DICTIONARY (12th ed. 2024); Ex. 1-1, Cooper Decl. Ex. 1.

At least two judicial decisions have embraced a similar understanding of the term "bankrupt" **in defamation actions specifically**: In *Levin v. McLeskey*, the court held that a statement that a company "was going bankrupt" was "not a false statement" in part because the company "ha[d] never been able to pay its debts as they bec[a]me due," "was losing money," and "was not paying" a specific note. 881 F. Supp. 1030, 1049-50 (E.D. Va. 1995), *aff'd in relevant part*, 164 F.3d 210 (4th Cir. 1998). And in *McQuay*, the court held that even the statement that plaintiffs had "declared bankruptcy" was substantially true where, although the plaintiffs had not actually filed for bankruptcy, the plaintiffs could not pay their debts and were facing foreclosures on their homes and businesses. 1989 Kan. App. LEXIS 197, at *7-8.

The truth of Attorney Lamkin's "bankrupt" statement is further confirmed by the broader context of her statement. *See Turner*, 198 F. Supp. 3d at 1376 (emphasizing that the "gist" of a statement can be "found only by reference to the entire context" of the statement at issue). The Bloomberg quote references defendants that obtain attorneys' fees awards that they cannot collect because the entities that owe the fees do not have the money pay them. This inability to pay—not any formal bankruptcy proceedings—is the focus of the term "bankrupt" in this quote.

Plaintiffs' reliance on *Wells Fargo Bank, N.A. v. Kendrick* is flawed. No. 6:13-CV-1577-ORL-28, 2014 WL 408044 (M.D. Fla. Feb. 3, 2014). First, the decision interprets the word "bankruptcy"—not "bankrupt," which is the actual word used in the Bloomberg article. *Id.* at *3 Second, *Wells Fargo* has nothing to do with defamation but instead assessed the interpretation of "bankruptcy" as used in a loan instrument. *Id.* at *2. That quasi-contractual exercise involves a far more exacting analysis of the definition of "bankruptcy" than applying the "gist" standard that applies in defamation actions. *Turner*, 198 F. Supp. 3d at 1365. Third, Plaintiffs fault Attorney Lamkin for relying on a decision from Kansas state court, Mot. at 3—they ignore Attorney Lamkin's additional reliance on the Eastern District of Virginia's decision in *Levin*—but these decisions offer persuasive guidance of how to apply the falsity element specifically to the use of the term "bankrupt" under defamation legal standards that are virtually indistinguishable from the "gist" standard that Florida law applies to defamation claims.

***Third***, Plaintiffs' Motion fails to demonstrate the "substantial[] and material[] fals[ity]" of the purported statement that "LMR is involved with one or more companies that is a 'shell.'" Compl. ¶ 24; *Turner*, 198 F. Supp. 3d at 1365. Plaintiffs again advance a hair-splitting theory as to what constitutes a "shell" entity, asserting that a company is a "shell" only if it has *no* assets and acts as "a vehicle for another company's business activities." Mot. at 4. This fussing over the

definition of "shell" is again the exact sort of theory that the "gist" standard of defamation law rejects. This Court has explained that "[a] 'shell company' can be defined as a company without active business operations or *significant* assets." *Llauro v. Tony*, 470 F. Supp. 3d 1300, 1307 n.3 (S.D. Fla. 2020) (emphasis added). The allegations in Attorney Lamkin's Counterclaim, at 12-13, ¶¶ 31-34, about Rothschild entities having so little cash in their bank accounts that they were unable to satisfy fee awards more than suffices to render Attorney Lamkin's statement, at a minimum, "substantially and materially" true. *Turner*, 198 F. Supp. 3d at 1365. That is further supported by the context of Attorney Lamkin's use of the word "shell": the Rothschild-controlled entities at issue lack sufficient assets to satisfy the fee awards.

Plaintiffs also try to find footing for the "shell" aspect of their defamation claim not just on the 2024 Bloomberg article but also a 2017 Ars Technica article. Mot. at 4 (citing Compl. Ex. B). But any claim based on that 2017 article would be time barred because the statute of limitations for defamation is two years from the publication of the allegedly defamatory material. § 95.11(5)(h), Fla. Stat.; *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174 (Fla. 5th DCA 2016).

