UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-24669-DPG

LEIGH M. ROTHSCHILD and
ANALYTICAL TECHNOLOGIES, LLC,

   *Plaintiffs*,

v.

STARBUCKS CORP. and
RACHAEL LAMKIN,

   *Defendants*.

---

**DEFENDANT RACHAEL LAMKIN'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF SAMEER SOMAL AND DOUGLAS RYDER**

Defendant/Counter-Claimant Rachael Lamkin ("Attorney Lamkin") respectfully moves to exclude the expert testimony of Sameer Somal and Douglas Ryder under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  MATERIAL FACTS ........................................................................................... 2

III. LEGAL STANDARD .......................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 5

    A.   Testimony on the Law and Ultimate Legal Opinions Should Be Excluded ........... 5

    B.   Somal's Economic Opinions Are Unreliable, Speculative, and Not Based on Sufficient Facts or Data ........................................................................................ 6

        1)   The Opinion About "Recent Opportunity Cost" Should Be Excluded ....... 6

        2)   The Opinion About "Recent Reduction in Campaign Revenue Due To Decreased Activity" Should Be Excluded ................................................... 9

        3)   The Opinion About "Recent Reduction in ROI From Campaigns Due to Difficulty in Adding Staff" Should Be Excluded ..................................... 10

        4)   The "Loss of Exit Value for the Company PAM" Category Should Be Excluded .................................................................................................... 12

        5)   The Opinion on "Outgoing Out Of Pocket Legal And Filing Costs" Should Be Excluded .................................................................................................. 14

    C.   Testimony Regarding "Reputational Damages" and "Rehabilitation Damages" Should Be Excluded ............................................................................................. 14

        1)   The Reputational Damage Category Should Be Excluded ....................... 16

        2)   Testimony Regarding "Reputational Repair" Should Be Excluded ......... 16

    D.   Testimony Regarding "Emotional Distress" and "Punitive Damages" Should Be Excluded ............................................................................................................. 18

V.   CONCLUSION................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*,
582 F.3d 1227 (11th Cir. 2009) ...............................................................................15

*Burkhart v. Washington Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997) ................................................................................5

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003) ..........................................................................6, 11

*Cordoves v. Miami-Dade Cnty.*,
104 F. Supp. 3d 1350 (S.D. Fla. 2015) .....................................................................5

*Fla. Seed Co. v. Monsanto Co.*,
105 F.3d 1372 (11th Cir. 1997) .......................................................................7, 10, 11

*Guillaume v. Hyde*,
No. 20-60276-CIV, 2020 WL 3317042 (S.D. Fla. June 18, 2020).......................6, 11

*Hughes v. Kia Motors Corp.*,
766 F.3d 1317 (11th Cir. 2014) .............................................................................5, 9

*In re Denture Cream Prods. Liab. Litig.*,
795 F. Supp. 2d 1345 (S.D. Fla. 2011) ....................................................................11

*Kilpatrick v. Breg, Inc.*,
613 F.3d 1329 (11th Cir. 2010) ...............................................................................12

*Loeffel Steel Prods, Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) ...............................................................9, 10, 13

*Ludwin v. Proman*,
No. 20-CV-81755-RS, 2023 WL 315909 (S.D. Fla. Jan. 19, 2023)................4, 5, 17

*Menge v. Ash-Shafii*,
No. 23-11339, 2025 WL 2058320 (E.D. Mich. July 22, 2025)..................... *passim*

*Rebotix Repair, LLC v. Intuitive Surgical, Inc.*,
No. 8:20-CV-2274-VMC-TGW, 2022 WL 3226794 (M.D. Fla. Aug. 10, 2022)....................8

*United States v. Rouco*,
765 F.2d 983 (11th Cir. 1985) .......................................................................8, 10, 13

*United States v. Scrima*,
    819 F.2d 996 (11th Cir. 1987) ..................................................................................8, 10, 13

**OTHER SOURCES**

*Douglas J. Ryder* (RYDER, MAZZEO & KONIECZNY) .........................................................2

*Who We Are* (BLUE OCEAN GLOBAL TECHNOLOGIES)......................................................2

## I.      INTRODUCTION

Defendant Rachael Lamkin moves to exclude the expert testimony and damages report of Sameer Somal and Douglas Ryder. Their opinions fail to meet the reliability standards of Federal Rule of Evidence 702 and *Daubert*.

The report submitted by Somal and Ryder is seventy-six pages long, yet contains only eleven pages of discussion of actual purported damages. The opinions contained within those pages are inadmissible for five primary reasons.

