**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:24-cv-24669-DPG**

LEIGH M. ROTHSCHILD and
ANALYTICAL TECHNOLOGIES, LLC,

       *Plaintiffs*,

v.

STARBUCKS CORP. and
RACHAEL LAMKIN,

       *Defendants*.

       **ORAL ARGUMENT**
       **REQUESTED**

---

<u>**DEFENDANT RACHAEL LAMKIN'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS IN THEIR ENTIRETY AND FOR ATTORNEYS' FEES UNDER FLORIDA'S ANTI-SLAPP STATUTE**</u>

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   MATERIAL FACTS .......................................................................................... 2

    A.   Attorney Lamkin, One of the Nation's Leading Patent Litigators, Specializes in Defending Against Patent Lawsuits Initiated by Non-Practicing Entities ................................................................................ 2

    B.   Plaintiff Leigh Rothschild Has Filed Thousands of Patent Lawsuits Through His NPE LLCs, Generating Significant Public Criticism ..................... 3

    C.   Attorney Lamkin Joined This Public Discussion by Sharing Her Personal Experience Litigating against Rothschild in Connection with the Bloomberg Article ............................................................................. 4

    D.   Attorney Lamkin's Statement Is True ............................................................. 5

III.  LEGAL STANDARD ......................................................................................... 6

IV.   ARGUMENT ....................................................................................................... 6

    A.   Plaintiffs Cannot Establish That Attorney Lamkin's Statement Was False .......................................................................................................... 7

    B.   Rothschild's Defamation Claim Fails Because the Statement Attributed to Attorney Lamkin Is Not Defamatory, But Consistent with Rothschild's Reputation ................................................................................ 11

    C.   Rothschild Cannot Prove That Lamkin Acted with Actual Malice ..................... 13

        1.   Rothschild Is a Limited Public Figure with Respect to the Public Debate about NPE Litigation ............................................................. 13

        2.   Rothschild Cannot Establish That Attorney Lamkin Acted with Actual Malice ............................................................................... 16

    D.   AT Is Not a Proper Plaintiff .......................................................................... 18

    E.   Because Plaintiffs' Defamation Claim Fails, Their Remaining Claims Also Fail under the Single-Publication Doctrine ............................................ 19

    F.   Attorney Lamkin Is Entitled to Attorneys' Fees Under the Florida Anti-SLAPP Statute ..................................................................................... 19

V.    CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alice Corp. Pty. Ltd v. CLS Bank Intern.*,
  573 U.S. 208 (2014)................................................................................................14

*Backertop Licensing LLC v. Canary Connect, Inc.*,
  107 F.4th 1335 (Fed. Cir. 2024) ............................................................................10

*Backertop Licensing LLC v. Canary Connect, Inc.*,
  No. CV 22-572-CFC, 2023 WL 6442270 (D. Del. Oct. 3, 2023)............................10

*Berisha v. Lawson*,
  378 F. Supp. 3d 1145 (S.D. Fla. 2018) ..................................................................16

*Berisha v. Lawson*,
  973 F.3d 1304 (11th Cir. 2020) .......................................................................15, 16

*Berman v. Kafka*,
  661 F. App'x 621 (11th Cir. 2016) ...........................................................................9

*Block v. Matesic*,
  789 F. Supp. 3d 1131 (S.D. Fla. 2025) ..................................................................16

*Bongino v. Daily Beast Co., LLC*,
  447 F. Supp. 3d 1310 (S.D. Fla. Aug. 6, 2020) ...............................................19, 20

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*,
  831 So. 2d 204 (Fla. 4th DCA 2002)......................................................................19

*Carrol v. TheStreet.com, Inc.*,
  No. 11-CV-81173-RYSKAMP/VITUNAC,
  2012 WL 13134547 (S.D. Fla. May 25, 2012) .......................................................18

*Davis v. McKenzie*,
  No. 16-62499-CIV, 2017 WL 8809359 (S.D. Fla. Nov. 3, 2017) ......................7, 11

*Durant v. Big Lots, Inc.*,
  No. 5:23-CV-561-GAP-PRL, 2024 WL 3321879 (M.D. Fla. July 3, 2024) ...........20

*Dykstra v. St. Martin's Press, LLC*,
  No. 153676/2019, 2020 WL 2789913 (N.Y. Super. Ct. May 29, 2020) ................11

*eBay, Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)..................................................................................................3

ii

*Flynn v. Wilson*,
   398 So. 3d 1103 (Fla. 2d DCA 2024) ................................................................8, 9

*Iris Connex, LLC v. Dell, Inc.*,
   235 F. Supp. 3d 826 (E.D. Tex. 2017) ..................................................................10

*Jeter v. McKeithen*,
   No. 5:14-cv-00189-RS-EMT, 2014 WL 4996247 (N.D. Fla. Oct. 7, 2014) ............9

*Jews for Jesus, Inc. v. Rapp*,
   997 So. 2d 1098 (Fla. 2008) ............................................................................7, 11

*Levine v. McLeskey*,
   881 F. Supp. 1030 (E.D. Va. 1995) ........................................................................9

*Marquez v. Costco Wholesale Corp.*,
   550 F. Supp. 3d 1256 (S.D. Fla. 2021) ..................................................................6

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ................................................................................................7

*McQuay v. Montgomery Publications, Inc.*,
   No. 62,771, 1989 Kan. App. LEXIS 197 (Kan. Ct. App.) ......................................9

*Micron Tech., Inc. v. Longhorn IP LLC*
   (Fed. Cir. Case Nos. 23-2007, 23-2095), 2024 WL 2890397 ..............................14

*Mile Marker, Inc. v. Peterson Publ'g, LLC*,
   811 So. 2d 841 (Fla. 4th DCA 2002) ....................................................................13

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ..............................................................................................16

*Octane Fitness v. ICON Health*,
   572 U.S. 545 (2014) ..............................................................................................14

*One for Israel v. Reuven*,
   No. 21-61475-CIV-SINGHAL, 2022 WL 4465389 (S.D. Fla. Sept. 26, 2022) ......16

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*,
   858 F.3d 1383 (Fed. Cir. 2017) (Mayer, J., concurring) .........................................4

*Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*,
   494 F. Supp. 3d 263 (D. Del. 2020) ........................................................................4

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*,
   No. CV 14-1142-GMS, 2018 WL 3599359 (D. Del. July 27, 2018) ................10, 12

