UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-24669

**LEIGH M. ROTHSCHILD and
ANALYTICAL TECHNOLOGIES, LLC,**

    Plaintiffs,

v.

**STARBUCKS CORPORATION,
and RACHAEL LAMKIN,**

    Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**THIS CAUSE** is before the Court on Defendant Rachael Lamkin's ("Defendant") Motion for Judgment on the Pleadings, [ECF No. 47] ("Motion"). The Honorable Darrin P. Gayles, United States District Judge, referred the case to the undersigned for a ruling on all pretrial non-dispositive matters and for a report and recommendation on all dispositive matters. [ECF No. 79]. Upon careful review of the Motion, the Response filed by Plaintiffs Leigh M. Rothschild ("Rothschild") and Analytical Technologies, LLC ("AT," and, together with Rothschild, "Plaintiffs"), [ECF No. 53], Defendant's Reply, [ECF No. 54], and argument of counsel at the February 4, 2026 hearing, the undersigned respectfully recommends that the Motion be **GRANTED IN PART, DENIED IN PART** for the reasons outlined below.

## I.　　BACKGROUND

The facts of this protracted litigation are simple. Defendant Lamkin is an attorney who represented Starbucks Corporation ("Starbucks") in a patent lawsuit against Plaintiffs in the Eastern District of Texas ("Texas Lawsuit"). Compl. ¶ 15. Plaintiffs allege that, in connection with the Texas Lawsuit, Defendant made the following statement in a 2024 article published by Bloomberg Law: "[W]ith Leigh Rothschild, we never get the money because the shells go bankrupt." *id*. ¶ 17. Plaintiffs also allege that Defendant stated to Rothschild, "[B]efore I'm done with you I'm going to bankrupt you," *id*. ¶ 20, and that Defendant Lamkin made statements in a 2017 article that Rothschild "set[] up . . . shell corporations by false representations," he "knows [the] patents are patent-ineligible," and "the graft continues," *id*. ¶ 21.

Subsequently, Plaintiffs filed suit against Defendant and Starbucks alleging claims of defamation (Count I), intentional infliction of emotional distress ("IIED") (Count II), tortious interference with business relationships (Count III), and unfair competition (Count IV). *See generally* Compl. Defendant filed a counterclaim against Plaintiffs for abuse of process (Count I). [ECF No. 14]. Thereafter, Plaintiffs settled with Starbucks. [ECF No. 19].

Defendant's Motion for Partial Judgment on the Pleadings is now before the Court. [ECF No. 47]. Defendant first argues that, to the extent Plaintiffs' claims are based on the 2017 article, their claims are time-barred by the two-year statute of limitations for defamation. Plaintiffs, however, concede that their defamation claim is not based on the 2017 article, but rather is based solely on the publication of the 2024 Bloomberg article. Defendant then argues that Counts II, III, and IV should be dismissed because these claims lack merit.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings. "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (citations omitted). The complaint may not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," dismissal is appropriate. *Id.* (citations omitted).  Indeed, "[i]f it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint, the district court should dismiss the complaint." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019). In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts. *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 18-80311-CIV, 2020 WL 5514385, at *1 (S.D. Fla. Sept. 11, 2020).

"When the defendant is the movant, '[a] motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted.'" *Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1349 (S.D. Fla. 2013) (citing *Pinto v. Microsoft Corp.*, No. 12-60509-CIV, 2012 WL 4479059, at *2 (S.D. Fla. Sept. 28, 2012)). The Court must "accept all facts in the complaint as true and view them in the light most favorable to the plaintiffs." *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (internal quotations omitted).  A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Diamond Resorts*, 2020 WL 5514385, at *2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor can a complaint

rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. DISCUSSION

#### A. Plaintiffs' Claims Are Not Time-Barred

Defendant asserts that Plaintiffs' claims are time-barred to the extent they rely on the 2017 article because the statute of limitations for defamation claims is two years. *See* Mot. at 6-8. While the Complaint includes allegations about the 2017 article, Plaintiffs' claims are based solely on the 2024 Bloomberg article, as Plaintiffs' defamation claim refers solely to the 2024 Bloomberg article and Defendant's alleged statements therein. *See* Compl. ¶ 24. And, Plaintiffs' remaining claims for IIED, tortious interference with business relationships, and unfair competition are based on Defendant's allegedly defamatory statements asserted within the two-year statute of limitations. *See id.* ¶¶ 30, 36, 40. Plaintiffs also confirmed in their Opposition that they were not asserting claims based on the 2017 article. *See* Opp. at 3-4. Plaintiffs' claims therefore are not time-barred.

