UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-24669-DPG/DSW

LEIGH M. ROTHSCHILD and
ANALYTICAL TECHNOLOGIES, LLC,

      Plaintiffs,

v.

STARBUCKS CORPORATION
and RACHAEL LAMKIN,

      Defendants.

_____/

## OMNIBUS REPORT AND RECOMMENDATION ON
## <u>MOTIONS FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** is before the Court on Plaintiffs Leigh M. Rothschild ("Rothschild") and

Analytical Technologies, LLC's ("AT," and, together with Rothschild, "Plaintiffs") Motion for

Summary Adjudication of Defamation and No Abuse of Process ("Plaintiffs' Motion"), [ECF No.

89], and Defendant Rachael Lamkin's ("Lamkin") Motion for Summary Judgment ("Lamkin's

Motion"), [ECF No. 91].[1]   Upon careful review of the record, the undersigned respectfully

recommends that Lamkin's Motion be **GRANTED**, Plaintiffs' Motion be **GRANTED IN PART**

**AND DENIED IN PART**, and that judgment be entered in favor of Lamkin on Plaintiffs' counts

for defamation (Count I) and tortious interference with business relations (Count III), and

---

[1]    The Honorable Darrin P. Gayles, United States District Judge, referred the case to the undersigned for a ruling on all pretrial non-dispositive matters and for a report and recommendation on all dispositive matters. [ECF No. 79].

judgment be entered in favor of Plaintiffs on Lamkin's abuse of process counterclaim for the reasons outlined below.

## I.  BACKGROUND

### A.  Lamkin's Prior Litigation Experience with Plaintiffs

This case involves two parties with a long and contentious history of patent litigation between them. Plaintiff Rothschild views himself as a prolific inventor who controls Patent Asset Management, LLC ("PAM"), the parent company of various patent-assertion entities. [ECF No. 88 ¶¶ 5–7]. A patent-assertion entity ("PAE") is an entity that asserts intellectual property rights against infringing parties to extract settlements as a source of revenue. [ECF No. 88-42 at 11]. PAEs connected to Rothschild have filed more than 1,300 patent lawsuits.[2] [ECF No. 88 ¶ 4]. Numerous articles, internet posts, and judicial documents have identified Rothschild as a "patent troll" and contain criticisms of Rothschild's practice of using "shell" entities to file lawsuits to extract nuisance-value settlements. [ECF No. 88 ¶¶ 8–9].  Rothschild's website includes a "Media" section with "news articles and press coverage" describing Rothschild as a "modern-day Edison" with an "entrepreneurial mindset," along with links to multiple media interviews. *Id.* ¶¶ 37, 39.

Defendant Lamkin is a patent attorney who, according to her Motion, has represented clients in lawsuits filed by PAEs. [ECF No. 88 ¶ 1]; [ECF No. 91 at Mot. at 1]. Lamkin has represented companies in lawsuits against Rothschild and entities affiliated with Rothschild. [ECF No. 88 ¶ 12; ECF No. 88-16]. In one such case, *Rothschild Digital Confirmation, LLC v. CompanyCam*, Case No. 1:19-cv-01109-MN (D. Del.) ("*RDC*"), the Court awarded the defendant

---

[2]    The Parties alternate between using the terms "patent-assertion entities" and "non-practicing entities" in their filings. Based on the Court's understanding, these terms are interchangeable. [ECF No. 88-42]. For ease, the Court will only use "patent-assertion entities" in this Report and Recommendation.

attorneys' fees, but Rothschild's company Rothschild Digital Confirmation, LLC ("RDC"), controlled by PAM, did not pay the defendant's attorneys' fees. [ECF No. 88 ¶¶ 12–13]. In another patent lawsuit, *RCDI v. ADS Security, L.P.*, Case No. 2:15-cv-01463-JRG-RSP (E.D. Tex.) ("*RCDI*"), Rothschild Connected Devices Innovations, LLC ("RCDI"), also controlled by Rothschild through PAM, never paid the attorneys' fees because it lacked the ability to do so. *Id.* ¶ 21, 24–25.

