**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:24-cv-24669-DPG**

**Leigh M. Rothschild**, an individual
citizen of Florida, and **Analytical**
**Technologies, LLC**, a Wyoming
company,

             Plaintiffs,

     v.

**Starbucks Corporation**, a
Washington corporation, and
**Rachael Lamkin**, an individual
citizen of California,

             Defendants.
_____/

**PLAINTIFFS' OBJECTIONS TO OMNIBUS REPORT AND**

**RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT**

1

**TABLE OF CONTENTS**

**Standard of Review**………………………………………………………………………2

**I.      The R&R Erroneously Concludes That Lamkin's Statement Is *Not* Susceptible to Two Reasonable Interpretations**………………………………………..3

**II.     Lamkin's Motion Should Have Been Denied as Procedurally Defective**…………..5

**III.    The R&R Resolves Disputed Facts and Inferences Against Plaintiffs**……………..6

**IV.     The Statement At Issue Contains Verifiable Factual Assertions and Is Not Protected Pure Opinion or Rhetorical Hyperbole**…………………………………………………8

**V.      The R&R Misidentifies the Defamatory "Sting" and Overlooks Defamation *Per Se***…………………………………………………………………………………..10

**VI.     The R&R Improperly Treats Prior Criticism as Establishing That LMR Could Suffer No Further Reputational Harm**…………………………………………………..11

**VII.    The Derivative Dismissal of Tortious Interference Cannot Stand If Defamation Survives**………………………………………………………………………………..13

**VIII.   The R&R's Result Should Not Be Adopted on Alternative Grounds Without De Novo Review of the Disputed Record**………………………………………………13

**IX.     The R&R Erroneously Recommends Anti-SLAPP Fee Entitlement**………………..14

      **A.      Lamkin Did Not Establish Speech "Protected Under Applicable Law"**…….14

      **B.      The R&R Conflates "Without Merit" With an Unsuccessful Claim**………..15

      **C.      The R&R Does Not Independently Establish That Plaintiffs Sued "Primarily Because" Lamkin Exercised Protected Speech**………………………………16

      **D.      The R&R Applies a Burden-Shifting Standard Inconsistent with Rule 56**…17

**Conclusion**………………………………………………………………………………....17

**Request for Hearing**………………………………………………………………………18

**TABLE OF AUTHORITIES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)………………………………………..2

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)………………………….12

*Burlington Ins. Co. v. Superior Nationwide Logistics, Ltd.*, 783 F. Supp. 2d 958, 963 (S.D. Tex. 2010), aff'd, 427 F. Appx. 299 (5th Cir. 2011)…………………………………………………..4

*Cap. Meats, Inc. v. Meat Shoppe, LLC*, No. 15-212, 2015 WL 4249166, at *10 (D. Md. July 9, 2015)…………………………………………………………………………………………………4

*Cousins v. Post-Newsweek Stations Florida, Inc.*, 275 So. 3d 674, 680 n.6 (Fla. 3d DCA 2019)..4

*Fabian v. Seto*, No. 15856, 2015 WL 12683812, at *5 (C.D. Cal. Oct. 6, 2015)…………………4

*Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1263-67 (S.D. Fla. 2004)…….11

*Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. 2d DCA 2019)…………………………..15

*Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984)………………..8

*Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 117 (D.D.C. 2013)………….4

*Kieffer v. Atheists of Florida, Inc.*, 269 So. 3d 656, 660-61 (Fla. 2d DCA 2019)………………2,3

*Maritimo (MFG) Int'l Pty. Ltd. v. Flors*, No. 206129534S, 2021 WL 1054470, at *2 (Conn. Super. Ct. Feb. 16, 2021)……………………………………………………………………….4

*McQueen v. Baskin*, 377 So. 3d 170, 181-84 (Fla. 2d DCA 2023)……………………………….8,15

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-21 (1990)………………………………………8

*Mindy Lee v. Animal Aid, Inc.* 397 So. 3d 632, 635-37 (Fla. 4th DCA 2024)…………………...16

*Mishiyev v. Davis*, 402 So. 3d 443, 448-49 (Fla. 2d DCA 2025)………………………………..15

*Pippen v. NBCUniversal Media LLC*, 734 F.3d 610, 613-14 (7th Cir. 2013)…………………...11

*Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)………………………………………………...10

*Rogers v. Mroz*, 252 Ariz. 335, 502 P.3d 986, 990 (2022)……………………………………….4

*Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178-79 (Fla. 1st DCA 2003)…………………….4

*Teare v. Local Union No. 295*, 98 So. 2d 79, 82 (Fla. 1957)……………………………………10

*Trump v. Dow Jones & Co.*, No. 25-23232, 2026 WL 1453673, at *6 n.12
(S.D. Fla. May 22, 2026)……………………………………………………………….8