> **2.** **Plaintiffs' Motion does not even address many required defamation elements, including the requirement that Plaintiffs show that Attorney Lamkin acted with actual malice.**

Plaintiffs' Motion does not even attempt to argue that they have satisfied the elements of demonstrating actual damages or that the statement at issue is defamatory. *Jews for Jesus*, 997 So. 2d at 1106. Additionally, Plaintiffs' Motion critically does not even attempt to show that Attorney Lamkin acted with "actual malice" in making the Bloomberg statements. *Readon*, 317 So. 3d at 1235 (citing *N.Y. Times*, 376 U.S. at 279-80). As asserted by Attorney Lamkin's Answer and explained at length in Starbucks Motion to Dismiss and Unified Patent, LLC's Proposed Amicus

14

Brief, Rothschild is a limited public figure, a point that Plaintiffs' Motion does not refute. Am. Ans. and Countercl. at 6, ¶ 25 (denying the allegation that Rothschild is a private person and that Attorney Lamkin acted with malice); Starbucks Mot. to Dismiss at 16-17; Unified Patent, LLC's Proposed Amicus Br. Accordingly, Plaintiffs must demonstrate "actual malice" to be entitled to judgment on the pleadings, but the Motion makes no attempt to explain how this element is satisfied. *Readon*, 317 So. 3d at 1235 (citing *N.Y. Times*, 376 U.S. at 279-80).

## II. Plaintiffs' Motion to Dismiss Attorney Lamkin's counterclaim for abuse of process must be denied.

Under Florida law, an abuse of process claim has three elements: "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's action." *EMI Sun Village, Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019) (quoting *Hardick v. Homol*, 795 So. 2d 1107, 1111 n.2 (Fla. 5th DCA 2001)). Attorney Lamkin's Counterclaim asserts that, by filing the above-captioned action, Plaintiffs have initiated a lawsuit without a reasonable basis in fact or law—and, in fact, based in part on fabricated falsehoods contained in the Complaint—for the improper purpose of gaining settlement leverage in a collateral legal proceeding, driving a wedge between Attorney Lamkin and her client Starbucks, and otherwise harassing Attorney Lamkin. As explained below, these allegations state a claim for abuse of process under the applicable law.

This Court, applying Florida law, has concluded that the first and second elements of abuse of process turn primarily on whether there has been "a use of the process for an immediate purpose other than that for which it was designed." *Svistina v. Elbadramany*, No. 22-cv-20525, 2023 WL 34642, *4 (S.D. Fla. Jan. 4, 2023) (quoting *Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. 3d DCA 1989)). In *Scozari v. Barone*, a Florida appellate court held that this requirement was satisfied

where an abuse-of-process defendant had "filed an action seeking to impose an equitable lien and a lis pendens against [the abuse-of-process plaintiff's] home." 546 So. 2d 750, 751 (Fla. 3d DCA 1989). The court explained that this "issuing and employment of a writ" was done for a purpose "other than its intended" one because the abuse-of-process defendant's "own testimony indicate[d] that he employed the action for the writ at least in part as a bargaining chip." *Id.* at 752. The court explained that initiating civil legal proceedings as a bargaining chip might be "justified" if "there was a reasonable basis in law and fact to initiate the judicial proceedings," but that a different conclusion is warranted where an action is initiated with "no reasonable basis in law and fact to bring the action." *Id.* In these situations, where an abuse-of-process defendant files a baseless civil action for some collateral purpose—for example, attempting to "induce the [abuse-of-process plaintiff] to pay money," to "force or compel the [abuse-of-process plaintiff] to resolve some custody dispute," or to "tie up the [abuse-of-process plaintiff's] property"—then "there has been an abuse of process." *Id.*

Just two years ago, this Court applied *Scozari* to deny a motion to dismiss an abuse of process claim. In *Svistina v. Elbadramany*, the Court concluded that the abuse-of-process plaintiff had "alleged precisely the situation described in *Scozari*: [the abuse-of-process defendant] allegedly initiated a criminal case without basis in law or fact to induce [the abuse-of-process plaintiff] to settle a civil case." Case No. 22-cv-20525, 2023 WL 34642, at *5 (S.D. Fla. Jan. 4, 2023). This conclusion in *Svistina* was driven in large part by the fact that the underlying criminal case had no "reasonable basis in law and fact" and that the criminal case "resulted from [the abuse-of-process defendant's] 'lies to the police.'" *Id.* Plaintiffs' Motion suggests that the factual and legal viability of Plaintiffs' defamation claim has "nothing to do with . . . the plausibility of 'abuse of process' counterclaim." Mot. at 7. But this assertion is flatly contradicted by *Scozari* and

*Svistina*, which hold that claims without a reasonable basis in law and fact, pursued for some collateral purpose, do constitute abuse of process.