First, Somal's economic analysis is speculative and devoid of factual support. Somal relies exclusively on verbal conversations he had with Plaintiff Leigh Rothschild. He did not review a single financial document, tax return, or profit and loss statement. As Somal admitted in his deposition, his opinions are based entirely on numbers Mr. Rothschild "verbally" provided to him. An expert cannot merely parrot a plaintiff's unsubstantiated assertions.

Second, the great bulk of the purported economic loss Somal identifies was allegedly suffered by a non-party limited liability company, Patent Asset Management LLC ("PAM"), not Mr. Rothschild. Under the shareholder-standing doctrine, Rothschild cannot recover these damages.

Third, Somal's opinions on reputational harm improperly rely on a "three rings" methodology that he artificially manufactured for purposes of this and other litigations. This exact methodology—and the specific damages figures arrived at by using this methodology—were excluded as unreliable just a few months ago in *Menge v. Ash-Shafii*, another case in which Somal was offered as a purported expert. No. 23-11339, 2025 WL 2058320 (E.D. Mich. July 22, 2025). Among other defects of this methodology, Somal concedes that reputational repair is "impossible," *i.e.*, his recommended method of reputational repair will fail.

1

Fourth, Somal admitted that the relevant legal communities had a poor opinion of Mr. Rothschild, his patents, his "shell" patent plaintiffs, and his litigations prior to Lamkin's allegedly defamatory statement, and that Somal cannot isolate any harm allegedly caused by Lamkin from Rothschild's pre-existing negative reputation held by the broader relevant communities.

Fifth, Ryder and Somal improperly attempt to opine on ultimate legal conclusions. Ryder, a patent attorney, intends to testify on the law of defamation and torts. Legal instruction is the exclusive province of the Court, and experts may not tell the jury what result to reach.

Because these opinions are unreliable, speculative, the result of *ipse dixit*, and invade the province of the Court and jury, the testimony of Sameer Somal and Douglas Ryder must be excluded.

## II.   <u>MATERIAL FACTS</u>

On September 2, 2025, Plaintiffs served the damages report of Sameer Somal and Douglas Ryder. Dam.Rpt., Exh. A. Somal is a Chartered Financial Consultant and the CEO of Blue Ocean Global Technology, a catch-all technology services company that performs, "digital transformation, business consulting and technology development services."[1] Somal purports to be a "reputation expert" who "appl[ies] [his] cumulative knowledge and experience to assess an individual's damages and recommend the appropriate course of action to remediate damages moving forward." Dam.Rpt., at 7.

Ryder is an attorney who specializes in transactional intellectual property law, including patent prosecution before the United States Patent and Trademark Office.[2] Ryder purports to

---

[1] *Who We Are* (BLUE OCEAN GLOBAL TECHNOLOGIES), https://www.blueoceanglobaltech.com/about-us/who-we-are/

[2] *Douglas J. Ryder* (RYDER, MAZZEO & KONIECZNY), https://rmkiplaw.com/team_member/douglas-j-ryder/

"provide an expert opinion regarding Intellectual Property matters referred to in th[e] report."
Dam.Rpt., at 7.

The Somal/Ryder damages report is seventy-six pages long, with hundreds of pages of appendices, but the actual "Damages" section of the report is a mere eleven pages. Dam.Rpt., at 65-76. The report purports to evidence five categories of "financial loss." *Id*. at 65. As Somal admitted in his deposition, four of the five categories of alleged financial loss were suffered, if at all, by PAM, not by Rothschild directly. Somal Dep. Tr., Exh. B, at 111:25-113:2-5, 116:11-13, 118:8-11, 121:2-7. Materially, with one minor exception, Somal's analysis relies exclusively on verbal conversations he had with Rothschild; Plaintiffs did not provide Somal with a single financial document. Somal Dep. Tr., at 113:6-115:10, 116:14-17, 117:1-15, 123:1-3.

The damages report also details alleged damage to Mr. Rothschild's reputation. Somal estimates that Rothschild has suffered damage to his reputation and opines that Attorney Lamkin should pay $500,000 to $750,000 to Rothschild based on a "three rings" methodology. Somal relied on the exact same methodology and used it to calculate the same amount of damages in a separate case brought by a police officer who alleged that a city official defamed him. In that case, as here, Somal "explained that in his experience, a 'solid structure' for assessing damages would consider three 'rings': Menge's immediate contacts, his prospective contacts, and strangers. 'Adding the three reputational rings together,' he 'calculate[d] and estimate[d] that damages' totaled to 'no less than $550,000 - $750,000.'" *Menge*, 2025 WL 2058320, at *5. The *Menge* court excluded Somal's three-rings methodology, finding that it was untethered to the facts of that case and insufficiently "[un]reliable" for purposes of Federal Rule of Evidence 702. *Id*.