*Rubin v. U.S. News & World Report, Inc.*,
   271 F.3d 1305 (11th Cir. 2001) ...............................................................7, 11

*Silvester v. Am. Broad. Cos.*,
   839 F.2d 1491 (11th Cir. 1988) ......................................................13, 15, 16

*Smith v. Cuban Am. Nat'l Found.*,
   731 So. 2d 702 (Fla. 3d DCA 1999) ...............................................................7

*Suarez v. Bank of N.Y. Mellon Tr. Co.*,
   325 So. 3d 205 (Fla. 2d DCA 2021) .............................................................20

*TC Heartland v. Kraft Foods*,
   581 U.S. 258 (2017) .......................................................................................14

*Thomas v. Jacksonville Television, Inc.*,
   699 So. 2d 800 (Fla. 1st DCA 1997) .............................................................18

*Tobinick v. Novella*,
   No. 9:14-CV-80781, 2015 WL 328236 (S.D. Fla. Jan. 23, 2015) .................19

*Tovarian v. Rubic, LLC*,
   No. 24-14037-CIV-CANNON/Maynard,
   2025 WL 747435 (S.D. Fla. Mar. 10, 2025) .................................................13

*Turner v. Wells*,
   198 F. Supp. 3d 1355 (S.D. Fla. 2016) ..................................................7, 9, 11

**STATUTES**

35 U.S.C. § 285 ....................................................................................................1, 14

**SECONDARY SOURCES**

*Bankrupt*, Black's Law Dictionary (12th ed. 2024) .................................................8

*Bankrupt*, Black's Law Dictionary 134 (5th Ed. 1979) ...........................................9

Restatement (Second) of Torts § 564A ...................................................................18

**OTHER SOURCES**

*Baker Botts Partners Guy and Lamkin for Excellence in
   Intellectual Property Law* (Baker Botts Apr. 8, 2025) .....................................2

Daily Journal *Names Guske, Guy and Lamkin 2024 'Top Intellectual
   Property Lawyers* (Baker Botts May 23, 2024) ...............................................2

Electronic Frontier Foundation, *Saved by Alice* .....................................................14

iv

Electronic Frontier Foundation, *TC Heartland v. Kraft Foods* ......................................................14

*The LCS Team* (Lead Counsel Summit) ...........................................................3

*Rachael Dauphine Lamkin #246066* (The State Bar of California) .................................................2

*Rachael Lamkin* (Baker Botts)..............................................................................................2, 3

*Rachael Lamkin* (The Daily Journal May 22, 2024)........................................................3

Will Roberts, Note, *Closing in on the Patent Troll: State Legislatures' Role
in Combatting Trolling Behavior*, 109 Minn. L. Rev. 2465, 2487 (2025)...........................14

Daniel C. Tucker, Note, *We Can't Stay this Way: Changing the
Standard for Staying Injunctions Pending Appeal after* eBay,
79 Geo. Wash. L. Rev. 1276, 1290 (2011) ...............................................................3

D. Zanzalari, *How Patent Trolls Hurt the American Economy* (The Hill Aug. 28, 2024).................14

Pursuant to Federal Rule of Civil Procedure 56, Defendant Rachael Lamkin ("Attorney Lamkin") respectfully moves for summary judgment on Plaintiffs' claims in their entirety and for attorneys' fees under Florida's Anti-SLAPP statute, codified at Section 768.295, Florida Statutes.

## I. INTRODUCTION

Attorney Lamkin is one of the nation's leading patent litigators. She "specializes in defending companies against patent monetization entities and has been repeatedly cited by patent litigation blogs and the Federal Circuit in § 285 [attorneys' fees] decisions." *Rothschild Digital Confirmation LLC v. CompanyCam, Inc*., No. CV 19-1109 (MN), 2021 WL 706411, at *1 (D. Del. Feb. 23, 2021). In many patent cases, the named plaintiff is an underfunded limited liability company that is judgment-proof by design. This intentional structure often prevents defendants from recovering attorneys' fees after incurring hefty legal expenses. This conduct incentivizes many defendants to quickly settle patent lawsuits for nuisance value, further incentivizing meritless litigation.

Attorney Lamkin has devoted her career to changing this perverse incentive structure. One of the strategies she employs, where appropriate, is a counterclaim under a state's enactment of the Uniform Fraudulent Transfers Act ("UFTA"). When these claims succeed, defendants can enforce attorneys' fees awards not only against the named plaintiff but also against the underlying entity or person who owns and controls the plaintiff.

Plaintiff Leigh M. Rothschild is a leading architect and purveyor of this asset-protecting business structure. Plaintiffs sued Attorney Lamkin for defamation even though Attorney Lamkin accurately described Rothschild's conduct in an October 10, 2024, article in Bloomberg Law (the "Bloomberg Article"). This case is not about any alleged defamation of Rothschild. There was none. Instead, Rothschild filed this case to punish Attorney Lamkin for finding an avenue to

meaningfully defend against meritless patent lawsuits and to improperly gain settlement leverage in a companion case, *Analytical Technologies LLC v. Starbucks Corp.,* Case No. 2:24-cv-00448 (E.D. Tex.), wherein Starbucks had asserted a claim under the Texas Uniform Fraudulent Transfers Act against Mr. Rothschild personally. Bloomberg Article at 3.

Plaintiffs' defamation claim fails on the merits. Attorney Lamkin's statement is not only true, but also consistent with Rothschild's well-established reputation. Rothschild also cannot establish actual malice, as he must, given his status as a limited public figure in the patent community. Additionally, AT does not have a cognizable defamation claim. For these reasons, summary judgment is appropriate as to Plaintiffs' defamation claim, leading to two consequences: the dismissal of Plaintiffs' remaining claims and a mandatory payment of attorneys' fees to Attorney Lamkin under Florida's Anti-SLAPP statute.