#### B. Intentional Infliction of Emotional Distress Claim (Count II)

Defendant next claims that Plaintiffs fail to allege an IIED claim because the Complaint fails to identify conduct that is sufficiently outrageous. *See* Mot. at 9-12. "To state a claim of intentional infliction of emotional distress," a plaintiff must establish:

> (1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) [t]he conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) [t]he conduct caused emotional distress; and (4) [t]he emotional distress was severe.

*Ingram v. Butter*, No. 1:14-cv-21392, 2015 WL 9911314, at *5 (S.D. Fla. Dec. 23, 2015) (quoting *Klayman v. Judicial Watch, Inc.*, 22 F.Supp.3d 1240, 1256 (S.D. Fla. 2014)).

Under Florida law, "whether conduct is [sufficiently] outrageous" to support claim for intentional infliction of emotional distress is a "question of law, and the conduct must be 'so extreme in degree, as to go beyond all possible bounds of decency.'" *Land v. Sheriff of Jackson Cnty. Fla.*, 85 F.4th 1121, 1130 (11th Cir. 2023) (quoting *Metro. Life Ins. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985)). "While there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has evolved an extremely high standard." *Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018).

Courts uphold claims of intentional infliction of emotional distress only in "extremely rare circumstances." *Triana v. Diaz*, 12-21309-CIV-KING, 2014 WL 5319800, at *7 (S.D. Fla. Oct. 16, 2014). The following plaintiffs sufficiently pleaded an IIED claim under Florida law:

- A minor arrestee sufficiently alleged outrageous conduct by alleging that sheriffs were on notice that he had disabilities, yet they beat him, struck him with a flashlight, and used a stun gun against him. *See C.P. ex rel. Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085 (M.D. Fla. 2015).

- A plaintiff stated a claim for IIED by alleging that her manager inappropriately touched her on multiple occasions, including "groping" her and "digital[ly] pentrat[ing]" her. *Robinson v. Hill*, No. 6:17-cv-559, 2018 WL 962199, at *3 (M.D. Fla. Feb. 20, 2018).

- A plaintiff teacher stated cause of action against students for IIED by alleging that students participated in production and distribution of newsletter in which the author threatened to kill the teacher and to rape her and her children. *Nims v. Harrison*, 768 So. 2d 1198, 1201 (Fla. 1st DCA 2000). The Court found that the conduct alleged was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *See id.*

- A plaintiff dog owner stated a claim for IIED against police officers who allegedly came to the dog owner's house after he called 911, held him at gunpoint, and fatally shot his dog in front of him without justification, even though the dog had been incapacitated by a stun gun and was incapable of harming anyone. *See Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1367-69 (11th Cir. 2024).

By contrast, "mere insults, indignities, threats, or false allegations" are not enough to establish outrageous conduct. *Bakar v. Bryant*, 24-cv-21927-CIV, 2013 WL 5534235, at *2 (S.D.

5

Fla. Oct. 7, 2013) (citing *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004)). Even allegations of "reprehensible, objectionable, and offensive" conduct have been rejected as insufficient to state a claim for intentional infliction of emotional distress. *Id*. For example, the Court in *LeGrande v. Emmanuel*, 889 So. 2d 991 (Fla. 3d DCA 2004), found that the plaintiff pastor did not allege extreme or outrageous conduct by alleging that one of his parishioners falsely published "specific instances of theft from the church." Likewise, the Court in *Food Lion, Inc. v. Clifford*, 629 So. 2d 201, 203 (Fla. 5th DCA 1993), held that a terminated employee had no IIED claim when he asserted that his former employer falsely accused him of theft because the employer's conduct "simply [did] not rise to the level of outrageousness."