### B. The Bloomberg Article

Lamkin represented Defendant Starbucks in a PAE lawsuit against Plaintiff AT. In October 2024, Lamkin gave an interview to Bloomberg Law ("Bloomberg"), in connection with an article ("Bloomberg article") about Lamkin's patent litigation experience and history of litigating against PAEs. Bloomberg later published an article that included quotes attributed to Lamkin. Specifically, the Bloomberg article, which was attached to the Complaint, is about Starbucks' "aggressive and novel litigation strategy to defend against what is characterize[d] as a weak infringement suit." [ECF No. 1-1 at 3]. The article states, in relevant part:

> Lamkin said she's tussled with [Rothschild] for years and has been particularly frustrated by the early settlement offers from Rothschild, which she called "obnoxiously low." "The settlement amounts are so low that companies aren't going to pay attorneys the thousands of hours it takes to catch him at his game," she said in an interview. "And with Leigh Rothschild, we never get the money because the shells go bankrupt."

> [ECF No. 1-1 at 5].

Rothschild's defamation claim here is based entirely on the quote in the Bloomberg article attributed to Lamkin: "**And with Leigh Rothschild, we never get the money because the shells go bankrupt**." [ECF No. 88 ¶ 10] (emphasis added).

3

### C. Procedural History

Subsequently, Plaintiffs filed suit against Lamkin and Starbucks alleging claims of defamation (Count I), intentional infliction of emotional distress ("IIED") (Count II), tortious interference with business relationships (Count III), and unfair competition (Count IV). *See generally* [ECF No. 1]. Lamkin filed a counterclaim against Plaintiffs for abuse of process (Count I). [ECF No. 14].

Lamkin filed a Motion for Partial Judgment on the Pleadings, arguing that Plaintiffs' IIED claim, tortious interference with business relations claim, and unfair competition claim should be dismissed. [ECF No. 47]. This Court recommended granting in part and denying in part Lamkin's Motion for Partial Judgment on the Pleadings. [ECF No. 122]. Specifically, this Court recommended granting the motion as to Plaintiffs' IIED and unfair competition claims, but denying the motion as to Plaintiffs' tortious interference with business relations claim. *See id.* The district court adopted this Court's Report and Recommendation in full and dismissed Plaintiffs' claims for IIED and unfair competition. [ECF No. 135].

The Parties' opposing summary judgment motions are now before the Court. [ECF Nos. 89, 91]. Plaintiffs argue in their Motion that Lamkin's statement "And with Leigh Rothschild, we never get the money because the shells go bankrupt" is false and defamatory because Lamkin admitted: (1) that no entities connected with Plaintiff Rothschild had ever owed her or her clients any money "in the form of a judgment" [ECF No. 89 at 6]; (2) that the only two entities related to Rothschild that she considered "shells" were engaged in operations, *id.* at 6–7; and (3) that those two entities had never gone "bankrupt." *Id.* at 7. Plaintiffs also argue that they are not liable for abuse of process because they establish a claim for defamation against Lamkin. *Id.* at 3.

Lamkin opposed Plaintiffs' Motion and filed her own competing motion for summary judgment. [ECF No. 91]. Lamkin asserts that Plaintiffs' defamation claim fails for four reasons.[3] First, Lamkin's statement is true. *See* [ECF No. 91 at Mot. at 5–11]. Second, the statement in the Bloomberg article is not defamatory because it is consistent with Rothschild's well-established reputation. *See id.* at 11–13. Third, Rothschild cannot establish that Lamkin acted with actual malice. *See id.* at 13–18. And lastly, Plaintiff AT has no cognizable defamation claim. *See id.* at 18–19. Lamkin further argues that, because Plaintiffs fail to establish a defamation claim, the remaining claims[4] must be dismissed, based on the single publication doctrine and that Lamkin is entitled to a mandatory award of attorneys' fees under Florida's Anti-SLAPP statute. *See id.* at 19–20.