*Turner v. Wells,* 879 F.3d 1254, 1262-63 and 1269-70 (11th Cir. 2018)…………………………9

*Walsh v. Miami Herald Publishing Co.*, 80 So. 2d 669, 671 (Fla. 1955)………………………..10

*Wofse v. Horn*, 523 F. Supp. 3d 122, 134 (D. Mass. 2021)……………………………………….4

*Wray v. Greenburg*, 646 F. Supp. 3d 1084, 1112 (D. Ariz. 2022)………………………………..4

*Young v. WCTV News Channel* No. 24-161, at 1-2 (N.D. Fla. July 14, 2025)……………...…11

**STATUTES**

28 U.S.C. §636(b)(1)(C)………………………………………………………………..2

Federal Rule of Civil Procedure 72(b)(2)……………………………………………………2

Federal Rule of Civil Procedure 72(b)(3)……………………………………………………2

These objections to the Report and Recommendation ("R&R") turn principally on threshold errors applying Rule 56.[1]  Defendant Lamkin's statement at issue—*i.e.*, "With Leigh Rothschild, we never get the money because the shells go bankrupt"—is reasonably susceptible to the interpretation relied on by Plaintiff Rothschild ("LMR") for his defamation claim.  Lamkin characterizes her statement as a "loose" criticism of patent-holding entities that allegedly lacked assets.  Plaintiff LMR reads it, and a jury might reasonably as well, as a factual accusation that LMR deliberately uses nebulous "shell" entities which "go bankrupt" so that adverse parties "never get the money."  The reasonable meaning of the statement is precisely the issue requiring a trial so that a jury may perform its unique role to determine whether LMR has proven his defamation claim.  The R&R's overwhelming reliance on inadmissible evidence of the supposed "context" of the statement at issue—including the remainder of the Bloomberg Law article that no evidence shows anyone ever read—ignores our current predominant culture of "soundbites" veiled as "facts," which is exactly the harm defamation causes and has accused here.  Defendant Lamkin is a sophisticated attorney who knew exactly what she was saying—as FACT—and she should be held to account for it by a reasonable jury.

The R&R recognizes that where a publication is susceptible to two reasonable interpretations, one defamatory and one nondefamatory, the issue is for the jury.  *See* ECF No. 194 at 9.  But the R&R then declares, without analyzing LMR's competing interpretation in "the light most favorable to LMR," that Lamkin's statement is not ambiguous and no reasonable jury

---

[1] Plaintiffs respectfully request a hearing with this Court, in person, to present argument on these objections, because of the importance of these issues receiving correct rulings before having to go through the tedious appeal process that would only result in more prejudice to Plaintiffs not receiving their "day in court" on clearly well-founded claims.  *See* _____.

1

could find it defamatory. That conclusion selects the inference most favorable to Lamkin and drives the remaining adverse recommendations. That analysis is erroneous.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2), Plaintiffs object to the R&R's recommendations that: (1) Lamkin's statement is not susceptible to a reasonable defamatory interpretation; (2) the statement is non-actionable opinion or rhetorical hyperbole; (3) evidence about LMR's preexisting "reputation" (which is inadmissible) precludes reputational injury; (4) the derivative tortious-interference claim must be dismissed; and (5) Lamkin is entitled to fee-shifting under Florida's Anti-SLAPP statute.

Plaintiffs request that the Court adopt the recommendation granting Plaintiffs summary judgment on Lamkin's abuse-of-process counterclaim, reject the remaining adverse recommendations, deny Lamkin's motion for summary judgment, and reject any entitlement to Anti-SLAPP fees.

**Standard of Review**

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), this Court must review de novo each portion of the R&R to which Plaintiffs object. De novo review requires an ***independent determination*** based on the summary judgment record. Because the parties filed cross-motions for summary judgment, each motion must be evaluated separately. In reviewing Lamkin's motion, the evidence and all reasonable inferences must be viewed in Plaintiffs' favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may not weigh competing evidence, resolve credibility disputes, or select one reasonable interpretation over another. Plaintiffs need not establish that they are entitled to affirmative

2

summary judgment to defeat Lamkin's motion; they need only show that *a reasonable jury could find defamation in LMR's favor*.