Attorney Lamkin's Counterclaim is on all fours with *Scozari* and *Svistina*. Her Counterclaim alleges that the action was filed not for the purpose of obtaining damages on a legitimate cause of action but instead "as a bargaining chip" to use in attempting to "resolve" a collateral legal proceeding. *Scozari*, 546 So. 2d at 751. Specifically, Attorney Lamkin alleges that Plaintiffs initiated this action to gain "leverage to settle the E.D. Tex. Litigation," Am. Countercl. at 10, ¶ 18, and that Plaintiffs in fact "have repeatedly tried to settle the E.D. Tex. Litigation since the filing of this [S.D. Fla.] lawsuit on terms less favorable than offered prior to filing this litigation," *id.* at 17, ¶ 54. The Counterclaim further alleges that Plaintiffs' claims were filed to "force or compel" some action in a separate legal proceeding, *Scozari*, 546 So. 2d at 751, asserting that Plaintiffs initiated the above-captioned action to "drive a wedge between Attorney Lamkin and her client Starbucks," *id.* at 18, ¶ 56, and specifically noting that Plaintiffs' counsel have tried to leverage the facts underlying the above-captioned action to force Attorney Lamkin to be disqualified from her representation of Starbucks in the E.D. Tex. lawsuit, *id.* at 16, ¶¶ 48-49. Finally, the Counterclaim alleges that Plaintiffs initiated this S.D. Fla. action "to attempt to intimidate Attorney Lamkin, including threatening Attorney Lamkin with physical harm." *Id.* at 15, ¶ 41. Plaintiffs insist in their Motion, at 5, that their claims in this S.D. Fla. action "have nothing to do with the parties' other litigation," but that is flatly contradicted by the allegations in the Counterclaim, which must be accepted as true at the motion to dismiss stage.

Moreover, just as in *Scozari* and *Svistina*, Attorney Lamkin has alleged that "Plaintiffs' action is . . . without a reasonable basis in fact or law," explaining in detail why this is the case. *Id.* at 11-14, ¶¶ 21-39; *see Scozari*, 546 So. 2d at 752 (emphasizing that lawsuits intended to pursue

17

some collateral goal and initiated without a "reasonable basis in law and fact" constitute abuse of

process); *Svistina*, 2023 WL 34642, at *5 (same). Notably, Plaintiffs' Motion to Dismiss does not

even attempt to explain the legal or factual basis of any of their claims. And, as explained above,

the Motion for Judgment on the Pleadings offers arguments on only one element of one claim—

and even those arguments reveal the lack of a reasonable basis for Plaintiffs' defamation claim,

for all the reasons explained above. Plaintiffs' silence on the factual and legal basis for their claims

does nothing to respond to the allegations in the Counterclaim, at 9-14, ¶¶ 5-39, that Plaintiffs'

claims lack such a basis.

Attorney Lamkin's Counterclaim also alleges that Plaintiffs' lawsuit is based on false

allegations. The Counterclaim explains that "the allegation in Paragraph 20 of the Complaint—

that 'Defendant Lamkin stated recently to LMR directly that 'before I'm done with you I'm going

to bankrupt you'—is false and contrived entirely out of whole cloth." Am. Countercl. at 9, ¶ 5.

This allegation is indistinguishable from the allegation in *Svistina* that the underlying legal

proceeding was based on "lies to the police." 2023 WL 34642, at *5.

> Tellingly, plaintiffs don't deny that they fabricated evidence. Instead, they merely note:
>
> In Paragraph 5 of the counterclaim, Lamkin asserts that Plaintiffs fabricated
> evidence, but there is no possible resolution of this particular assertion on the
> pleadings; instead, the evidence supporting Plaintiffs' assertion requires confirming
> LMR's credibility which is much superior to Lamkin, who cannot even offer any
> explanation for why her defamatory statements were not false, and defamatory.