The damages report then contains a section on the cost of rehabilitating Mr. Rothschild's reputation. But, the report concludes that efforts at reputation rehabilitation are guaranteed to fail.

Dam.Rpt., at 45 ("Suppressed negative links can easily reappear on search engines[.]"); *id.* at 47 ("[T]here are no guarantees for successful removal or deindexing of target links through search engines."); *id.* ("Even with the most aggressive campaign, negative internet content featuring Mr. Rothschild will likely reappear and affect his reputation in perpetuity."); *id.* at 50; *id.* at 69 ("It is impossible to reverse the past damage and completely rehabilitate Mr. Rothschild's negative reputation."). Further, Somal admitted in his deposition that he cannot isolate reputational harms allegedly caused by Attorney Lamkin's specific statement in the 2024 Bloomberg Article, as opposed to the plethora of negative opinions that have been expressed about Mr. Rothschild in articles, trade press, social media, and other sources—both before and after Attorney Lamkin's statement to Bloomberg in October 2024. Somal Dep. Tr. at 136:10-23.

The report concludes with sections on "emotional distress damages" and "punitive damages." Somal has twice been barred from presenting evidence or testimony as to those categories of damages. *Menge*, 2025 WL 2058320, at *2 ("The plaintiff concedes that Mr. Somal's opinion on emotional distress damages should not be allowed."); *Ludwin v. Proman*, No. 20-CV-81755-RS, 2023 WL 315909, *2 (S.D. Fla. Jan. 19, 2023).

## III.   LEGAL STANDARD

Under Federal Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

1.   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2.   the testimony is based on sufficient facts or data;

3.   the testimony is the product of reliable principles and methods; and

4.   the expert has reliably applied the principles and methods to the facts of the case.

*Ludwin*, 2023 WL 315909, at *1 (quoting Fed. R. Evid. 702).

The Eleventh Circuit has set out three requirements that an expert must meet before his opinions may be admitted: (1) "the expert must be qualified on the matter about which he intends to testify"; (2) "he must employ reliable methodology"; and (3) "the expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or fact in issue." *Ludwin*, 2023 WL 315909, at *1 (quoting *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1329 (11th Cir. 2014)). That is, Plaintiffs bear the burden to meet each requirement before their experts' testimony is admissible. *Id*.

## IV.    ARGUMENT

### A.    Testimony on the Law and Ultimate Legal Opinions Should Be Excluded

The damages report does not set forth the area of testimony for each expert with any clear delineation. Based on their backgrounds, it seems Ryder will attempt to provide testimony on tort and defamation law. *See* Dam.Rpt. §§ 3, 6. But law is the purview of the Court, not experts. "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1364–65 (S.D. Fla. 2015) (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997)).

Whether it is Ryder or Somal, neither expert should be permitted to opine on ultimate legal conclusions, which their damages report frequently does. For example, Ryder and Somal state: "we agree that defamation has occurred and that a damage award is due," Dam.Rpt., at 4; and that Attorney Lamkin's "statements were made with malice," *id*. at 42. Neither Ryder nor Somal should be permitted to opine on the ultimate legal conclusions. *Ludwin*, 2023 WL 315909, at *1 (excluding Somal's testimony on legal conclusions).

**B.      Somal's Economic Opinions Are Unreliable, Speculative, and Not Based on Sufficient Facts or Data**

Somal opines on five categories of alleged economic damage: "(1) [r]ecent opportunity cost; (2) [r]ecent reduction in campaign revenue due to decreased activity; (3) [r]ecent reduction in campaigns returns due to difficulty in adding staff; (4) PV of future diminution in exit value for sale of PAM; and (5) [o]ngoing out of pocket legal costs." Dam.Rpt., at 65. Somal's opinions under each category should be excluded.

### 1)  The Opinion About "Recent Opportunity Cost" Should Be Excluded

Mr. Somal opines:

> Since the defamation, Mr. Rothschild and his inside chief operating officer have each spent an average of 8 hours per week on the defamation matter over the past 47 weeks (give or take a few days). Their blended hourly rates amount to $1,800 per hour. This is a conservative figure considering that in this time on the defamation matter, Mr. Rothschild and his staff were unable to work on campaigns. There have been net zero portfolio acquisitions (the sole acquisition made had to be returned for further due diligence). We estimate the value of this lost time to be at least $676,800.

Dam.Rpt., at 65.