## II. MATERIAL FACTS

### A. Attorney Lamkin, One of the Nation's Leading Patent Litigators, Specializes in Defending Against Patent Lawsuits Initiated by Non-Practicing Entities

Attorney Lamkin, a Partner at Baker Botts LLP, is a patent litigator with nearly twenty years of experience.[1] She has won numerous awards for her work, including the Daily Journal's Litigator of the Year in 2024 and 2025.[2] She serves as patent-curriculum faculty at the Practicing Law Institute and volunteers as an adjunct law professor at Southern University Law Center.[3] Her

---

[1]   *Rachael   Dauphine   Lamkin   #246066*   (The   State   Bar   of   California), https://apps.calbar.ca.gov/attorney/Licensee/Detail/246066 (noting admission date of December 5, 2006)

[2] *Daily Journal Honors Baker Botts Partners Guy and Lamkin for Excellence in Intellectual Property Law* (Baker Botts Apr. 8, 2025), https://www.bakerbotts.com/news/2025/04/daily-journal-honors-baker-botts-partners-guy-and-lamkin-for-excellence-in-intellectual-property-law; Daily Journal *Names Guske, Guy and Lamkin 2024 'Top Intellectual Property Lawyers* (Baker Botts May 23, 2024), https://www.bakerbotts.com/news/2024/05/daily-journal-names-guske-guy-and-lamkin-2024-top-intellectual-property-lawyers.

[3] *Rachael Lamkin* (Baker Botts), https://www.bakerbotts.com/people/l/lamkin-rachael.

robust *pro bono* practice includes defending small companies facing meritless and abusive patent litigation.[4] Attorney Lamkin also co-founded the Lead Counsel Summit, which works to increase female representation in patent litigation.[5]

Attorney Lamkin specializes in defending against patent lawsuits filed by non-practicing entities ("NPEs"), often referred to as "patent trolls."[6] A "'non-practicing entity' is a firm that uses its patents 'not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees,'" often extracted through litigation.[7] Many NPEs attempt to avoid litigating against Attorney Lamkin because of her commitment to minimizing bad-faith litigation. For example, in a federal lawsuit filed by the State of Washington against an NPE under the Washington Patent Troll Prevention Act, the State's Attorney General recently provided evidence that the alleged NPEs in that case "do all in their power to avoid companies represented by patent litigator Rachael Lamkin." SMF 1-2. Indeed, the Washington Attorney General uses the NPEs' refusal to sue companies represented by Lamkin as an example of those NPEs' reliance on litigation considerations that "have nothing to do with good faith patent assertion activity." SMF 3.

**B.  Plaintiff Leigh Rothschild Has Filed Thousands of Patent Lawsuits Through His NPE LLCs, Generating Significant Public Criticism**

Rothschild has made a career of filing voluminous patent litigations—at least 1,300 cases total—on behalf of at least 51 entities he controls through parent entity Patent Asset Management,

---

[4] *See id.* (listing Case No. 4:21-cv-08529-YGR, *Digital Verification Systems, LLC v. Foxit Software, Inc.* (N.D. Cal.), as an example of one of these "pro bono case[s]" that resulted in a "highly favorable outcome" for Attorney Lamkin's client).

[5] *The LCS Team* (Lead Counsel Summit), https://www.leadcounselsummit.com/team.

[6] *Rachael Lamkin* (The Daily Journal May 22, 2024), https://www.dailyjournal.com/article/378549-rachael-lamkin.

[7] Daniel C. Tucker, Note, *We Can't Stay this Way: Changing the Standard for Staying Injunctions Pending Appeal after* eBay, 79 Geo. Wash. L. Rev. 1276, 1290 (2011) (quoting *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 396 (2006) (Kennedy, J., concurring)).

LLC ("PAM"). SMF 4-6, 48. Rothschild views himself as a "prolific inventor," and he is "proud" that "he has been compared" to Thomas Edison "numerous times." SMF 7.

Many in the patent community characterize Rothschild's legacy differently, defined by extortive litigation based on weak or invalid patents—not genuine innovation. Courts have described his patent litigation as "troubling" and "vexatious."[8] A Federal Circuit judge has castigated Rothschild for filing a case that "never should have been filed," as it was "frivolous on its face" and "risible rather than simply unreasonable."[9] Numerous articles and blog posts identify Rothschild as a "patent troll" and criticize his playbook of filing meritless lawsuits to quickly extract nuisance-value settlements. SMF 8. Numerous articles, blog posts, and social-media posts specifically highlight Rothschild's use of underfunded shell entities as the named-plaintiff vehicles pursuing this abusive-litigation scheme. SMF 9.

### C. Attorney Lamkin Joined This Public Discussion by Sharing Her Personal Experience Litigating against Rothschild in Connection with the Bloomberg Article

On October 10, 2024, Bloomberg Law published an article highlighting Attorney Lamkin's use of the UFTA in defending clients from NPE lawsuits. The Article reports that defendants facing these lawsuits often "settle patent suits quickly to avoid the high cost of mounting a defense," especially "where recouping the cost of defending a suit by pursuing fees" is a "crapshoot" because the NPE plaintiffs are "poorly capitalized and judgment-proof." Bloomberg Article at 3 [ECF No. 1-1]. But, the Article reports, Attorney Lamkin's reliance on the UFTA offers defendants a path to meaningfully defend against these patent lawsuits. *Id.* at 3-5. UFTA claims allow recovery from

---

[8] *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 267 (D. Del. 2020).
[9] *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383, 1390-92 (Fed. Cir. 2017) (Mayer, J., concurring).

other individuals and entities to whom the named plaintiff diverted their funds, giving teeth to an attorneys' fees award. *Id.* at 3-5.

In connection with the Article, Bloomberg interviewed Attorney Lamkin, who described the problem that her reliance on UFTA claims is designed to solve:

> "The settlement amounts are so low that companies aren't going to pay attorneys the thousands of hours it takes to catch him at his game," [Attorney Lamkin] said in an interview. "And with Leigh Rothschild, we never get the money because the shells go bankrupt."

*Id.* at 5.

Plaintiffs' defamation claim is based entirely on the final sentence of this quotation. SMF 10.

### D.  Attorney Lamkin's Statement Is True

Attorney Lamkin's statement, "[a]nd with Leigh Rothschild, we never get the money because the shells go bankrupt," was based on her own experience of two separate instances in which Rothschild's NPEs lacked the funds to pay court-ordered attorneys' fees awards.

***First***, Attorney Lamkin represented CompanyCam, Inc. in *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.* ("*RDC*"), Case No. 1:19-cv-01109-MN (D. Del.), Rothschild controlled the plaintiff, Rothschild Digital Confirmation, LLC ("RDC") through its parent company, PAM. SMF 11. On February 23, 2021, Judge Noreika ordered RDC to pay $86,150 in attorneys' fees to CompanyCam within forty-five days of the Order. SMF 12. Neither RDC nor PAM ever paid CompanyCam its attorneys' fees. SMF 13.