Here, Plaintiffs do not sufficiently allege outrageous conduct to plead an IIED claim as required under Florida law. In the Complaint, Plaintiffs merely allege, "Defendants' conduct in publishing false and defamatory statements about LMR was both intentional and reckless, and it was outrageous." Compl. ¶ 29. The only published statement that Plaintiffs could be referring to in their Complaint is Defendant's statement from the 2024 Bloomberg article that "with Leigh Rothschild, we never get the money because the shells go bankrupt." *Id*. ¶ 17. Defendant's statement does not "go beyond all possible bounds of decency," and, therefore, does not rise to the level of outrageous conduct that Plaintiffs are required to plead. Further, Plaintiffs' allegation that Defendant's statement is "outrageous" is conclusory and unsupported by sufficient factual allegations to plausibly support their IIED claim.

In their Opposition, Plaintiffs argue that they should be allowed discovery to prove their IIED claim. *See* Opp. at 4-5. However, this Court may only consider the pleadings and judicially noticed facts at the motion for judgment on the pleadings stage. *Diamond Resorts*, 2020 WL 5514385, at *1. Even with the benefit of discovery, Plaintiff will be "able to prove no set of facts

6

in support of his claim which would entitle him to relief." *Hawthorne*, 140 F.3d at 1370. Accordingly, Count II of Plaintiffs' Complaint for intentional infliction of emotional distress should be dismissed.

### C. Tortious Interference with Business Relationship Claim (Count III)

Defendant also argues Plaintiffs' tortious interference with business claim fails because the Complaint does not identify any specific relationship with which Lamkin interfered. *See* Mot. at 12-15. To succeed in a claim for tortious interference with business relationships under Florida law, the plaintiff must demonstrate (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the tortious interference with that relationship. *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 9:13-cv-80645, 2014 WL 12461349, at *11 (S.D. Fla. Jan. 7, 2014). "The first element—existence of a business relationship—requires (1) 'a business relationship evidenced by an actual and identifiable understanding or agreement,' . . . and (2) 'a relationship with a particular party, and not just a relationship with the general business community.'" *Id.* (internal citation omitted). Further, the "customer or party with whom the plaintiff is alleging to have a business relationship must be 'identifiable.'" *Id.*

A plain reading of Plaintiffs' Complaint reveals that they are not grounding their tortious interference claim upon relationships with the community at large. Plaintiffs allege, "Each of LMR and AT has business relationships with many patent owners and related entities that affords existing or prospective legal rights, including these Plaintiffs' efforts to acquire and license patents." Compl. ¶ 33. Here, Plaintiffs assert the existence of *ongoing* business relationships with existing patent owners and related entities. *See id.*; *see also Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944

7

F. Supp. 1538, 1570 (S.D. Fla. 1996) (finding that the plaintiffs sufficiently pled a claim for tortious interference with business relationships when the complaint alleged ongoing business relationships); *Ins. Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc.*, 384 So. 2d 303, 306 (Fla. Dist. Ct. App. 1980) (finding that plaintiffs sufficiently pled a business relationship because the "economically advantageous business relationships" alleged in the complaint were "capable of ascertainment"). Although the Complaint is drafted with a high degree of abstraction and does not specifically identify each of the relationships allegedly interfered with, this Court cannot conclude that Plaintiffs can prove no set of facts to support their tortious interference claim. *See Future Tech*, 944 F. Supp. at 1570. "Additional specificity is not required under our liberal system of notice pleading." *Id.* Further, the pleadings show that Defendant had knowledge of Plaintiffs' relationships with patent owners and related entities, as Defendant has engaged in other patent lawsuits against Plaintiffs. *See* Am. Ans. ¶ 15. Count III for tortious interference with business relations therefore should not be dismissed.