## II.   LEGAL STANDARD

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). The Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022). "A factual dispute is genuine 'if the evidence

---

[3]    Throughout her Motion, Lamkin refers to "Plaintiffs'" defamation claim. However, only Rothschild pled a claim for defamation in the Complaint. *See* [ECF No. 1 ¶ 23]; [ECF No. 91].

[4]    Because the District Judge adopted this Court's Report and Recommendation on Lamkin's Motion for Partial Judgment on the Pleadings, [ECF No. 135], Plaintiffs' only remaining claim, apart from the defamation claim, is for tortious interference with business relations.

is such that a reasonable jury could return a verdict for the non-moving party.'" *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). "In supporting its positions under a Motion for Summary Judgment, a party must support its assertions by presenting admissible evidence." *Int'l Yacht Bureau, Inc. v. Int'l Registries, Inc.*, No. 13-60947-CIV, 2015 WL 5118121, at *4 (S.D. Fla. Sept. 1, 2015) (citing Fed. R. Civ. P. 56(c)). "The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law." *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion." *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Torres*, 244 F. Supp. 3d at 1327 (internal quotation marks and citation omitted). "[A] court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.* at 1327–28.

## III.   DISCUSSION

### A. Rothschild's Defamation Claim[5]

Under Florida law,[6] defamation is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973). Defamation has five elements in Florida: (1) publication;[7] (2) falsity;[8] (3) the actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person;[9] (4)

---

[5]   Lamkin argues that AT is not a proper plaintiff because a defamatory statement must be "of and concerning" the plaintiff. [ECF No. 91 at Mot. at 18–19]. However, only Rothschild—not AT—brought a claim for defamation. *See* [ECF No. 1 ¶¶ 23–27].

[6]   This is a diversity action, making the application of substantive law of the State of Florida applicable. *Dew Seven, L.L.C. v. Big Lots Stores, Inc.*, 354 F. App'x 415, 415 (11th Cir. 2009).

[7]   Rothschild claims that Lamkin published a statement in the Bloomberg article. [ECF No. 1 ¶ 24]. Lamkin, however, did not publish the Bloomberg article. Neither party disputes that Lamkin spoke to Bloomberg in an interview, and that Bloomberg subsequently published an article quoting Lamkin. [ECF Nos. 90 ¶ 1; 103 ¶ 1; 88 ¶ 10]. "The publication of a statement in a defamation claim only requires the dissemination of a false statement to a person other than the defamed person." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014). "To communicate or publish is to make known, and requires that someone hear or read the information communicated." *Tillet v. BJ's Wholesale Club, Inc.*, No. 3:09-cv-1095-J-34MCR, 2010 WL 11507322, at *4 (M.D. Fla. July 30, 2010) (citing *Granda-Centeno v. Lara*, 489 So. 2d 142, 143 (Fla. 3rd DCA 1986)). Lamkin's statement to the Bloomberg reporter is a "publication" for defamation purposes. However, she did not publish the statement in the Bloomberg article on which Rothschild's claim is based. The Bloomberg article is, in essence, a republication of her original statement.

[8]   The Court finds Rothschild's argument that he is entitled to summary judgment as to falsity element of defamation to be without merit. "[T]he burden is on the plaintiff to prove falsity." *Cuban Am. Nat. Found.*, 731 So. 2d at 704. "Falsity exists only if 'the publication is substantially and materially false, not just if it is technically false.'" *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) (Gayles, J.), *aff'd*, 879 F.3d 1254 (11th Cir. 2018) (quoting *Cuban Am. Nat'l Found.*, 731 So. 2d at 707).