### I. The R&R Erroneously Concludes That Lamkin's Statement Is *Not* Susceptible to Two Reasonable Interpretations

The R&R correctly recognizes that when a published statement is susceptible to two reasonable interpretations—one defamatory and one nondefamatory—the issue is one of fact for the jury. *See* ECF No. 194 at 9. But the R&R then conclusively states, without identifying the competing interpretations or addressing LMR's interpretation, that Lamkin's statement "is not ambiguous or susceptible to two reasonable interpretations." *Id.*

At least two reasonable interpretations are apparent from the record. Under Lamkin's proposed interpretation, she was using "loose shorthand" to characterize two specific patent-holding entities that allegedly lacked sufficient assets to satisfy fee-shifting orders. Lamkin herself argued that "bankrupt" could mean an "inability to pay bills," being "indebted beyond the means of payment," lacking sufficient money to repay obligations, or being insolvent. *See* ECF No. 102 at 12; ECF No. 89-2 at 8. Those formulations confirm that the word BANKRUPT was being used to convey an objectively verifiable financial condition, not merely an undefined epithet. Under Plaintiffs' reasonable interpretation, Lamkin literally accused LMR of deliberately conducting patent litigation through sham or judgment-proof "shells" that "go bankrupt" so that defendants "never get the money." The surrounding accusation that companies must spend thousands of attorney hours to "catch him at his game" reinforces the false implication of intentional misconduct rather than innocent financial distress.

Florida law requires submission to the jury where language reasonably bears both an innocent and defamatory meaning. *See Kieffer v. Atheists of Florida, Inc.*, 269 So. 3d 656, 660-

3

61 (Fla. 2d DCA 2019); *Cousins v. Post-Newsweek Stations Florida, Inc.*, 275 So. 3d 674, 680 n.6 (Fla. 3d DCA 2019); *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178-79 (Fla. 1st DCA 2003). In *Kieffer*, for example, the court reversed summary judgment because the term "misappropriation" could reasonably imply either authorized handling of funds, or dishonest conduct. In *Spears*, even the facially neutral statement "I want my money" could imply theft when read in context. The same principle controls here. *See Burlington Ins. Co. v. Superior Nationwide Logistics, Ltd.*, 783 F. Supp. 2d 958, 963 (S.D. Tex. 2010), aff'd, 427 F. Appx. 299 (5th Cir. 2011) ("Statements that a company is 'out of business' or bankrupt are defamatory."); *see also Wray v. Greenburg*, 646 F. Supp. 3d 1084, 1112 (D. Ariz. 2022) ("[I]t is for the jury to determine the meaning and construction of the alleged defamatory language.") (citing Restatement (Second) of Torts § 558 and *Rogers v. Mroz*, 252 Ariz. 335, 502 P.3d 986, 990 (2022)); *Wofse v. Horn*, 523 F. Supp. 3d 122, 134 (D. Mass. 2021) (denying summary judgment concerning alleged defamatory claims about plaintiff "conceal[ing] a past bankruptcy"); *Maritimo (MFG) Int'l Pty. Ltd. v. Flors*, No. 206129534S, 2021 WL 1054470, at *2 (Conn. Super. Ct. Feb. 16, 2021) (denying dismissal concerning statements that "gave the false impression that the Petitioners were insolvent and in bankruptcy"); *Fabian v. Seto*, No. 15856, 2015 WL 12683812, at *5 (C.D. Cal. Oct. 6, 2015) (statement about plaintiff that "it is bankrupt" could be defamatory as it "implies an assertion of objective fact" rather than non-actionable opinion, with "natural tendency" to injure reputation); *Cap. Meats, Inc. v. Meat Shoppe, LLC*, No. 15-212, 2015 WL 4249166, at *10 (D. Md. July 9, 2015) (statement that plaintiff "was going bankrupt" sufficient for defamation claim); *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 117 (D.D.C. 2013) (allegation plausible where statement false that claimant "was on the verge of bankruptcy").

4

The R&R does not explain why LMR's interpretation of the statement is linguistically or contextually unreasonable, particularly when viewed in "the light most favorable" to LMR, and ultimately by a reasonable jury from a cross-section of the community.  Instead, the R&R selects only one of multiple reasonable interpretations, and presents it as unquestionable as a matter of law (based primarily on inadmissible hearsay evidence).  Rule 56 does not permit that choice in the movant's favor.

Plaintiffs therefore respectfully request that this Court should reject the recommendation of summary adjudication on defamation, and rule instead that competing reasonable interpretations of the statement at issue require resolution by the jury at trial.