Mot. at 6.

Plaintiffs' argument is striking. One would think Plaintiffs, or at least their counsel, would

want to prove Plaintiffs did not in fact fabricate evidence. Instead, they claim the issue will come

down to a "credibility" determination between Rothschild and Lamkin. Plaintiffs' claim that the

issue will be one of "credibility" impliedly admits that they have no actual evidence of Attorney

Lamkin's purported threat—no emails, phone records, or anything else that might support their incredible allegation, except Rothschild's word. Plaintiffs also confusingly state that "there is no possible resolution of this particular assertion on the pleadings," but *it is Plaintiffs* who have moved for judgment on the pleadings.

Plaintiffs' Motion half-heartedly offers the assertion that "Lamkin herself has not even denied her statements on which defamation is proven." Mot. at 5. But even assuming that Attorney Lamkin was accurately quoted in the Bloomberg article (which Attorney Lamkin's Answer does not concede), Plaintiffs still have not demonstrated that their claims overall have a "reasonable basis in fact or law" just because the underlying quote may be accurate when the rest of the claim is built on insufficient legal theories and fabrications of fact. Plaintiffs' Motion also offers the above-discussed assertion that certain parties in the *RDC* litigation settled after Rothschild-controlled entities were unable to satisfy their attorney fee awards. *See* Mot. at 6. For the reasons explained above, this is irrelevant: the Bloomberg statement asserts that Rothschild-owned or -operated entities failed to pay attorneys' fees awards, a fact Plaintiffs do not deny. On the contrary, Plaintiffs' Motion admits that the Rothschild-associated entities made "no payment" in connection with at least one settlement. *Id.*

Finally, Plaintiffs argue that their not-yet-final settlement with Starbucks demonstrates that this case was not filed for "settlement leverage" in the E.D. Tex. lawsuit. Mot. at 7. This fact is outside the pleadings and inappropriate for consideration on a motion to dismiss. But even if this fact could be considered, the not-yet-final settlement between Starbucks and Plaintiffs would settle both the E.D. Tex. lawsuit and Plaintiffs' claims against Starbucks in this lawsuit, only confirming Plaintiffs' improper use of this case to affect the E.D. Tex. lawsuit.

Plaintiffs' Motion does not even attempt to address the third and final element of abuse of process: that "the plaintiff was injured as a result of defendant's action." *EMI Sun Village, Inc. v. Catledge*, 779 F. App'x at 635. Attorney Lamkin's Counterclaim explains that she has been injured by the "time and [] costs associated with defending this litigation, including travel to the Court for any hearings." Am. Countercl. at 17-18, ¶¶ 55-56. The Counterclaim explains that she is "also burdened by the need to respond in the E.D. Tex. Litigation to Plaintiffs' inquiries and discovery about the instant action." *Id.* at 18, ¶ 56. Plaintiffs' Motion is silent as to these allegations.[13]

## CONCLUSION

For the reasons explained above, Defendant Attorney Lamkin respectfully requests that the Court deny Plaintiffs' Motion for Judgment on the Pleadings and Plaintiffs' Motion to Dismiss Attorney Lamkin's Abuse of Process Counterclaim.

---

[13] Plaintiffs' remaining arguments on their Motion to Dismiss are repetitive of those previously addressed and fail for the reasons explained in this Opposition.

Dated: March 21, 2025

Respectfully submitted,

*/s/ Brenton H. Cooper*
Brenton H. Cooper
Florida Bar No. 1035909
**BAKER BOTTS L.L.P.**
brent.cooper@bakerbotts.com
700 K Street, N.W.
Washington, D.C. 20001
T: 202-639-1325
F: 202-639-7890

Paul R. Elliott (admitted *pro hac vice*)
Texas Bar No. 06547500
910 Louisiana St.
Houston, Texas 77002
T: 713-229-1226
F: 713-229-1522
paul.elliott@bakerbotts.com

*Attorneys for Defendant Rachael Lamkin*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 21, 2025, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

*/s/ Brenton H. Cooper*
Brenton H. Cooper