In short, Somal opines that Mr. Rothschild and the Chief Operating Officer of PAM, Daniel Falcucci, have diverted time away from their work for PAM to work on this defamation case and that Rothschild should be compensated for that time. But, as Somal admitted in his deposition, this alleged "opportunity cost," if there was any, would be borne by PAM—the employer of Rothschild and Falcucci—not by Rothschild directly. Somal Dep. Tr., 112:10-14, 113:2-5. Under the well-established "shareholder standing doctrine," Mr. Rothschild cannot sue for losses suffered by his LLC, even if he is the sole owner of that LLC. *Guillaume v. Hyde*, No. 20-60276-CIV, 2020 WL 3317042, at *3 (S.D. Fla. June 18, 2020), *aff'd sub nom. Guillaume v. U.S. Dep't of Veterans Affs*., 847 F. App'x 627 (11th Cir. 2021); *Cheney v. Cyberguard Corp*., 213 F.R.D. 484, 495 (S.D. Fla. 2003) ("Courts have noted in various contexts that a plaintiff may not assert a claim for damages

6

suffered to a corporation, even where such individual plaintiff is the sole shareholder or president of the corporation.") (collecting cases); *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1375–76 (11th Cir. 1997) ("The only injuries allegedly suffered by Frit are as a shareholder and guarantor. Thus, Frit has suffered no [ ] injury. Courts uniformly have held that stockholders, even sole stockholders such as Frit, lack standing to bring [ ] suit for injury to their corporations."). Because Somal's first category of "recent opportunity cost" would be suffered, if at all, by PAM, Rothchild has no standing to seek this category of damages, and testimony under this category should therefore be excluded.

Further, while the shareholder-standing doctrine is independently sufficient to justify exclusion of expert testimony on this topic, Somal's opinion is devoid of any factual tether. The alleged "loss" suffered by PAM, based on a "blended hourly rate" of "$1800/hour" is supported only by verbal conversations between Somal and Rothschild. Somal was not provided any documentation at all—no financial records, no payroll stubs, no profit and loss statements:

Q. How did you determine Mr. Rothschild and Mr. Falcucci's blended hourly rates?

A. That was provided to me.

Q. In what form?

A. I believe that was provided in—in the course of the interviews and conversation.

. . .

Q. Did you see any payroll records?

A. I did not. This was verbal.

Q. Mr. Rothschild just gave you that number?

A. Yes, Ms. Lamkin.

Q. What was Mr. Falcucci's compensation at PAM over the last five years?

A. That information was not provided to me.

Q. What was Mr. Rothschild's compensation at PAM over the last five years?

A. That was not provided to me.

Q. How do you know that Mr. Rothschild and Mr. Falcucci were not able to work on campaigns?

A. This is the information that was strenuously articulated multiple times in conversation.

. . .

Q. Were you given any payment stubs?

A. I was not.

Q. Any bank statements?

A. No, Ms. Lamkin.

Q. No documents whatsoever. Just Mr. Rothschild's verbal communication about the value?

A. That's correct.

Somal Dep. Tr., at 113:6-115:10.

The jury does not need an expert like Mr. Somal who will only repeat the unsupported verbal statements of Mr. Rothschild. "An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the evidence." *Rebotix Repair, LLC v. Intuitive Surgical, Inc.,* No. 8:20-CV-2274-VMC-TGW, 2022 WL 3226794, at *4 (M.D. Fla. Aug. 10, 2022) (collecting cases). Somal, by his own admission, did not conduct an independent evaluation of the evidence; he merely relied on Rothschild's verbal communications. The Eleventh Circuit prohibits experts from serving as a mere conduit for hearsay. *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987) (a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony); *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony properly excluded where expert could offer nothing beyond understanding and experience of

8

average citizen). Other courts confirm that an expert cannot simply act as a "mouthpiece" or "parrot" for a party's verbal assertions. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005), *amended*, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005) ("[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.")

Further, an "expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or fact in issue." *Ludwin*, at *1 (quoting *Hughes*, 766 F.3d at 1329). Somal's parroting of Rothschild's unsupported verbal communications does not constitute an "application of expertise." Again, the Eastern District of Michigan has already rejected Somal's similar attempts to provide analysis based on "inputs plucked from thin air" because this analysis would create the "danger" of "suggest[ing] to the jury damages that do not in fact exist." *See Menge*, 2025 WL 2058320, at *4.