CompanyCam went to great efforts to recover its attorneys' fee award, SMF 14-16, and RDC's responses to discovery served in connection with those efforts confirmed that RDC lacked the ability to pay. In interrogatory responses verified by Rothschild, RDC stated that the only contribution of capital to RDC was "labor and U.S. Patent No. 7,456,872 (assigned to RDC in

August of 2016)" and that the then-current "assets [of RDC] consist[ed] of only labor, U.S. Patent No. 7,456,872, and a bank account containing $980.51." SMF 17.

**Second**, Attorney Lamkin represented Garmin International, Inc. in *Rothschild Connected Devices Innovations, LLC v. Garmin International, Inc.*, Case No. 2:17-cv-00158-JRG-RSP (E.D. Tex.), filed by Rothschild Connected Devices Innovations, LLC ("RCDI")—also controlled by Rothschild through PAM, RCDI's parent company, SMF 18. In a related case brought by RCDI based on the same patent and in the same court, SMF 19, Magistrate Judge Roy S. Payne ordered RCDI to pay defendant ADS Security $288,911.99 in attorneys' fees within thirty days, SMF 20. RCDI never paid. SMF 21.

ADS Security went to great efforts to recover its award, SMF 22, and RCDI's responses to discovery served in those efforts similarly confirmed that RCDI lacked the ability to pay. In interrogatory responses signed by Rothschild, RCDI stated that its only assets were three patents, a patent application, and $5.00. SMF 23. In a declaration, Rothschild confirmed that RCDI "does not have any assets other than" three patents, a patent application, and "a *de minimus* [sic] amount in its lone bank account." SMF 24. Magistrate Judge Payne, relying on Rothschild's declaration, found that RCDI did not pay the attorneys' fees award because it lacked the ability to. SMF 25.

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Marquez v. Costco Wholesale Corp.*, 550 F. Supp. 3d 1256, 1272 (S.D. Fla. 2021).

### IV. ARGUMENT

Under Florida law, defamation has five elements: (1) publication; (2) falsity; (3) knowledge or reckless disregard as to falsity on a matter concerning a public figure, or least negligence on a

matter concerning a private person, (4) actual damages; and (5) defamatory nature of the statement at issue. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008); *see also Davis v. McKenzie*, No. 16-62499-CIV, 2017 WL 8809359, at *11 (S.D. Fla. Nov. 3, 2017), *report and recommendation adopted*, No. 16-62499-CIV, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018) (same).

Plaintiffs' defamation claims fail for four reasons: First, Attorney Lamkin's statement is true. Second, as to Rothschild, the statement in the Bloomberg Article is not defamatory because it is consistent with his well-established reputation. Third, Rothschild cannot establish that Attorney Lamkin acted with actual malice, as he must, given that he is a limited public figure on the issue of NPE litigation. Fourth, AT has no cognizable defamation claim.

The failure of Plaintiffs' defamation claims has two key additional consequences. First, it dictates dismissal of Plaintiffs' remaining claims under the single-publication doctrine. Second, it entitles Attorney Lamkin to a mandatory award of attorneys' fees under Florida's Anti-SLAPP statute.

## A.  Plaintiffs Cannot Establish That Attorney Lamkin's Statement Was False

For purposes of a defamation claim, "falsity exists ***only if*** the publication is substantially and materially false, not just if it is technically false." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) (quoting *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999)) (emphasis added). The "alleged false statement does not have to be 'perfectly accurate' if the 'gist' or the 'sting' of the statement is true." *Turner*, 198 F. Supp. 3d at 1365 (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)). And "the gist of any statement within a publication . . . is found only by reference to the entire context." *Turner*, 198 F. Supp. 3d at 1376 (quoting *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001)).

The "gist" of the statement at issue—"[a]nd with Leigh Rothschild, we never get the money because the shells go bankrupt"—within the context of the Bloomberg Article is clear: defendants have been unable to collect attorneys' fees awards against Rothschild's NPEs because those

entities did not have the money to pay the awards. Attorney Lamkin's own experience in *RDC* and *RCDI*—and Rothschild's own sworn declarations and discovery responses in those cases—confirms the truth of her statement. SMF 10-25.

Plaintiffs may argue that Attorney Lamkin's statement was false because neither RCDI nor RDC filed a bankruptcy petition in a U.S. bankruptcy court. This hairsplitting fails for three independently sufficient reasons. First, this argument ignores the context of the Bloomberg Article, which focuses on "poorly capitalized and judgment proof" patent plaintiffs that render any attorneys' fee award inconsequential. Bloomberg Article at 3 [ECF No. 1-1]. Within this context, Attorney Lamkin's statement communicates that RDC and RCDI lacked the funds to pay a specific kind of bill they owed: attorneys' fees awards. Florida courts routinely reject efforts to "isolate [a defendant's] statement from its context[.]" *Flynn v. Wilson*, 398 So. 3d 1103, 1112 (Fla. 2d DCA 2024) (resolving a motion for summary judgment).

Second, even in isolation, Attorney Lamkin's statement made no comment about filing for bankruptcy, and in fact used the word "bankrupt," not "bankruptcy." Black's Law Dictionary defines "bankrupt" as "[i]ndebted beyond the means of payment" or "without enough money to pay back what one owes." *Bankrupt*, Black's Law Dictionary (12th ed. 2024). There is no dispute that RDC and RCDI were "indebted" by the attorneys' fees awards "beyond the means of payment" and were "without money to pay back" the attorneys' fees they "owe[d]." *Id.* In fact, Rothschild's own damages expert understood that Attorney Lamkin's use of the words "bankrupt" and "shells" referred to an inability to pay bills. SMF 26.

Defamation case law confirms this interpretation. In *Levine*, the court held that a statement that a company "was going bankrupt" was true because the company "ha[d] never been able to pay its debts as they bec[a]me due," "was losing money," and "was not paying" a specific note.

*Levine v. McLeskey*, 881 F. Supp. 1030, 1049-50 (E.D. Va. 1995), *aff'd in relevant part*, 164 F.3d 210 (4th Cir. 1998). In *McQuay,* the court held that even the statement that the plaintiffs had "declared bankruptcy" was substantially true where the plaintiffs could not pay their debts, even though they had not actually filed for bankruptcy. *McQuay v. Montgomery Publications, Inc.*, No. 62,771, 1989 Kan. App. LEXIS 197, at **7-8 (Kan. Ct. App.) (citing *Bankrupt*, Black's Law Dictionary 134 (5th Ed. 1979)).