### D. Unfair Competition Claim (Count IV)

Finally, Defendant argues that Plaintiffs' unfair competition claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") fails because the Complaint fails to allege that Lamkin was acting in the context of "trade or commerce." *See* Mot. at 15-18. To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012). For FDUTPA to apply, the alleged violation must have taken place "in the conduct of any trade or commerce." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020) (quoting Fla. Stat. §§ 501.203(8), 501.204(1)). FDUTPA defines "trade or commerce" as "'the advertising, soliciting, providing, offering, or distributing' of goods, services, property, 'or any

8

other article, commodity, or thing of value.'" *Id.* at 1321 (quoting § 501.203(8), Fla. Stat.). Where a complaint fails to allege facts establishing that the defendant's conduct occurred in the context of "trade or commerce," dismissal is appropriate. *See, e.g., Economakis v. Butler & Horsch, P.A.*, No. 2:13-cv-832, 2014 WL 820623, at *3 (M.D. Fla. Mar. 3, 2014) (granting motion to dismiss because "no 'trade or commerce' ha[d] been alleged in the Complaint").

Further, when the action "allegedly violat[ing]" FDUTPA "is the publication of information, the statute applies only to commercial speech." *Bongino*, 447 F. Supp. at 1321 (quoting *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017)). "Commercial speech" consists of "expression related solely to the economic interests of the speaker and its audience." *Id.* (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980)). The "core notion of commercial speech" is "speech which does no more than propose a commercial transaction." *U.S. Structural Plywood Integrity Coalition v. PFS Corp.*, 524 F. Supp. 3d 1320, 1333 (S.D. Fla. 2021) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)).

Courts have dismissed FDUTPA claims based on a complaint's failure to allege facts satisfying the "trade or commerce" requirement in situations where the conduct at issue was far more connected to commercial activity than Attorney Lamkin's alleged conduct in the instant case. *See, e.g., Bongino*, 477 F. Supp. 3d at 1320 (concluding that the plaintiff's FDUTPA claim failed because "magazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within these editorial sources into commercial speech" (citing *Tobinik v. Novella*, 848 F.3d 935, 952 (11th Cir. 2017))); *Gorran v. Atkins Nutritionals, Inc.*, 279 F. App'x 40 (2d Cir. 2008) (affirming the district court's dismissal of FDUTPA claims against the developers of the so-called "Atkins diet" based on the defendant's alleged misrepresentations

9

about the effectiveness and health risks of the Atkins diet because the content on which the plaintiff sought to premise liability was noncommercial speech).

Here, Defendant's comment in the 2024 Bloomberg article is not a deceptive act or unfair practice because the comment was not commercial in nature. Defendant's statement that "with Leigh Rothschild, we never get the money because the shells go bankrupt" may allude to "money," but the statement does not promote "'the advertising, soliciting, providing, offering, or distributing' of goods, services, property, 'or any other article, commodity, or thing of value'" as set forth in FDUTPA. *See* Compl. ¶ 17. Because Plaintiffs' Complaint does not include any other allegation that Defendant's conduct was done in the context of trade or commerce, the Complaint fails to adequately assert a claim for unfair competition under FDUTPA.

Plaintiffs respond that its argument will be factually supported because Lamkin's conduct was directed at harming Plaintiffs' commercial interests, and by doing so, advancing the interests of herself, her law firm, and her clients. *See* Opp. at 6. However, Plaintiffs did not include these allegations in their Complaint, and the Court may only consider the pleadings and judicially noticed facts. *See Diamond Resorts*, 2020 WL 5514385, at *1. Count IV of the Complaint for unfair competition under FDUTPA should therefore be dismissed.

## IV. RECOMMENDATION

The undersigned hereby **RECOMMENDS** Defendant's Motion for Partial Judgment on the Pleadings be **GRANTED IN PART, DENIED IN PART**.

## V. OBJECTIONS

Within **five (5) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1). Any response shall be filed

within **five (5) days** of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

      **DONE AND ORDERED** at Fort Lauderdale, Florida, this 4th day of February 2026.

                                             **DETRA SHAW-WILDER**
                                             **UNITED STATES MAGISTRATE JUDGE**

cc:      The Honorable Darrin P. Gayles
           All Counsel of Record