[9]   In a defamation *per se* action, there is an absolute presumption of malice. *Turner*, 198 F. Supp. 3d at 1365. Lamkin, however, argues that Rothschild is a public figure. A public figure must prove actual malice by clear and convincing evidence. *Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999).

actual damages; and (5) the statement must be defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

"[I]n a defamation *per se* action, the plaintiff does not need to show any special damages . . . because per se defamatory statements are so obviously defamatory and damaging to reputation that they give rise to an absolute presumption both of malice and damage." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018) (Gayles, J.) (cleaned up) (citations omitted). "A written publication is defamatory per se if it '(1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession.'" *Id.* (citing *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015)). While Rothschild did not label it as such, he has alleged the elements of a defamation *per se* claim. *See generally* [ECF No. 1].

Both parties move for summary judgment on the defamatory element of a defamation claim. Rothschild argues that Lamkin's statement was defamatory because no Rothschild-related entity ever owed Lamkin or her clients any money, Lamkin admitted in discovery that the only two LMR-related entities she considered "shells" were engaged in operations, and Lamkin admitted that two of Rothschild's companies never filed for bankruptcy. Lamkin, on the other hand, contends that her statement was not defamatory because it was consistent with Rothschild's reputation. The Court finds as a matter of law that Lamkin's statement at issue here—"[a]nd with Leigh Rothschild, we never get the money because the shells go bankrupt"—is not defamatory. Summary judgment should therefore be entered for Lamkin and against Rothschild on Rothschild's defamation claim.

### 1. Lamkin's Statement Is Not Defamatory

A statement is defamatory if it "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated . . . exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020). "To determine if a statement is defamatory, it must be considered in the context of the publication." *Id.* (quoting *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999)). "[A] court should read and construe the publication as a whole . . . and in the sense in which the readers to whom it is addressed would understand it." *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (citations omitted). A plaintiff may not recover under a defamation claim where "no further harm could have occurred" to his reputation. *Davis v. McKenzie*, No. 16-62499-CIV, 2017 WL 8809359, at *14 (S.D. Fla. Nov. 3, 2017), *report and recommendation adopted*, No. 16-62499-CIV, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018).

"Whether a statement is reasonably capable of a defamatory interpretation is a question of law for the Court to determine prior to the jury's evaluation of whether the statement was in fact understood as defamatory unless a publication is susceptible of two reasonable interpretations, one of which is defamatory – which then becomes an issue of fact for the jury." *Trump v. Dow Jones & Co., Inc.*, No. 1:25-CV-23232, 2026 WL 1453673, at *6 n.12 (S.D. Fla. May 22, 2026) (internal quotations omitted) (Gayles, J.) (citing *Mac Isaac v. Twitter*, 557 F. Supp. 3d 1251, 1257 n.5 (S.D. Fla. 2021)). Lamkin's statement is not ambiguous or susceptible to two reasonable interpretations. Therefore, it is appropriate for the Court to determine whether the statement is defamatory as a matter of law.

### a.  Lamkin's Statement Is Not Defamatory Because Bankruptcy Is an Accepted and Commonplace Financial Tool

The Court must determine whether Lamkin's statement concerning Rothschild's company "tends to" subject Rothschild to "hatred, distrust, ridicule, contempt, or disgrace." *See Turner*, 198 F. Supp. 3d at 1365. This Court finds that it does not. Bankruptcy is viewed as a helpful, oft-used tool for individuals or entities experiencing financial difficulty. *See, e.g.*, *In re Gentri*, 185 B.R. 368, 375 (Bankr. M.D. Fla. 1995) ("The bankruptcy laws exist to provide honest debtors in financial difficulties with relief from those difficulties and a fresh start."); *In re Jordan*, No. 17-31098-WRS, 2019 WL 1284291, at *3 (Bankr. M.D. Ala. Feb. 20, 2019) ("Thousands of bankruptcy cases are filed every year."); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013) (holding that false statements of bankruptcy are not defamatory per se because "[a] similar taint does not attach to the reputation of people who go bankrupt. Many innocent reasons lead to financial distress").