## II. Lamkin's Motion Should Have Been Denied as Procedurally Defective

Earlier in this litigation, Lamkin filed its first motion requesting a partial judgment (*see* ECF No. 47) on two of Plaintiffs' four claims, which this Court ultimately granted with a partial judgment dismissing those two claims.  *See* ECF No. 135.  Lamkin thereafter filed a second motion asking for summary judgment on Plaintiffs' remaining claims and requesting, for the first time, a determination that Plaintiffs violated Florida's Anti-SLAPP statute and that Lamkin was entitled to attorneys' fees.  *See* ECF No. 91.  Plaintiffs objected that the second motion was improper under Local Rule 56.1(e), which prohibits multiple motions for partial summary judgment absent prior permission of the Court.  *See* ECF No. 100 at 1-2.  The R&R did not address that preserved objection.[2]

---

[2] Plaintiffs recognize that ECF No. 47 was styled as a motion for partial judgment on the pleadings under Rule 12(c), and Local Rule 56.1(e) contains an exception for a Rule 12(b) or Rule 12(c) motion that the Court elects to treat as a summary-judgment motion under Rule 12(d). The record should therefore be examined to determine whether ECF No. 47 remained solely a Rule 12(c) motion within that exception or whether the successive dispositive procedure otherwise required clarification or prior leave under Local Rule 56.1(e).

The two motions collectively sought successive dispositive rulings on all four of Plaintiffs' claims, and the later motion added an Anti-SLAPP fee-entitlement request carrying substantial consequences.  Lamkin did not seek leave or clarification before filing ECF No. 91, and the R&R did not determine whether leave was required.  Plaintiffs were consequently required to respond to successive dispositive motions addressing separate portions of the same action.  Plaintiffs therefore preserve their procedural objection and request that the Court determine de novo whether ECF No. 91 required prior leave under Local Rule 56.1(e).  If the Court concludes that the successive dispositive procedure fell within the rule's prohibition, the Court should deny or decline to consider ECF No. 91.

### III. The R&R Resolves Disputed Facts and Inferences Against Plaintiffs

In reaching its threshold conclusions, the R&R repeatedly treats disputed characterizations and defense-favorable inferences as established facts.  Those determinations improperly resolve disputed factual issues, including credibility and admissibility of obvious hearsay, and as such these determinations cannot support summary judgment for Lamkin.  The R&R also adopts a contested and pejorative description of "PAEs" as entities that exist to "extract settlements," although Plaintiffs submitted evidence (and would at trial) concerning the legitimate patent-owning and licensing activities of LMR-related entities.  The R&R also treats as undisputed that RDC "did not pay" a fee-shifting award and that the entity RCDI "never paid" because it lacked the ability to do so.  *See* ECF No. 194 at 2-3.  But Plaintiffs presented evidence concerning the later procedural resolution and settlement of those matters, and Lamkin's statement went materially further than merely saying an award was not paid.  She stated categorically that "we never get the money because the shells go bankrupt."

At minimum, the record presents disputed questions concerning: (1) whether any enforceable payment obligation remained after settlement; (2) whether Lamkin or the clients encompassed by "we" possessed an unsatisfied right to payment; (3) whether the entities RDC and RCDI were properly characterized as "shells"; (4) whether either entity filed bankruptcy; and (5) whether bankruptcy caused any nonpayment. Those factual distinctions can only be explored at trial with admissible evidence, including relating to fee orders, settlements, Lamkin's admissions, and corporate evidence. *See* ECF No. 100 at 5-6 (opposing summary judgment including with ***Lamkin's admissions*** that (a) "no LMR-related entity ever owed her or her clients any money . . . [not] mooted by settlements before any judgment was entered;" (b) "the only two LMR-related entities she considers 'shells' were engaged in operations including patent litigation, had their own counsel, owned patents, had funded bank accounts, and otherwise were not 'shells' in any reasonable sense of the term;" and (c) "the two entities she was referring to, companies called RDC and RCDI, have never filed for bankruptcy"). A reasonable jury could believe these admissions, reject Lamkin's credibility, ignore any "explaining away" by Lamkin on the stand at trial, and otherwise rely on these admissions to find defamation. Summary judgment is not even possible based on Lamkin's damaging testimony alone.

The R&R itself acknowledges Plaintiffs' record position that: (1) no LMR-related entity owed Lamkin or her clients money "in the form of a judgment"; (2) the two entities Lamkin called "shells" engaged in operations; and (3) those entities never filed for bankruptcy. *See* ECF No. 194 at 4, 8. Yet the R&R does not analyze those facts when determining whether a reasonable reader could understand Lamkin's statement as a factual accusation of deliberate nonpayment through sham entities. Instead, it resolves the case based on supposed reputation and opinion, most of which is hearsay and otherwise inadmissible evidence. For example, how

7

could this Court accept any opinion evidence from Defendant Lamkin on summary judgment, when Lamkin has no expert witness and there has been no opportunity for cross examination or credibility determinations?  The record facts, viewed in Plaintiffs' favor, independently establish a genuine dispute concerning the statement's factual predicates and defamatory implications.