### 2) The Opinion About "Recent Reduction in Campaign Revenue Due To Decreased Activity" Should Be Excluded

Somal next opines:

> Mr. Rothschild reports having only ten (10) active cases on file which is below PAM's typical number in the past. Falling below 15 active cases limits long-term revenue potential, especially since it takes time to produce results (settlements). Valuing each campaign at $800,000, an amount credibly supplied by the Plaintiff, we see damages of $2.4 million. Assuming that the funds would arrive only in three years and using a real discount rate of 3 percent the damages are **$2,196,340.**

Dam.Rpt., at 66 (emphasis in the original).

In sum, Somal opines that PAM has fewer active patent cases, although he has seen no documents, no litigation records, no historical data. Then Somal opines, without seeing any evidence, that those fewer cases are attributable to Lamkin's allegedly defamatory statement.

9

As with the above category of alleged damages, Somal admitted in his deposition, this alleged harm would be suffered by PAM, not Rothschild directly. Somal Dep. Tr., at 116:11-13. Accordingly, under the shareholder-standing rule, Rothschild has no cognizable claim to seek these damages. *Fla. Seed Co.*, 105 F.3d at 1375–76 ("The only injuries allegedly suffered by Frit are as a shareholder and guarantor. Thus, Frit has suffered no [ ] injury. Courts uniformly have held that stockholders, even sole stockholders such as Frit, lack standing to bring [ ] suit for injury to their corporations.") For this reason alone, Somal's testimony on this category must be excluded.

Additionally, Somal's opinion is again improperly based on inputs that he has "pulled out of thin air." *Menge*, 2025 WL 2058320 at *4. Somal was not given any documentation to support his opinions:

> Q. And again, you didn't see any documents or records to support this opinion; correct?
>
> A. I—I did not receive documentation on—on this.

Somal Dep. Tr., at 116:14-17.

Somal did not look at any documents to see the number of patent litigations filed by PAM-owned LLCs before Lamkin's statement, or after. Somal did not look at any settlement agreements or bank records to assess the value of each litigation campaign. Somal's simple repetition of Rothschild's unsupported "evidence" is not expert testimony. Any testimony on this category from Somal should be excluded. *See Rouco*, *Scrima*, *Loeffel, supra*.

### 3) The Opinion About "Recent Reduction in ROI From Campaigns Due to Difficulty in Adding Staff" Should Be Excluded

Somal next opines that PAM was not able to hire an in-house attorney, allegedly because of Lamkin's purported defamatory statement:

> We estimate the opportunity cost of this delay in hiring due to the defamation to be based on the loss of at least one year in the returns on investment in the extra litigation that could have been accomplished but for the defamation. Current returns

10

> on litigation financing ranges from 30 percent to 50 percent of costs outlaid - with a midpoint of 40 percent. Litigation financing in IP covers several categories, including the cost of a lawyer. (This is not even counting 1.4 x returns on other campaign expenses never won due to lack of a new additional attorney.)
>
> The total compensation for an in-house lawyer in 2025 is at least $288,00029. Assuming that payment to this lawyer for the next 12 months would have been $288,000 and that the total returns year would be 40 percent, the gain from hiring him or her would be $403,200, minus the $288,000 paid, and the profit (now not achieved) would be $115,200. Present value of that amount in five years using 3 percent real discount rate is **$99,373.**

Dam.Rpt., at 66 (emphasis in the original).

Again, this is an alleged harm suffered by PAM, not Rothschild. Somal Dep. Tr., at 118:9-11. It should be excluded. *Guillaume,* 2020 WL 3317042, at *3; *Cheney,* 213 F.R.D., at 495; *Fla. Seed,* 105 F.3d, at 1375–76.

And here, again, Rothschild failed to provide a single document to Somal:

> Q. PAM has hired attorneys before, has it not?
>
> A. PAM has hired—yes, I believe PAM has employed attorneys, et cetera, yeah.
>
> Q. Were you shown any payment stubs or any sort of documentation to show you what an attorney inside PAM is paid?
>
> A. Was I given any—was I given any specific info inside of PAM? No, I mean, I did some independent re-—but I didn't receive payment stubs from -- from PAM based upon what they're paid.

Somal Dep. Tr. at 118:13-21.

While Somal claims to have conducted some unspecified form of independent research, he has never explained how he can demonstrate that any hiring difficulties at PAM were the result of a single statement made by Attorney Lamkin in the October 2024 Bloomberg Article, as opposed to other factors like market conditions or the low salary paid by PAM to its employees. Somal Dep. Tr., at 119:12-121:1. The failure to isolate causation renders Somal's testimony on this point inadmissible. *See In re Denture Cream Prods. Liab. Litig*., 795 F. Supp. 2d 1345, 1367 (S.D. Fla.