Third, even if Attorney Lamkin's statement could somehow be construed as stating that RDC or RCDI had filed a petition in a U.S. bankruptcy court—which it cannot—the statement would still be "substantially and materially" true, given the immateriality of that detail. *Turner*, 198 F. Supp. 3d at 1365. In *Jeter*, the court found it irrelevant for defamation purposes whether the defendant stated that the plaintiff had "bullied 'dozens' of victims or 'at least one' victim" because "the exact number of victims alleged to have been personally bullied by [the plaintiff] is a detail that does not affect the substantial truth of the statement or the 'gist' conveyed to the audience." *Jeter v. McKeithen*, No. 5:14-cv-00189-RS-EMT, 2014 WL 4996247, at *3 (N.D. Fla. Oct. 7, 2014). It is undisputed that RDC and RCDI could not pay court-ordered attorneys' fees awards. Whether they could not do so because of a formal bankruptcy filing or only because they had inadequate funds "does not affect the . . . 'gist' conveyed to the audience." *Id.*[10]

Plaintiffs may similarly rely on an arbitrary, hyper-technical definition of the word "shell." Any such argument would again fail for improperly attempting to "isolate [a defendant's] statement from its context[.]" *Flynn*, 398 So. 3d at 1112. In context, Attorney Lamkin's statement

---

[10]Indeed, courts reject defamation claims where the defendant accurately described the facts, despite the non-occurrence of a particular formal process. For example, in *Berman v. Kafka*, a defendant's statement that the plaintiff was involved in "embezzlement" was "substantially true" even though no court had formally found, "beyond a reasonable doubt, that [the plaintiff] was in fact guilty of embezzlement." 661 F. App'x 621, 624 (11th Cir. 2016).

used "shells" to communicate that RDC and RCDI lacked the funds to pay court-ordered attorneys' fees awards. Even in isolation, Attorney Lamkin's use of the word "shells" is true, as federal courts routinely use the word "shell" when describing underfunded patent-holding companies whose only assets are patents and whose only operations are serving as named plaintiffs in patent litigation.[11] As explained in detail above, RDC and RCDI easily fit the bill.

In fact, multiple courts have described Rothschild-owned entities as underfunded shells. SMF 9; *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc*., No. CV 14-1142-GMS, 2018 WL 3599359, at *5 (D. Del. July 27, 2018) ("Mitek submitted evidence that Rothschild created numerous shell companies that have litigated approximately 225 cases."). For example, in Valve Corp.'s lawsuit against Rothschild alleging bad-faith patent assertion under Washington's Patent Troll Prevention Act, the Honorable Jamal N. Whitehead acknowledged Valve's allegations that Rothschild's entities are "empty shells" that would "shield Rothschild from personal liability." SMF 27. And, as Judge Whitehead recently explained in a discovery order, "evidence suggesting that Defendant Rothschild intentionally manages a network of undercapitalized companies for

---

[11] *See, e.g., Iris Connex, LLC v. Dell, Inc*., 235 F. Supp. 3d 826, 860 (E.D. Tex. 2017) ("Mr. Yates then created Iris Connex as an empty *shell* and retained a lawyer on a contingency to assert its only asset.") (emphasis added); *Backertop Licensing LLC v. Canary Connect, Inc.,* 107 F.4th 1335, 1338 (Fed. Cir. 2024) ("The District Court was also concerned whether 'those real parties in interest perpetrated a fraud on the court by fraudulently conveying to a *shell* LLC [the patents] and filing a fictitious patent assignment with the PTO designed to shield those parties from potential liability they would otherwise face in asserting [the patents] in litigation.'") (emphasis added); *Backertop Licensing LLC v. Canary Connect, Inc*., No. CV 22-572-CFC, 2023 WL 6442270, at *2 (D. Del. Oct. 3, 2023), *aff'd*, 107 F.4th 1335 (Fed. Cir. 2024) ("were Ms. LaPray's reading of Rule 45 to be adopted by the Federal Circuit, a resident of Hawaii (which is more than 100 miles from any other federal judicial district) could form a *shell* LLC, give the LLC no assets except for a questionable patent, assert the patent in frivolous infringement lawsuits filed under the LLC's name in the other 93 federal judicial districts, and have the LLC engage in fraudulent and sanctionable conduct through the course of those suits with impunity.") (emphasis added).

issuing threats of patent prosecutions while being shielded from personal liability . . . is a factor relevant to whether" Rothschild commits bad faith patent assertion. SMF 28.

Plaintiffs cannot meet their burden to establish the falsity of Attorney Lamkin's statement because the gist of the statement is true. *See Turner*, 198 F. Supp. 3d at 1365.

### B. Rothschild's Defamation Claim Fails Because the Statement Attributed to Attorney Lamkin Is Not Defamatory, But Consistent with Rothschild's Reputation

Rothschild's defamation claim also fails because Attorney Lamkin's statement was not defamatory. Attorney Lamkin simply repeated what many others had said publicly about Rothschild, undermining any assertion that Attorney Lamkin's statement harmed his reputation.

Under Florida law, a "defamatory statement" is "one that tends to harm the reputation of another . . . or injures his business or reputation or occupation." *Davis*, 2017 WL 8809359, at *15 (quoting *Jews for Jesus*, 997 So.2d at 1108-09). A defamation claim fails "where the court finds that a communication could not possibly have a defamatory or harmful effect." *Rubin v. U.S. News & World Rep., Inc*., 271 F.3d 1305, 1306 (11th Cir. 2001). Put another way, a plaintiff may not pursue a defamation claim where "no further harm could have occurred" to his reputation because of the challenged statement because, for example, the statement merely repeated what others had already said publicly. *Davis*, 2017 WL 8809359, at *14; *see also Dykstra v. St. Martin's Press, LLC*, No. 153676/2019, 2020 WL 2789913, at *13 (N.Y. Super. Ct. May 29, 2020) ("[T]he . . . litany of stories concerning Dykstra's poor and mean-spirited behavior [defeat the assertion that the challenged statements] induc[ed] an evil opinion of [Dykstra] in the minds of right-thinking persons, . . . as that evil opinion has long existed[.]").