### b.  Lamkin's Statement is Consistent with Rothschild's Reputation

Further, Rothschild is prohibited from recovering for defamatory statements "where the plaintiff's reputation in the community was so tarnished before the publication that no further harm could have occurred." *See Davis*, 2017 WL 8809359, at *14 (granting summary judgment in favor of defendant). As framed within the context of the Bloomberg article, the statement is consistent with Rothschild's reputation within the relevant PAE community. The undisputed facts show that, according to other online publications, Rothschild was described as a "patent troll" who asserted patent litigation lawsuits through his numerous shell companies, and that he utilized shell companies for the purpose of evading fees and penalties. [ECF No. 88 ¶¶ 8–9, 29, 32–33, 36]. It is also undisputed that numerous articles, other internet posts, and judicial documents referred to Rothschild's companies as "shells." [ECF No. 88 ¶¶ 9, 32]. Based on the undisputed facts,

10

Rothschild's reputation before Lamkin made her statement was that he created "shell" companies and that he was a "patent troll." The Court agrees with Lamkin that her statement was consistent with Rothschild's reputation, so Lamkin's statement concerning Rothschild's conduct with respect to PAE litigation does not support a defamation claim. *See Davis*, 2017 WL 8809359, at \*16 (concluding that the plaintiff may not recover on his defamation claim due to his documented history of violence and media coverage of his alleged abuses, which had damaged his reputation).

### c.   Lamkin's Statement Is Hyperbole or Opinion

Lamkin's statement also qualifies as nonactionable rhetorical hyperbole or opinion protected by the First Amendment. "A statement is pure opinion, as a matter of law, 'if the speaker states the facts on which he bases his opinion.'" *Turner*, 198 F. Supp. 3d at 1365 (citing *Lipsig v. Ramlawi*, 760 So. 2d 170, 184 (Fla. 3d DCA 2000)); *see also From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981) (holding that pure opinion occurs "when the defendant makes a comment or states an opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public"). "It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole." *Flynn v. Wilson*, 398 So. 3d 1103, 1111 (Fla. 2d DCA 2024) (citing *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006)).

The First Amendment protects "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Id.* (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)); *see also Fortson*, 434 F. Supp. 2d at 1378–79 (noting that protected rhetorical hyperbole may "at first blush appear to be factual" (quoting *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995))). Courts have extended First

Amendment protection to such statements in recognition of "the reality that exaggeration and non-literal commentary have become an integral part of social discourse." *Flynn*, 398 So. 3d at 1112 (citing *Levinsky's, Inc. v. Wal–Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997)); *see also Biro v. Conde Nast*, 883 F. Supp. 2d 441, 462 (S.D.N.Y. 2012) (holding that a lawyer's statement in regard to the fact that the plaintiff filed for bankruptcy and never paid many of the judgments against him, and that the plaintiff "oiled his way out of the whole thing . . . [and] got away scot-free," is an expression of opinion and therefore not defamatory).

"In determining whether a statement is one of fact, 'context is paramount.'" *Loomer v. Maher*, No. 5:24-CV-625-JSM-PRL, 2026 WL 1098163, at *6 (M.D. Fla. Apr. 22, 2026) (granting summary judgment for the defendant). "[T]he court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. The court must consider the context in which the statement was published . . . ." *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). "All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published." *Id.* Further, "[a]n important factor in the process of analyzing a comment is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks." *Turner*, 198 F. Supp. 3d at 1366 (citing *Zambrano v. Devanesan*, 484 So. 2d 603, 606 (Fla. 4th DCA 1986). "Where the speaker or writer presents the facts at the same time he or she offers independent commentary, a finding of pure opinion will usually result." *Id.*

Rothschild asks the Court to isolate Lamkin's statement and analyze each discrete part of the statement. [ECF No. 89 at 6–7]. However, the Court cannot disregard the context in which Lamkin's statement was made in determining whether Lamkin's statement was one of fact or one