The R&R correctly quotes this Court's rule that a publication susceptible to two reasonable interpretations—one defamatory and one nondefamatory—presents a question of fact. *See* ECF No. 194 at 9 (quoting *Trump v. Dow Jones & Co.*, No. 25-23232, 2026 WL 1453673, at *6 n.12 (S.D. Fla. May 22, 2026)).  But the R&R does not apply that rule's second "branch." Once Plaintiffs identify a reasonable defamatory interpretation, the Court may not select the competing defense interpretation when reviewing Lamkin's motion.

### IV. The Statement At Issue Contains Verifiable Factual Assertions and Is Not Protected Pure Opinion or Rhetorical Hyperbole

The challenged statement contains specific factual assertions capable of objective verification.  Corporate and court records can determine whether the identified entities were operational companies or mere "shells," whether they filed bankruptcy, whether money was owed, and whether bankruptcy caused any nonpayment.  The categorical words "never," "because," "shells," and "go bankrupt" communicate past and recurring factual events, not merely subjective criticism.

The Supreme Court has rejected a wholesale constitutional privilege for statements proffered as "opinion."  An opinion that implies provably false facts remains actionable.  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-21 (1990).  Florida likewise distinguishes pure opinion based on accurately disclosed facts from mixed opinion resting on disputed, incomplete, or undisclosed facts.  *See McQueen v. Baskin*, 377 So. 3d 170, 181-84 (Fla. 2d DCA 2023); *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984).  The *Turner v. Wells*

decision is a materially different situation.  It involved a lengthy investigative report that disclosed the underlying evidence, communications, and methodology and used evaluative terms such as "poor judgment" and "inappropriate."  *See id.*, 879 F.3d 1254, 1262-63 and 1269-70 (11th Cir. 2018).  Here, the Bloomberg Law reader was not given the relevant corporate records, the actual disposition of the fee orders, the fact that the identified entities had not filed for bankruptcy protection, or any evidence of their operations.  The reader was instead given Lamkin's categorical factual statement and conclusion—*i.e.*, her intentionally dramatic, malicious and false "soundbite."

The rhetorical-hyperbole cases cited by the R&R involved language the context of which ***negated*** a literal factual meaning.  *Fortson*, for example, involved sports commentary describing a basketball player as a "thug," a "vacant lot," and someone engaged in "attempted murder"— obvious figurative language concerning aggressive play in a sports-opinion column.  *See id.*, 434 F. Supp. 2d 1369, 1379-84 (S.D. Fla. 2006).  *Hay* involved a letter published in a newspaper's expressly-labeled "opinion forum," and the decision turned on whether the surrounding facts were disclosed.  *See id.*, 450 So. 2d at 295.  Lamkin's statement, however, was presented as an attorney's description of her actual litigation experience and used literal, verifiable financial and corporate terminology.

The record, viewed in Plaintiffs' favor, creates separate disputes concerning whether the entities were properly characterized as "shells," whether either entity ever filed bankruptcy, whether an enforceable payment obligation remained, and whether bankruptcy caused any nonpayment.  The full Bloomberg Law context actually strengthens, rather than defeats, Plaintiffs' interpretation.  Lamkin tied her supposed "obnoxiously low" settlements and the

expense required to "catch him at his game" to the assertion that "the shells go bankrupt." A reasonable jury could understand the combined passage as alleging a deliberate litigation and corporate strategy. Plaintiffs therefore object to the R&R's "opinion-and-hyperbole" ruling and request that the Court find that the statement contains or implies verifiable factual assertions that a reasonable jury could find false and defamatory.

### V. The R&R Misidentifies the Defamatory "Sting" and Overlooks Defamation *Per Se*

Under Florida law, a publication is actionable *per se* when, in its natural meaning and context, it tends to subject a person to distrust or disgrace or tends to injure the person in his trade, business, or profession. *See Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953); *Walsh v. Miami Herald Publishing Co.*, 80 So. 2d 669, 671 (Fla. 1955); *Teare v. Local Union No. 295*, 98 So. 2d 79, 82 (Fla. 1957). Lamkin's statement, under Plaintiffs' reasonable interpretation, does not merely report financial distress. It charges that LMR conducts patent litigation through sham or judgment-proof entities designed to prevent counterparties from collecting money. That accusation directly imputes dishonesty and financial irresponsibility in the conduct of LMR's business and therefore constitutes defamation *per se*.

The R&R addresses whether a bare statement that a person or company filed bankruptcy is inherently shameful. That is not the statement Lamkin made. Lamkin linked LMR personally to "shells," recurring nonpayment, and bankruptcy as efforts required to "catch him at his game." The defamatory sting is not merely financial distress; it is the accusation that LMR uses sham or judgment-proof entities as part of a deliberate strategy to prevent adverse parties from collecting money. The *Pippen* case is distinguishable on its own reasoning. There, the allegedly false reports merely stated that Scottie Pippen personally had filed bankruptcy, and the Seventh Circuit found no connection between that report and his competence as a basketball analyst or endorser.