2011); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1342–43 (11th Cir. 2010) ("Dr. Poehling must have compiled a comprehensive list of potential causes of Kilpatrick's injury and must have explained why potential alternative causes were ruled out."). For all these reasons, Somal's testimony on this category of purported damages should be excluded.

### 4) The "Loss of Exit Value for the Company PAM" Category Should Be Excluded

Somal next opines:

PAM is a privately held company with unpublished financial statements. While Mr. Rothschild has not shared his company's financial statements with us, we make the following observations. As a company in the vibrant field of patent litigation, founded and owned by one of America's most prolific investors, this company's name and business methodology alone combined with its portfolio of patents would be worth $12 million to $20 million to an outside investor, with a middle range of $16 million. The damage to Mr. Rothschild also fell upon PAM. Numerous studies show that reputation accounts for a significant percentage of company value. Assuming only a 20 percent value destruction, we can conservatively estimate the destruction of value to Mr. Rothschild's firm to be $3.2 million. Assuming that the sale does not occur for another ten years as he is still active and in good health, the present value of the loss in value from his exit in 10 years would be valued at **$2,381,101.**

Dam.Rpt., at 67 (emphasis in the original).

Again, Somal admits that these purported damages have been suffered by PAM, not Mr. Rothschild. Somal Dep. Tr., at 121:5-7. As explained above, Rothschild has no standing to seek damages allegedly suffered by PAM.

And, again, Somal was given no documentary support or evidence:

Q. In estimating the exit loss of value for PAM, you value the company at 12- to 20 million without reviewing any financial statements. How did you arrive at this range?

A. This is data and information provided by Mr. Rothschild.

Q. By "provided," you mean he verbally told you that's what PAM was worth?

A. Says he has received offers and, you know, I believe that[.] . . .

Q. Did he show you any of those offers?

A. No, he—he said he received many offers. And—yeah.

Q. Did you do anything to independently estimate the value of PAM?

A. Well, you know, I think it would be safe to say that Mr. Rothschild was—is—was reluctant to share financial data because he didn't want that out there in the public domain about his company. And so I didn't—I didn't receive—. . . And so in this particular case, this is the information that we were provided.

Q. As a chartered CFA and a former finance professional, you understand the importance of actually seeing the documentation behind the opinions; correct?

A. I do understand that. I also appreciate confidentiality and there's—I would just say from my standpoint, I've been asked for information and there have been reasons I didn't want that info out there. I'm not—I'm just stating what took place and so if—***if I had the actual data to go off, I could certainly look at the valuation numbers from my standpoint. But that was not provided to me.***

Somal Dep. Tr., at 121:8-123:3 (emphasis added).

In his deposition, Somal also testified as follows:

A. . . . Ms. Lamkin, you know, an expert is called in to give an independent objective opinion. You work within parameters if you're—if you're given information and you're given evidence and then you use that; otherwise, then my report is—well, assumptions have to be made. And I—I made assumptions as I—as I have to as an expert in order to create a report. I assume things to be true.

Q. Right. It's a garbage in, garbage out; right?

A. In—in—in this—in this particular case, as mentioned, you know, there were examples and it turns out I didn't—and so I made my calculations based upon the information provided.

Somal Dep. Tr., at 131:2-15.

Somal's opinion is replete with alleged numbers, but none are from Somal. Because Somal is merely parroting unsupported verbal information provided by Rothschild, his opinions and testimony on this category must be excluded. *See Rouco*, *Scrima*, *Loeffel, supra*.

13

**5)   The Opinion on "Outgoing Out Of Pocket Legal And Filing Costs" Should Be Excluded**

The final "financial losses" category is outgoing legal costs. Dam.Rpt., at 67. As above, Rothschild did not provide Somal any actual documentation in support of the alleged $150,000 Mr. Rothschild has spent on legal fees. Somal Dep. Tr., at 122:24-123:5. The jury does not need Mr. Somal to repeat an unsupported figure provided verbally by Mr. Rothschild. Thus, the Court should exclude Somal's and Ryder's testimony and opinions regarding financial losses.

**C.   Testimony Regarding "Reputational Damages" and "Rehabilitation Damages" Should Be Excluded**

Somal has two categories of damages under "reputational" damages, "Reputational Damages" and "Rehabilitation Damages". Dam.Rpt., at 69-73. Although not well explained, it appears Somal opines Mr. Rothschild should be compensated for some unidentified damage to his reputation, assumed but not proven, under the "Reputational Damages" category and then Mr. Rothschild should be compensated for some future work by Somal on repairing Mr. Rothschild's reputation. Both categories of opinions should be excluded.