In a public complaint filed in 2017, well before the October 10, 2024, Bloomberg Article, Rothschild's long-time business partner Constance Kazanjian averred, "Rothschild is self-dealing." SMF 29. Ms. Kazanjian further alleged publicly that "Rothschild transfers each patent

11

to a specific corporation," which was created "for the exclusive purpose of using the corporation to assert Rothschild's patents in Court." SMF 30. "However, when settlement monies are received they do not flow to the corporation named as a Plaintiff in the suit, instead the money is transferred to Defendant, Rothschild Trust Holdings LLC, where it is fraudulently converted for Rothschild's personal use in order to defraud creditors . . . from monies that are due and owing." *Id*. She also testified under oath that ████████████████████████████████ SMF 31.

     Well before October 2024, it was widely reported that Rothschild's entities are underfunded shell entities. SMF 9; *see, e.g.*, *Rothschild Mobile Imaging Innovations*, 2018 WL 3599359, at *5 (finding, in July 2018, that "Mitek submitted evidence that Rothschild created numerous shell companies that have litigated approximately 225 cases"). In Valve Corp.'s lawsuit against Rothschild under Washington State's Patent Troll Prevention Act, Valve alleged, in a complaint dated July 7, 2023: "Defendant Rothschild's movement of patents between the dozens of shell companies he owns or operates, in complete disregard of corporate formalities, is nothing but an attempt to insulate himself and what is believed to be his holding company, PAM, from fees and penalties that may accrue from his bad-faith patent assertions of patent infringement." SMF 32. Within days, Valve's complaint was reported on by, and attached to, articles in Law360 and Bloomberg Law. SMF 33.

     In addition, numerous articles, blog posts, and social-media posts highlighted Rothschild's reliance on shell companies long before the 2024 Bloomberg Article. For example:

- A 2015 *Ars Technica* article gave Rothschild its "Stupid Patent of the Month" award, noting that Rothschild's "shell companies" have filed "nearly 100 lawsuits."

- A 2019 social-media post said of Rothschild: "This dude is really sketchy. His patents are assigned to, like, 30 different shell companies."

- A 2020 *The New Stack* article reported that a law firm opposing one of Rothschild's NPEs "suspected [that the entity] was undercapitalized as a corporate entity and might not have respected other corporate formalities."

- A 2021 blog post stated that Rothschild "has created numerous shell companies with no office or employees with the sole objectives to extort money from the small companies with his bogus lawsuits."

- A 2022 online post stated that "[i]f you are a US start up in the technology sector innovating, you . . . have to deal with bad guys" like "Patent Troll . . . Leigh Rothschild" and "his numerous shell companies (with virtual addresses and no employees)."

SMF 9.

Attorney Lamkin is not the first to publicly highlight Rothschild's reliance on underfunded, judgment-proof shell entities. For that reason, Attorney Lamkin's statement is not defamatory, and summary judgment is appropriate.

### C. Rothschild Cannot Prove That Lamkin Acted with Actual Malice

#### 1. Rothschild Is a Limited Public Figure with Respect to the Public Debate about NPE Litigation

"Determining whether a plaintiff is a . . . limited public figure is a question of law for the court." *Tovarian v. Rubic, LLC*, No. 24-14037-CIV-CANNON/Maynard, 2025 WL 747435, at *3 (S.D. Fla. Mar. 10, 2025) (citing *Mile Marker, Inc. v. Peterson Publ'g, LLC*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002)). To determine whether a defamation plaintiff is a limited public figure, courts: "(1) isolate the public controversy, (2) examine the plaintiffs' involvement in the controversy, and (3) determine whether the alleged defamation was germane to the plaintiffs' participation in the controversy." *Silvester v. Am. Broad. Cos*., 839 F.2d 1491, 1494 (11th Cir. 1988). Rothschild satisfies all three elements with respect to the public discussion about NPEs.

*First*, there is extensive public controversy over NPEs' use of the patent system. As explained by the Proposed Amicus Brief of Unified Patents, at 3, filed in this case [ECF No. 17-1], because the "licensing, royalty, and judgment costs" associated with NPE patent litigation "are often passed onto consumers, . . . patent litigation has wide-reaching implications regarding the benefits and costs of the patent system to the economy and the public." SMF 34. Indeed, last year,

*The Hill* reported on a 2014 study that found that "patent trolls cost defendant firms" the equivalent of, "in today's dollars, [approximately] $38 billion in direct costs and $78 billion in lost wealth." *Id.*; D. Zanzalari, *How Patent Trolls Hurt the American Economy* (The Hill Aug. 28, 2024).

The U.S. Supreme Court has issued numerous recent opinions affecting NPEs' ability to further their extortive litigation. SMF 34.[12] In addition, "over thirty states" have "passed anti-patent troll legislation,"[13] including Florida, SMF 34; *see* § 501.991 *et seq.*, Fla. Stat. Recently, a group of twenty-seven states, along with the District of Columbia, filed an *amici* brief supporting Idaho's Bad Faith Assertions of Patent Infringement Act in a Federal Circuit case challenging the Act, warning that the NPE "'industry' weaponizes the patent system in ways that harm productive businesses and can impose a harmful tax on innovation." SMF 34; Br. for North Carolina et al. as Amici Curiae in Support of Appellees, *Micron Tech., Inc. v. Longhorn IP LLC* (Fed. Cir. Case Nos. 23-2007, 23-2095), 2024 WL 2890397, at *2. The brief further notes that "the majority of states have enacted laws" similar to Idaho's "to promote innovation by combating bad-faith patent assertions." *Id.* at *5. It is difficult to imagine a more public controversy than one involving more than thirty states—including Florida—enacting statutes specifically targeting the precise type of conduct in which Rothschild engages. *See* § 501.991 *et seq.*, Fla. Stat.

---

[12] *See* Electronic Frontier Foundation, *TC Heartland v. Kraft Foods*, https://www.eff.org/cases/ tc-heartland-v-kraft-foods (observing that the Court's decision in *TC Heartland v. Kraft Foods*, 581 U.S. 258 (2017), "mean[t] that patent trolls can no longer drag companies to distant and inconvenient forums that favor patent owners but have little connection to the dispute"); Electronic Frontier Foundation, *Saved by Alice*, https://www.eff.org/alice (explaining that the Court's decision in *Alice Corp. Pty. Ltd v. CLS Bank Intern.*, 573 U.S. 208 (2014), which limited the patentability of "abstract idea[s]," undermined the enforceability of "software patents [that] were especially popular with patent trolls who used them to attack startups and other productive companies"); *Octane Fitness v. ICON Health*, 572 U.S. 545 (2014) (giving broad interpretation to 35 U.S.C. § 285, a statute that frequently allows defendants to obtain attorneys' fees awards against NPEs, including in *RDC* and *RCDI*).