12

of opinion or hyperbole. *See Hay*, 450 So. 2d at 295. The broader context of Lamkin's statement within Lamkin's interview—which was subsequently republished in the Bloomberg article—is that Lamkin and Rothschild (and the entities connected with Rothschild) have long been engaged in PAE legal struggles and that Rothschild's entities have failed to pay attorneys' fees in PAE lawsuits. Lamkin and Rothschild have a history of litigation, and Lamkin's statement that "we never get the money because the shells go bankrupt" stems from Lamkin's experience in litigating cases against Rothschild, resulting in frustration from the low settlement offers and the inability to collect fees. *See, e.g.*, [ECF No. 88 ¶¶ 12–13]. These facts are included in Lamkin's quotes to the Bloomberg reporter. It is clear from the context of the Bloomberg article as a whole, as well as from the context of Lamkin and Rothschild's litigation history and related experience with each other, that the statement is an opinion and hyperbole.

Rothschild's defamation claim therefore fails as a matter of law because Lamkin's statement to the Bloomberg reporter is not defamatory. Plaintiffs' motion for summary judgment likewise fails. Lamkin, on the other hand, is entitled to summary judgment as a matter of law. The Court therefore need not address the remaining elements of publication, falsity, and actual malice.

### B. Because Rothschild's Defamation Claim Fails, Plaintiffs' Claim for Tortious Interference with Business Relations Fails

In addition to the defamation claim, Plaintiffs have a remaining claim for tortious interference with business relations based on Lamkin's statement in the Bloomberg article. In Florida, "the single publication doctrine bars actions that arise from the same publication upon which a failed defamation claim is based." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020) (internal quotation marks omitted); *see also Ludwin v. Proman*, No. 20-CV-81755-RS, 2023 WL 2401774, at *6 (S.D. Fla. Jan. 24, 2023) ("Defendant is entitled to summary judgment on Plaintiffs' Count II (Tortious Interference with Business Relationship) because of

13

Florida's single publication rule."). The "rule precludes the recasting of defamation claims as additional, distinct causes of action in tort if all of the claims arise from [the] same defamatory publication." *Mishiyev v. Davis*, 402 So. 3d 443, 453 (Fla. 2d DCA 2025). As such, "[i]f the defamation count fails, the other counts based on the same publication must fail as well." *Bongino*, 477 F. Supp. 3d at 1320. Thus, because Rothschild's defamation claim fails, Plaintiffs' remaining claim for tortious interference with business relations necessarily fails, and Lamkin is entitled to summary judgment.

### C. Plaintiffs Are Entitled to Summary Judgment on Lamkin's Abuse of Process Counterclaim

Under Florida law,

> [a] cause of action for abuse of process contains three elements: (1) that the defendant[10] made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage."

*FR Tax Grp., LLC v. Kassover*, 723 F. App'x 977, 977–78 (11th Cir. 2018) (citing *S & I Investments v. Payless Flea Mkt., Inc.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010)). "Additionally, where the process was used to accomplish the result for which it was intended, regardless of an incidental or concurrent motive of spite or ulterior purpose, there is no abuse of process." *Id.* (cleaned up). "The plaintiff must prove improper use of process after it issues." *S & I Invs.*, 36 So. 3d at 917. "The usual abuse of process claim involves some form of extortion – using a criminal prosecution to force payment of a civil debt." *Bembry v. City of Tallahassee*, 4:05-CV-286-SPM, 2006 WL 1080676, at *4 (N.D. Fla. Apr. 24, 2006) (citation omitted).

---

[10]   The "defendants" under the abuse of process standard are Plaintiffs, who are counter-defendants in Lamkin's counterclaim.