10

*See Pippen v. NBCUniversal Media LLC*, 734 F.3d 610, 613-14 (7th Cir. 2013).  The court expressly distinguished accusations that a company (rather than an individual) willfully defaulted or shirked contractual obligations because such accusations could cause readers to think twice before doing business with it.  *See id*.  This distinction is particularly significant here because the accusation directly concerns LMR's **personal** business practices and the financial reliability of his related entities.  A statement that those entities are insolvent "shells" used to prevent counterparties from collecting money would naturally cause investors, inventors, licensees, and other business participants to question whether they could safely transact with LMR personally, or his companies.

Lamkin's statement falls on that side of the distinction—that is, it directly portrays LMR's corporate and litigation practices as a mechanism for avoiding payment.  Florida law recognizes that accusations of dishonest financial practices may injure a plaintiff in his trade even where the underlying financial mechanisms are lawful.  *See Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1263-67 (S.D. Fla. 2004).  The question is the publication's implication concerning integrity and business fitness, not whether bankruptcy relief itself serves a legitimate statutory purpose.  Plaintiffs therefore object to the R&R's reliance on the "general social utility" of bankruptcy, and request that the statement be evaluated according to its full alleged sting (*i.e.*, the supposed deliberate use of "shell" entities and insolvency to defeat collection).

### VI. The R&R Improperly Treats Prior Criticism as Establishing That LMR Could Suffer No Further Reputational Harm

The R&R concludes that Lamkin's accusation was nondefamatory because supposedly it is "consistent with Rothschild's reputation," and because a few prior publications had described him as a "patent troll" associated with "shell" entities, which are countered by just as many

11

opposite publications and are inadmissible opinions anyway. *See* ECF No. 194 at 10-11.  The

R&R's reasoning effectively applies the "libel-proof plaintiff" doctrine—that is, a plaintiff whose

reputation is supposedly already tarnished cannot suffer additional actionable, defamatory harm.

The Florida Supreme Court has not adopted the libel-proof plaintiff doctrine.  In *Young v. WCTV*

*News Channel*, the district court rejected the portion of a magistrate judge's recommendation

relying on that doctrine because the recommendation did not address the absence of controlling

Florida Supreme Court authority or undertake the analysis necessary to determine whether

Florida would recognize the doctrine.  *See id.*, No. 24-161, at 1-2 (N.D. Fla. July 14, 2025).  The

court dismissed the case on the separate ground that the plaintiff failed to satisfy Florida's pre-

suit notice requirement.  The *Davis v. McKenzie* is also materially distinguishable and should not

be extended.  It involved a magistrate judge's recommendation addressing a plaintiff with a

documented history of violence and published abuse allegations.  The R&R here equates biased,

inadmissible criticism of aggressive patent enforcement with a specific accusation that LMR

deliberately uses shell companies and bankruptcy to evade financial obligations.  Those are not

the same reputational subject.  Even where considered, prior reputation evidence ordinarily

concerns causation, mitigation, and damages; it should not provide categorical immunity for a

distinct false accusation.

 The existence of an article, internet post, pleading, or judicial filing may establish that a

statement was published or an allegation was made.  It does not necessarily establish that the

allegation was true or that it accurately defined LMR's reputation in the relevant professional

community.  Judicial notice of public filings does not permit a court to accept disputed factual

assertions within those filings for their truth.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271,

1278 (11th Cir. 1999).  The R&R does not identify which materials were admitted to prove

12

reputation, which were offered merely to show publication, or how scattered internet criticism establishes an undisputed community reputation concerning the specific charge of strategic bankruptcy and nonpayment.  Nor does it address Plaintiffs' contrary reputation evidence, bias and credibility issues, or the dynamics of trial testimony.  At summary judgment, those conflicts must be resolved in Plaintiffs' favor, not treated as conclusive proof that no reputational injury was possible.  At a minimum, competing evidence prevents the defense publications from establishing an undisputed community reputation as a matter of law.  Plaintiffs therefore object to the R&R's reputation-based ruling and request that the Court reject any libel-proof or "no further harm" theory.  At minimum, the conflicting evidence concerning LMR's reputation and the sting of Lamkin's accusation presents a factual question for consideration by a reasonable jury at trial.

## VII. The Derivative Dismissal of Tortious Interference
## Cannot Stand If Defamation Survives

The R&R dismisses tortious interference solely because it first concludes that defamation fails and then applies the single-publication doctrine.  *See* ECF No. 194 at 13-14.  If the Court sustains Plaintiffs' objections concerning defamatory meaning, ambiguity, or protected opinion, the sole stated predicate for dismissing tortious interference disappears.  Plaintiffs therefore object to that recommendation and request that the tortious interference claim remain for trial, along with the defamation claim.