First, the two categories comprise impermissible double-dipping. By asking for the funds to *cure* the harm (repair) and the funds representing the *uncured* harm (general reputational damage), Somal is asking that Mr. Rothschild be made more than whole.

Second, Somal fails to demonstrate that Mr. Rothschild's reputation has been damaged by Lamkin's purportedly defamatory statement. That is, Somal makes no attempt to isolate any reputational harm caused by Attorney Lamkin's single statement in an October 2024 Bloomberg Law article from Rothschild's pre-existing poor reputation in the legal, media, and patent communities. In his deposition, Somal testified as follows:

Q. We've looked at a lot of bad press today about Mr. Rothschild; correct?

MR. LOBBIN: Objection. Mischaracterizes the record.

THE WITNESS: We—we've looked at appendices and articles that are harmful; correct.

Q. Okay. In preparing your report, did you conduct any baseline assessment of Mr. Rothschild's public reputation or media coverage prior to October 2024?

A. Naturally, I would—you're not able to go back and look at what search results were previously.

Somal Dep. Tr. at 136:10-23. He further testified:

Q. Was there negative press about Mr. Rothschild before October 2024?

A. Yes, there was information that I would say is detractor in nature.

*Id*. at 139:22-29.

Indeed, Somal admitted that, prior to Attorney Lamkin's October 2024 statement, there was considerable bad press about Rothschild, including that he was a "patent troll," a "bully," filed "bad faith" patent litigations, behaved in the patent space like Vladamir Putin, and owned "shell" companies. *See, e.g.*, *id.* at 30:13-25, 31:4-18, 33:10-15, 35:11-15, 49:7-10, 50:9-51:2, 53:1-54:15, 57:7-8, 89:1-92:25. And Somal admitted that he could not isolate damage done to Rothschild's reputation allegedly because of Attorney Lamkin's statement in the Bloomberg Article, as opposed to the generally bad opinion of Rothschild held by many in the press and the patent community. *Id*. at 136:10-144:18. In fact, Somal admitted that his "repair" work would expressly include an attempt to remove damaging statements made by third-parties years before Lamkin ever made her allegedly defamatory statement. *See, e.g.*, Somal Dep. Tr. 93:6-95:3.

Because Somal cannot isolate the cause of Rothshcild's poor reputation nor fit his cure to that cause, his opinions must be excluded. *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1233 (11th Cir. 2009) ("The district court's conclusion that Boca's expert opinion on injury and damages did not fit its liability theory was not manifestly erroneous because, like an oversized coat, the expert opinion covered too much."). "[Because [Rothschild's] injury

15

and damages opinion was not confined to charges that its liability theory would consider unlawful, it was too broad. It was ill-fitting." *Id*., at 1233-34.

**1)  The Reputational Damage Category Should Be Excluded**

In addition to the above two arguments, which apply to both categories of reputational damage, Somal opines that the damages to Rothschild's reputation is valued at $500,000 to $750,000 dollars. Dam.Rpt., at 70. But Somal admits that there is "no set standard to determine the actual value associated with [a damaged reputation]." *Id*. at 69. For that reason, Somal invented his own methodology, which he calls a "three rings" method of analyzing reputation harm. *Id*. at 70. This method is pure conjecture, unrooted from any established principles or methodology and untethered from the facts of this case. Somal's "three rings" methodology here is identical to the methodology that was rejected by the Eastern District of Michigan in a case in which a police officer alleged that a city officer defamed him. In fact, Mr. Somal provides the same damages figures he provided in the Eastern District of Michigan case, confirming that his "three rings" methodology is nowhere close to a serious system of calculating reputational damages suffered in a particular case. Indeed, Somal's opinion in this case and in *Menges* is nearly identical, even though the two cases bear no resemblance. *Compare*, Dam.Rpt., at 70 with *Menge* Expert Report, Exh. C, at 74. Somal's "three rings" methodology was invented whole-cloth, is not based on any accepted methodology, and is untethered to the facts of this case. *See Menge*, 2025 WL 2058320, at *5. It should be excluded.

**2)  Testimony Regarding "Reputational Repair" Should Be Excluded**

Somal aims to repair Mr. Rothschild's reputation by removing "negative links" from the internet, *inter alia.* Dam.Rpt., at 71-73. Somal opines that "100+ Positive Digital Assets will need to be created to counteract the negative sentiment against Leigh M. Rothschild. New positive links are required to rank. Given the scope of content that Mr. Rothschild may be comfortable with, we

16

will likely have to engage a group of both internal writers and external PR professionals." *Id.*, at 72. That is, Somal will attempt to correct Mr. Rothshcild's poor reputation as held by the entire internet and all causes; his "cure" does not fit the case and must be excluded. Daubert, U.S., at 591 ("The consideration has been aptly described by Judge Becker as one of 'fit.'")