[13] SMF 34; Will Roberts, Note, *Closing in on the Patent Troll: State Legislatures' Role in Combatting Trolling Behavior*, 109 Minn. L. Rev. 2465, 2487 (2025).

As explained above, Rothschild himself is currently being sued by Valve under Washington State's Patent Troll Prevention Act. That lawsuit confirms that the specific issue of judgment-proof shell plaintiffs is a critical aspect of this nationwide debate, as Judge Jamal N. Whitehead recently explained in a discovery order that "evidence suggesting that Defendant Rothschild intentionally manages a network of undercapitalized companies for issuing threats of patent prosecutions while being shielded from personal liability . . . is a factor relevant to whether" Rothschild engages in bad-faith patent litigation. SMF 28. Finally, the many articles about Rothschild himself, catalogued throughout this Motion, including the Bloomberg Article, confirm the existence of a "public controversy" over NPE litigation. *See Silvester*, 839 F.2d at 1494.

**Second**, Rothschild has voluntarily thrust himself into this public debate through voluminous litigation, public promotion, media engagement, and curated website content.

Rothschild has filed over 1,300 patent-infringement lawsuits through his LLCs, SMF 4—often targeting major companies and non-profit organizations alike, *e.g.*, Starbucks, Valve, and the GNOME Foundation, SMF 35. One source identified Rothschild as the second "Most Active 'Patent Troll'" in America in 2016. SMF 36. "Involvement in the[] activities" that are the focus of the public controversy is sufficient to render a defamation plaintiff a limited public figure with respect to that controversy. *Berisha v. Lawson*, 973 F.3d 1304, 1310–11 (11th Cir. 2020).

Beyond litigation, Rothschild voluntarily engages the public directly. His website, leighmrothschild.com, SMF 37, portrays him as a "visionary inventor and entrepreneur" as opposed to an abusive patent troll, SMF 38. The site's "Media" section curates "news articles and press coverage" that describe Rothschild as a "modern-day Edison" with an "entrepreneurial mindset." SMF 39-42. Rothschild has given multiple interviews defending his litigation activities and business model, including a September 2023 YouTube interview with attorney Patrick Muffo,

now with Polsinelli, directly addressing critics who label him a "patent troll." SMF 41-42. Rothschild even commented through counsel in the Bloomberg Article at issue. Bloomberg Article at 3-4 [ECF No. 1-1]. Accordingly, in addition to being "position[ed] in the controversy" as the very focus of the controversy, Rothschild has also "purposely [tried] to influence the outcome" of that controversy, making him a limited public figure with respect to the public debate over NPE litigation. *Silvester*, 839 F.2d at 1494.

**Third**, there is no question that Attorney Lamkin's statement in the Bloomberg Article is "germane to the plaintiffs' participation in the controversy." *Silvester*, 839 F.2d at 1494. The statement addresses a key aspect of Rothschild NPE-litigation activity: that activity's reliance on underfunded, judgment-proof entities as plaintiffs in that litigation.

### 2. Rothschild Cannot Establish That Attorney Lamkin Acted with Actual Malice

Because Rothschild is a limited public figure, he must prove "by clear and convincing evidence" that Attorney Lamkin made the statement "with actual malice." *One for Israel v. Reuven*, No. 21-61475-CIV-SINGHAL, 2022 WL 4465389, at *2 (S.D. Fla. Sept. 26, 2022) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). "A defendant acts with actual malice when information is published 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *One for Israel*, 2022 WL 4465389, at *2 (quoting *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1156 (S.D. Fla. 2018), *aff'd*, 973 F.3d 1304 (11th Cir. 2020)). The actual malice standard is subjective, not objective. *Block v. Matesic*, 789 F. Supp. 3d 1131, 1164 (S.D. Fla. 2025); *Berisha*, 973 F.3d at 1312 (quoting *Silvester*, 839 F.2d at 1498). Rothschild cannot meet his burden of demonstrating that Attorney Lamkin knew her statement was false when she said it.

Attorney Lamkin's statement was based on her own personal experience in *RCDI* and *RDC*. As noted above but explained in more relevant detail here, in *RCDI*, on November 8, 2017,

16

Magistrate Judge Payne ordered RCDI to pay "attorneys' fees and costs in the amount of $288,911.99" to ADS Security within "30 days from the date of th[e] Order." SMF 20. RCDI did not pay. SMF 21; *RCDI*, 2019 WL 6002198, at *1. On June 27, 2018, after being unable to collect the award for nearly nine months, ADS Security filed a motion for an order to show cause, seeking to compel compliance with the Court's order or to hold Rothschild personally liable for payment. SMF 22. In response, Mr. Rothchild personally submitted a sworn declaration admitting that RCDI lacked the ability to pay the award, as it had *de minimis* funds in its bank account, SMF 23-24, and the Court expressly found that RCDI admitted that it did not have the ability to pay, SMF 25. On August 13, 2019, nearly two years after Magistrate Judge Payne ordered RCDI to pay the fees award, he found that "RCDI failed to pay the fees." SMF 44; *RCDI*, 2019 WL 6002198, at *1. In that case, while the court allowed ADS to seek recovery from Rothschild personally, SMF 43, Rothschild intentionally avoided service of process, leading to dismissal of the case without RCDI or Rothschild ever complying with the attorneys' fee award, SMF 44. Indeed, ██████████

████████████████████████████████████████████████████████████████████

██████████████████████ SMF 45.

CompanyCam went through a similar tortured experience in *RDC*. On February 23, 2021, Judge Noreika ordered RDC to pay $86,150 in attorneys' fees to CompanyCam within forty-five days. SMF 12. RDC did not pay. SMF 13. Instead, in an effort to become more difficult to reach, Rothschild terminated his attorneys representing RDC in that case. SMF 16. CompanyCam continued to pursue RDC and Rothschild through letters to the court, SMF 14-16, and discovery, SMF 15, 17, and Rothschild submitted discovery responses stating that RDC had only $980.51 in its bank account, SMF 17. On January 6, 2022, after CompanyCam had been trying to collect its fee award for nearly a year, Rothschild's attorney emailed Attorney Lamkin and said, "RDC would

be willing to provide a covenant not to sue across the entire portfolio of Rothschild patents where Rothschild is the inventor in exchange for a walkaway in which CompanyCam waives its claim to the award of the court and all other claims." SMF 46. Knowing it would never collect the fees, CompanyCam settled. SMF 47.