As a threshold matter, Plaintiffs are entitled to summary judgment on Lamkin's abuse of process claim as a matter of law because they are immune from suit on the claim under Florida's litigation privilege. Under Florida law, the litigation privilege affords absolute immunity for acts occurring during judicial proceedings if the act is related to the proceedings. *See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007); *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1274–75 (11th Cir. 2004); *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) ("Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves defamatory statement or other tortious behavior . . . so long as the act has some relation to the legal proceeding.").[11]

The litigation privilege applies to claims for abuse of process where the basis of the claim is an act that is related to a judicial proceeding. *See, e.g.*, *LatAm Invs., LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 242–43 (Fla. 3d DCA 2011) (applying the litigation privilege to abuse of process claims); *EMI Sun Village, Inc. v. Catledge*, 779 F. App'x 627, 635 n.8 (11th Cir. 2019). Whether or not the litigation privilege applies is a question of law appropriate for determination on summary judgment. *See AGM, LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 926 (Fla. 2d DCA 2017).

Lamkin's abuse of process claim is based entirely on the Plaintiff's defamation claim filed in this matter, which is "an act permitted by law." *Fridovich v. Fridovichy*, 598 So. 2d 65, 66 (Fla. 1993) (citations omitted) (holding that the litigation privilege grants absolute immunity "immediately upon the doing of any act required or permitted by law in the due course of the

---

[11]   The Eleventh Circuit has long ruled that federal courts may apply Florida's litigation privilege to state-law claims adjudicated in federal court. *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1349 (11th Cir. 2017).

judicial proceedings"). As such, the abuse of process claim is barred under Florida's litigation privilege.

Even if the litigation privilege does not bar Lamkin's abuse of process claim, summary judgment is still warranted because, as Plaintiffs suggest, Lamkin has failed to present any evidence to establish that Plaintiffs have used this litigation other than to "accomplish the result for which it was created." [ECF No. 89 at 3]. "For a[n abuse of process] cause of action to exist there must be a use of process for an immediate purpose other than that for which it was designed." *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984). The usual case of abuse of process involves some form of extortion, "but even extortion-sounding threats, if made prior to the institution of process and litigation, fall outside the parameters of the tort of abuse of process." *S&I Invs.*, 36 So. 3d at 917. "There is no abuse of process . . . when the process is used to accomplish the result for which it was created, *regardless of an incidental or concurrent motive of spite or ulterior purpose*." *Id.* (emphasis added) (citing *Bothmann*, 458 So. 2d at 1169).

"[T]he mere filing of a complaint and having process served is not enough to show abuse of process." *S & I Invs.*, 36 So. 3d at 917. More is required—which does not exist in this record. The plaintiff must prove improper use of process after it issues. *Della-Donna v. Nova Univ., Inc.*, 512 So. 2d 1051, 1056 (Fla. 4th DCA 1987). Here, Lamkin has not shown any record evidence of improper use of this litigation by Plaintiffs after filing this lawsuit. She merely argues that "Plaintiffs filed this lawsuit to harass [her]." [ECF No. 102 at 15–16]. "The maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process." *Cazares v. Church of Scientology of Cal., Inc.*, 444 So. 2d 442, 444 (Fla. 5th DCA 1983); *see also Peckins v. Kaye*, 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983) (holding that abuse of process

consists not in issuance of process, but rather in perversion of process after its issuance; writ or process must be used in a manner or for purpose not intended by law).

Accordingly, Plaintiffs are entitled to summary judgment on Lamkin's abuse of process counterclaim.

### D. Lamkin Is Entitled to Attorneys' Fees Under the Florida Anti-SLAPP Statute

Florida's Anti-SLAPP statute provides:

> A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

Fla. Stat. § 768.295(3).

"The Anti-SLAPP statute also provides that '[t]he court *shall* award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section.'" *Button v. McCawley*, No. 0:24-CV-60911, 2025 WL 50431, at *11 (S.D. Fla. Jan. 8, 2025) (quoting § 768.295(4)) (emphasis added). To determine whether attorney's fees are warranted under the Anti-SLAPP statute, the Court must decide "(1) whether Plaintiffs' lawsuit was without merit, and (2) whether Plaintiffs primarily filed their lawsuit because Defendant exercised the constitutional right of free speech in connection with a public issue." *Button v. McCawley*, No. 0:24-CV-60911, 2025 WL 3682758, at *1 (S.D. Fla. Dec. 2, 2025), *report and recommendation adopted*, No. 0:24-CV-60911, 2026 WL 292150 (S.D. Fla. Feb. 4, 2026) (citing *Bongino*, 477 F. Supp. 3d at 1322). "The SLAPP defendant has the initial burden of presenting a prima facie case that the Anti-SLAPP statute applies. The burden then shifts to the plaintiff to demonstrate that the claims are not primarily based on First Amendment rights . . . and not without