## VIII. The R&R's Result Should Not Be Adopted on Alternative Grounds
## Without De Novo Review of the Disputed Record

After determining that the statement was nondefamatory, the R&R expressly declined to decide falsity and actual malice.  *See* ECF No. 194 at 13.  To the extent Lamkin seeks adoption on an alternative ground, Plaintiffs preserve and renew their opposition.

13

The record distinguishes among: (1) formal bankruptcy; (2) temporary lack of assets; (3) an unpaid fee order; (4) an order later resolved through settlement; (5) an entity's obligation; (6) LMR's personal obligation; and (7) nonpayment actually caused by bankruptcy. Lamkin's categorical statement collapses those materially different propositions. Plaintiffs also dispute that LMR was a limited-purpose public figure and, alternatively, presented evidence that Lamkin knew the entities had not filed bankruptcy and knew of their actual operations. Therefore, Plaintiffs request that the Court decline to adopt the R&R on any unaddressed alternative ground unless it independently evaluates the complete record and applies the correct nonmovant-favorable standard.

## IX. The R&R Erroneously Recommends Anti-SLAPP Fee Entitlement

### A. Lamkin Did Not Establish Speech "Protected Under Applicable Law"

Florida's Anti-SLAPP statute does not protect every statement made to a reporter or later appearing in a news report. The statute defines "[f]ree speech in connection with public issues" as a statement that is both "protected under applicable law" and made in one of the listed contexts, including a "news report." Fla. Stat. § 768.295(2)(a). Thus, the fact that Lamkin spoke to Bloomberg Law may address the statute's media component, but it does not separately establish that the allegedly false factual accusation was "protected under applicable law." Even under the burden-shifting framework applied by the Second District, Lamkin first had to make a *prima facie* showing that the Anti-SLAPP statute applied.[3] *See Mishiyev v. Davis*, 402 So. 3d

---

[3] Fee-shifting determinations are better resolved after judgment. *See Sterling v. De La Rosa*, No. 21-723, 2026 WL 964850, at *6 (M.D. Fla. Mar. 30, 2026) ("[S]ome courts in this Circuit have opted to address whether a plaintiff violated the Anti-SLAPP statute after dismissal and while ruling on a motion for attorney's fees.") (citing *Button v. McCawley*, No. 24-60911, 2025 WL 3682758, at *1–*3 (S.D. Fla. Dec. 2, 2025)). As such, if any Anti-SLAPP issue is to be considered by this Court, Plaintiffs should have an opportunity to oppose such a claim after final judgment.

14

443, 448-49 (Fla. 2d DCA 2025) (quoting *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. 2d DCA 2019)).  The R&R does not separately analyze whether Lamkin's challenged factual accusation was "protected under applicable law."  Instead, it treats the Bloomberg Law setting as sufficient, thereby collapsing the statutory media component and the separate protected-speech requirement.

Florida appellate courts recognize that actionable defamatory factual speech is not constitutionally protected speech.  In *McQueen v. Baskin*, the Second District reversed an Anti-SLAPP disposition because the challenged allegations, if proven, constituted specific defamatory factual accusations rather than protected commentary.  *See id.*, 377 So. 3d 170, 181-84 (Fla. 2d DCA 2023).  In *Mishiyev v. Davis*, the court likewise rejected an overbroad application of Section 768.295 and recognized that defamation is not constitutionally protected speech.  *See id.*, 402 So. 3d 443, 449-54 (Fla. 2d DCA 2025).  Because a jury could reasonably find that Lamkin made false factual accusations about shell entities, bankruptcy, payment obligations, and deliberate financial evasion, the R&R cannot deem the speech protected merely because Bloomberg Law published it.

**B. The R&R Conflates "Without Merit" With an Unsuccessful Claim**

Section 768.295 requires more than a defense victory.  It requires that the action be "without merit" and filed "primarily because" the defendant exercised protected rights.  *See* Fla. Stat. § 768.295(3).  The R&R reasons that because it recommends summary judgment on defamatory meaning, the action was necessarily "without merit."  *See* ECF No. 194 at 18-19. That reasoning is circular.  Instead, Plaintiffs identified specific factual components, offered evidence that the entities had operations and did not file bankruptcy, and presented a reasonable defamatory interpretation supported by Florida jury-question authority.  A claim supported by

15

that record is not transformed into a prohibited SLAPP merely because the magistrate selected a competing legal interpretation.  As *Mindy Lee v. Animal Aid, Inc.* confirms, Anti-SLAPP fee entitlement requires an express finding that the action violated Section 768.295—not merely that the defendant ultimately prevailed.  *See id.*, 397 So. 3d 632, 635-37 (Fla. 4th DCA 2024).  The R&R does not make those separate findings; it simply converts its merits recommendation into Anti-SLAPP entitlement.  This Court should reject any fee-shifting under Anti-SLAPP.