In *Ludwin*, the court excluded much of Somal's testimony and opinions but allowed him to testify as follows: "The Court will allow testimony on the costs of a reputation repair campaign because Plaintiffs' proffered expert is qualified to testify on this issue, one that will assist the trier of fact in understanding potential damages for Plaintiffs' defamation *per se* claims in particular." *Ludwin*, 2023 WL 315909, at *2. But *Ludwin* is materially different than the case at-bar as in *Ludwin* there was no question that the statement at-issue was defamatory. But here, Rothschild's own expert admitted that Rothschild's reputation was damaged prior to Lamkin's 2024 statement, and he further admitted that he could not isolate the cause or cure as to Lamkin's statement. As such, "reputational repair" does not fit the facts of this case where Somal would be attempting to cure all damage to Rothschild's reputation, not just damage allegedly caused by Lamkin's single sentence in 2024. *See Boca Raton,* F.3d, at 1233-34.

Further, in opining about the purported costs associated with repairing Mr. Rothschild's reputation, the damages report makes several key admissions that undermine the reliability of Somal's opinion:

- "The success of a suppression campaign is always subjective," Dam.Rpt., at 45;

- "Suppressed negative links can easily reappear on search engines," *id*.;

- "[T]here are no guarantees for successful removal or deindexing of target links through search engines," *id*. at 47;

- "Even with the most aggressive campaign, negative internet content featuring Mr. Rothschild will likely reappear and affect his reputation in perpetuity," *id*. at 50; and

- "It is impossible to reverse the past damage and completely rehabilitate Mr. Rothschild's negative reputation." *id*. at 69.

Somal asks Attorney Lamkin to pay to fix Mr. Rothschild's online reputation but he admits that any such repair is "impossible" because complete removal of negative content about Mr. Rothschild online cannot be done, and that negative content will likely persist and reappear indefinitely, *supra*. Somal's opinion is therefore unreliable because it makes no attempt to explain why the costs associated with this apparently futile reputation-rehabilitation efforts are necessary, inviting speculation and jury confusion. While it is true that the *Menge* and *Ludwin* courts allowed Somal to opine on reputation-repair damages, the issue of impossibility does not appear to have been raised in those cases.

### D. Testimony Regarding "Emotional Distress" and "Punitive Damages" Should Be Excluded

The damages report also contains discussions of emotional and punitive damages. In his deposition, Somal testified that he would offer no opinions on either topic. Somal Dep. Tr., at 135:8-136:9. Neither Somal nor Ryder should be permitted to testify regarding any alleged emotional or punitive damages. *See Menge*, 2025 WL 2058320, at *2.

## V. <u>CONCLUSION</u>

Attorney Lamkin respectfully requests that, for the reasons set out in this Motion, that the Court excluded the expert opinions of Somal and Ryder, as outlined in this Motion.

Dated: December 15, 2025

Respectfully submitted,

/s/ Brenton H. Cooper
Brenton H. Cooper
Florida Bar No. 1035909
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, D.C. 20001
T: 202-639-1325
F: 202-639-7890
brent.cooper@bakerbotts.com

Paul R. Elliott (admitted *pro hac vice*)
Texas Bar No. 06547500
**BAKER BOTTS L.L.P.**
910 Louisiana St.
Houston, Texas 77002
T: 713-229-1226
F: 713-229-1522
paul.elliott@bakerbotts.com

Rachael D. Lamkin (admitted *pro hac vice*)
California Bar No. 246066
**BAKER BOTTS L.L.P.**
101 California Street
San Francisco, California 94111
T: 415-291-6264
F: 415-291-6364
rachael.lamkin@bakerbotts.com

*Attorneys for Defendant Rachael Lamkin*

## CERTIFICATE OF CONFERENCE

I hereby certify that, on December 12, 2025, in compliance with Local Rule 7.1(a)(3), I conferred with Plaintiffs' counsel telephonically about the relief sought in this Motion, and Plaintiffs are opposed.

/s/ Brenton H. Cooper
Brenton H. Cooper

19

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 15, 2025, a true and correct copy of the above document

was provided to all counsel of record through the Court's CM/ECF system.

/s/ *Brenton H. Cooper*
Brenton H. Cooper

20