Attorney Lamkin's statement was true, and she knew it to be true from personal experience.

**D. AT Is Not a Proper Plaintiff**

Under Florida law, a "defamatory statement must . . . be 'of and concerning' the plaintiff." *Carrol v. TheStreet.com, Inc.*, No. 11-CV-81173-RYSKAMP/VITUNAC, 2012 WL 13134547, at *3 (S.D. Fla. May 25, 2012) (quoting *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)). The statement "[w]ith Leigh Rothschild, we never get the money because the shells go bankrupt" describes Attorney Lamkin's historical experience. It explains *why* she adopts the UFTA strategy: because in *past* cases (with plaintiffs like *RDC* and *RDCI*), she and her fellow patent-defense counsel "never [got] the money." This retrospective statement is not "of and concerning" AT, a plaintiff against whom Attorney Lamkin had not yet obtained a fee award.

Nor can AT claim that the statement is about AT simply because AT happens to be one of the at least fifty-one different "shell" entities through which Rothschild litigates. "Florida and federal cases dealing with group defamation consistently hold that a cause of action for group libel cannot be maintained unless it is shown that the libelous statements are 'of and concerning' the plaintiff," either because the group is small enough (fewer than "twenty-five . . . members") or because the circumstances point specifically to the plaintiff. *Thomas v. Jacksonville Television, Inc.,* 699 So. 2d 800, 804 (Fla. 1st DCA 1997) (citing Restatement (Second) of Torts § 564A)). Here, the Bloomberg Article and Attorney Lamkin's statement refer to "shells" in the context of Rothschild's "1,347 cases." Bloomberg Article at 5. Rothschild utilizes a vast network of at least fifty-one distinct limited liability companies to enforce his patents. SMF 48. Attorney Lamkin's

18

general reference to this large class of "shells"—of which there are dozens—cannot support a defamation claim by AT specifically. Because AT is merely one member of a large class of "shells," it is barred from claiming this statement is "of and concerning" AT. AT does not have a defamation claim against Lamkin.[14]

### E. Because Plaintiffs' Defamation Claim Fails, Their Remaining Claims Also Fail under the Single-Publication Doctrine

In addition to their defamation claims, Plaintiffs' Complaint also asserts various other claims, all based on the same statement in the Bloomberg Article. Compl. ¶¶ 28-42. Those claims fail as a matter of law for the reasons set out in Attorney Lamkin's Motion for Judgment on the Pleadings [ECF Nos. 47, 54]. But even if these claims were legally sufficient, they would fail on the additional basis that Florida law is clear that "[i]f [a] defamation count fails, the other counts based on the same publication must fail as well." *Bongino v. Daily Beast Co., LLC*, 447 F. Supp. 3d 1310, 1320 (S.D. Fla. Aug. 6, 2020) (quoting *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002)).[15]

### F. Attorney Lamkin Is Entitled to Attorneys' Fees Under the Florida Anti-SLAPP Statute

Florida's Anti-SLAPP statute "prohibits a person from filing a suit that is (a) 'without merit' and (b) 'primarily' because the person against whom the suit was filed 'exercised the constitutional right of free speech in connection with a public issue.'" *Bongino*, 447 F. Supp. 3d at 1322 (quoting § 768.295(3), Fla. Stat.). To safeguard the "constitutional right of free speech," *id.*, the statute provides that a court "shall award the prevailing party reasonable attorney fees and costs

---

[14] Even if a proper plaintiff, AT's claims fail because AT cannot prove Lamkin's statement was false, *supra*.

[15] Even if the defamation claim did not fail, the remaining claims would still be barred by the single-publication doctrine because they are based on the same statement. *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 328236, at *11 n.17 (S.D. Fla. Jan. 23, 2015).

incurred in connection with a claim that an action was filed in violation of this section." § 768.295(3), Fla. Stat. In federal court, the statute "fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is 'without merit' and thus prohibited." *Bongino*, 447 F. Supp. 3d at 1323.

For the reasons explained in this Motion, all of Plaintiffs' claims are "without merit." § 768.295(3), Fla. Stat. Because Plaintiffs' claims seek to impose liability on Attorney Lamkin for speaking with a Bloomberg reporter about the important issue of Rothschild's NPE litigation activity, the claims were also impermissibly filed "primarily because" Attorney Lamkin "exercised the constitutional right of free speech in connection with a public issue," which the statute defines to include "any written or oral statement . . . made in connection with [a] news report, or other similar work." § 768.295(2)(a), (3), Fla. Stat.

Because the Anti-SLAPP statute uses the word "shall," this award of attorneys' fees is non-discretionary. *Suarez v. Bank of N.Y. Mellon Tr. Co.*, 325 So. 3d 205, 208 (Fla. 2d DCA 2021); *Durant v. Big Lots, Inc.*, No. 5:23-CV-561-GAP-PRL, 2024 WL 3321879, at *2 (M.D. Fla. July 3, 2024), *aff'd*, 2025 WL 2461619 (11th Cir. Aug. 27, 2025).

## V. CONCLUSION

For the reasons explained in this Motion, Attorney Lamkin respectfully requests summary judgment in her favor on Plaintiffs' claims in their entirety, as well as attorneys' fees under Florida's Anti-SLAPP statute.

## <u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(b)(2), Attorney Lamkin respectfully requests oral argument of at least forty-five minutes on this Motion, as it would assist the Court in resolution of this case.

Dated: December 19, 2025

Respectfully submitted,

*/s/ Brenton H. Cooper*
Brenton H. Cooper
Florida Bar No. 1035909
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, D.C. 20001
T: 202-639-1325
F: 202-639-7890
brent.cooper@bakerbotts.com

Paul R. Elliott (admitted *pro hac vice*)
Texas Bar No. 06547500
**BAKER BOTTS L.L.P.**
910 Louisiana St.
Houston, Texas 77002
T: 713-229-1226
F: 713-229-1522
paul.elliott@bakerbotts.com

Rachael D. Lamkin (admitted *pro hac vice*)
California Bar No. 246066
**BAKER BOTTS L.L.P.**
101 California Street
San Francisco, California 94111
T: 415-291-6264
F: 415-291-6364
rachael.lamkin@bakerbotts.com

*Attorneys for Defendant Rachael Lamkin*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 19, 2025, a true and correct copy of the above document

was provided to all counsel of record through the Court's CM/ECF system.

*/s/ Brenton H. Cooper*
Brenton H. Cooper

21