17

merit." *McSwain v. World Fuel Servs. Corp.*, No. 20-CV-21203, 2022 WL 17724421, at \*5 (S.D. Fla. Dec. 14, 2022) (citation omitted).

Lamkin meets her burden to demonstrate that the Anti-SLAPP statute applies here and that she is entitled to an award of attorneys' fees and costs. As explained in detail above, Rothschild's defamation claim fails and is therefore "without merit." *See Bongino*, 477 F. Supp. 3d at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute § 768.295(3)."); *see also Parekh*, 820 F. App'x at 836 (affirming award of fees under the Anti-SLAPP statute because the plaintiff's defamation lawsuit was "without merit").

Second, this lawsuit arises out of "[f]ree speech in connection with public issues," which is defined in the statute as "any written or oral statement that is protected under applicable law and . . . is made in or in connection with a . . . magazine article, musical work, news report, or other similar work." § 768.295(2)(a). Here, the only statement at issue was spoken to a reporter from Bloomberg, so the statement was an "oral statement" that was made in connection with a "news report." Reading the statement within the context of the entire Bloomberg article, Lamkin made her statement within a larger discussion of engaging in litigation against Rothschild, a serial patent litigator. Courts within this district have found that statements relating to litigation are protectable under applicable law. *See, e.g.*, *Button*, 2025 WL 3682758, at \*3; *Vibe Ener v. Duckenfield*, No. 20-CV-22886-UU, 2020 WL 6373419, at \*5 (S.D. Fla. Sept. 29, 2020). Thus, the statement that Rothschild frivolously claimed was defamatory arose from Lamkin's "[f]ree speech in connection with a public issue."

Rothschild first counters that the motion is not properly before the Court on summary judgment because it should have been brought at the pleading stage. [ECF No. 100 at 7–8]. Not so. Florida's Anti-SLAPP statute "fuses with Rules 8, 12, and 56 by entitling the prevailing party

18

to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is 'without merit' and thus prohibited." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (quoting *Bongino*, 477 F. Supp. 3d at 1323). Lamkin's Anti-SLAPP motion was, therefore, properly before the Court.

Rothschild further argues that the motion should be denied because the merit of Rothschild's claim bars any fee-shifting. This is insufficient to meet Rothschild's burden of demonstrating that the claim was not based on First Amendment rights and was not without merit.

In sum, Rothschild's defamation claim was without merit and arose out of Lamkin's free speech in connection with public issues. Moreover, Rothschild did not shoulder his burden to show that the defamation claim was not primarily based on First Amendment rights and was not without merit. Thus, Lamkin is entitled to an award of attorneys' fees and costs against Rothschild under Florida's Anti-SLAPP statute.

## IV.   RECOMMENDATION

The undersigned hereby **RECOMMENDS** Lamkin's Motion for Summary Judgment be **GRANTED**, and Plaintiffs' Motion for Summary Adjudication of Defamation and No Abuse of Process be **GRANTED IN PART AND DENIED IN PART**.

## V.   OBJECTIONS

Within **five (5) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1). Any response shall be filed within **five (5) days** of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual

19

and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see*

*Thomas v. Arn*, 474 U.S. 140 (1985).

      **DONE AND ORDERED** at Fort Lauderdale, Florida, this 24th day of July 2026.

 

**DETRA SHAW-WILDER**
**UNITED STATES MAGISTRATE JUDGE**

cc:     The Honorable Darrin P. Gayles

       All Counsel of Record