## C. The R&R Does Not Independently Establish That Plaintiffs Sued "Primarily Because" Lamkin Exercised Protected Speech

The statute requires that the action be filed "primarily because" the defendant exercised protected constitutional rights.  *See* Fla. Stat. § 768.295(3).  That requirement is distinct from the mere fact that a defamation claim arises from speech.  Here, Plaintiffs did not challenge Lamkin's general criticism of PAEs, her participation in litigation, her representation of Starbucks, or her views on patent policy.  They sought relief for a particular allegedly false factual accusation concerning LMR's integrity, business practices, shell entities, payment obligations, and bankruptcy.  Even if the Bloomberg Law article concerned a broader subject of public discussion, Plaintiffs did not sue over Lamkin's policy views or protected advocacy.  They sued over a discrete allegedly false factual accusation.  The R&R does not independently analyze this "primarily because" element.  It instead treats a lawsuit arising from a published statement as equivalent to a lawsuit filed primarily because of protected speech.  That is not the statutory test.

16

**D. The R&R Applies a Burden-Shifting Standard Inconsistent with Rule 56**

The R&R faults LMR for failing to "shoulder his burden" to disprove Anti-SLAPP applicability.  *See* ECF No. 194 at 19.  But Florida appellate courts disagree on whether Section 768.295 creates a special burden-shifting framework.  The Second District has applied a *prima facie* burden-shifting framework.  *See Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 310-14 (Fla. 2d DCA 2019); *Mishiyev*, 402 So. 3d at 448-49, 455.  But the Third District has held that the statute's text does not impose that burden, and that courts should not add burden-shifting language the Legislature did not include.  *See Lam v. Univision Communications, Inc.*, 329 So. 3d 190, 197-99 (Fla. 3d DCA 2021).

At minimum, because Lamkin sought Anti-SLAPP relief through Rule 56 in federal court, she retained the summary-judgment burden to establish the absence of a genuine dispute and entitlement to relief under each statutory requirement as a matter of law.  The R&R's burden-shifting analysis should therefore be rejected.  Plaintiffs object to the Anti-SLAPP recommendation and request that fee entitlement be denied.  At minimum, if the Court finds that a reasonable jury could adopt the defamatory interpretation or find the factual assertions materially false, the action cannot be deemed categorically "without merit" or based on protected speech at summary judgment.

<u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court:

1. reject the finding that Lamkin's statement is incapable of a reasonable defamatory interpretation;
2. adopt the R&R insofar as it recommends summary judgment for Plaintiffs on Lamkin's abuse-of-process counterclaim;
3. reject the finding that the statement constitutes protected pure opinion or rhetorical hyperbole;

17

4.  reject the application of any libel-proof or "no further harm" theory;
5.  deny Lamkin's motion for summary judgment on defamation and tortious interference;
6.  reject Lamkin's asserted entitlement to fees and costs under section 768.295; and
7.  alternatively, determine that the disputed factual issues identified above must be resolved at trial rather than through summary judgment.

## Request for Hearing

As Local Rule 7.1(b)(2) provides, "A party who desires oral argument or a hearing of any motion shall request it within the motion or opposing memorandum in a separate section titled 'request for hearing' [which] shall set forth in detail the reasons why a hearing is desired and would be helpful to the Court and shall estimate the time required for argument."  Plaintiffs do so desire and request oral argument.  The reasons why a hearing is desired and would be helpful to the Court include (a) the determination of this Court on whether to allow Plaintiffs a jury trial on their claims of business interference and defamation, in particular, are hotly disputed and very critical to determine correctly, (b) the controlling law of defamation requires a nuanced analysis, and (c) oral argument would allow the Court and parties to consider these important dispositive issues in the context of a live discussion rather than only in written briefing.  Plaintiffs' estimate of the time required for argument is 30 minutes per side.


Dated: August 7, 2026                                    Respectfully submitted,



Edward F. O'Connor (FL Bar No. 132223)
efo@avynolaw.com
**Law Offices Edward F. O'Connor**
104 Seabreeze Circle
Jupiter, Florida 33477
Tel: 949.291.2894

Stephen M. Lobbin (admitted *pro hac vice*)
sml@smlavvocati.com
**SML Avvocati P.C.**

18

888 Prospect Street, Suite 200
San Diego, California 92037
Tel: 949.636.1391

Attorneys for Plaintiffs