**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:24-cv-24669-DPG**

LEIGH M. ROTHSCHILD and
ANALYTICAL TECHNOLOGIES, LLC,

*Plaintiffs*,

v.

STARBUCKS CORP. and
RACHAEL LAMKIN,

*Defendants*.

---

**DEFENDANT RACHAEL LAMKIN'S**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL AUTHORITY ........ 2

III. ARGUMENT ........ 2

A. Ms. Lamkin is entitled to recover all attorneys' fees and costs for litigating Plaintiffs' defamation claim. ........ 2

B. Ms. Lamkin is entitled to recover attorneys' fees and costs for her own time and the time Baker Botts spent on the lawsuit. ........ 3

C. Ms. Lamkin's request for fees is reasonable. ........ 6

1. The rates sought by Ms. Lamkin and charged by her attorneys are reasonable. ........ 6

2. The hours spent litigating this case are reasonable. ........ 13

D. Ms. Lamkin is entitled to recover all reasonable nontaxable costs. ........ 16

E. The Court should set a date by when Mr. Rothschild must comply with his obligation to pay Ms. Lamkin's fees. ........ 17

IV. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Analytical Techs., LLC v. Am. Dairy Queen Corp.*,
No. 2-24-cv-00445 (E.D. Tex. 2024)....7

*Barmapov v. Amuail*,
No. 18-CV-80390, 2020 WL 5899504 (S.D. Fla. Feb. 24, 2020), *report and recommendation adopted sub nom. Barmapov v. Amuial*, No. 9:18-CV-80390-WPD, 2020 WL 5886896 (S.D. Fla. Oct. 5, 2020)....3, 4

*Bongino v. Daily Beast Co.*,
477 F. Supp. 3d 1310 (S.D. Fla. 2020)....2, 3

*Button v. McCawley*,
No. 0:24-CV-60911, 2025 WL 3682758 (S.D. Fla. Dec. 2, 2025)....6, 9

*Button v. McCawley*,
No. 0:24-CV-60911, 2026 WL 292150 (S.D. Fla. Feb. 4, 2026)....6

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....17

*Corsi v. Newsmax Media, Inc.*,
519 F. Supp. 3d 1110 (S.D. Fla. 2021)....16

*Corsi v. Newsmax Media, Inc.*,
No. 20-CV-81396-RAR, 2022 WL 18586842 (S.D. Fla. Jan. 6, 2022)....2, 3

*Digital Verification Sys., LLC v. Encyro, Inc.*,
No. 5-22-cv-00686 (C.D. Cal. 2022)....7

*Env't Mfg. Sol., LLC v. Peach State Labs, Inc.*,
274 F. Supp. 3d 1298 (M.D. Fla. Aug. 14, 2017)....6

*Fisher v. Whitlock*,
784 F. App'x 711 (11th Cir. 2019)....17

*Hayden v. Urvan*,
No. 21-CV-82051, 2025 WL 826697 (S.D. Fla. Mar. 14, 2025)....14, 15

*Iconic Mars Corp. v. Kaotica Corp.*,
No. 22-CV-0092-CAB-DEB, 2025 WL 2440887 (S.D. Cal. Aug. 25, 2025)....12

*Iconic Mars Corp. v. Kaotica Corp.*,
No. 22-CV-0092-CAB-DEB, 2025 WL 405701 (S.D. Cal. Feb. 5, 2025), *amended*, No. 22-CV-00092-CAB-DEB, 2025 WL 1532886 (S.D. Cal. May 29, 2025), *motion for relief from judgment denied*, No. 22-CV-0092-CAB-DEB, 2025 WL 4750101 (S.D. Cal. Sept. 16, 2025)....12

*Infogroup Inc. v. Off. Depot Inc.*,
2024 WL 4104029 (S.D. Fla. Sept. 6, 2024)....9

*Infogroup Inc. v. Off. Depot Inc.*,
2024 WL 4110526 (S.D. Fla. Aug. 21, 2024)....9

*Johnson v. Wexler*,
931 S.E.2d 384 (Ga. Ct. App. 2026), *reconsideration denied* (June 23, 2026)....5

*Justin Ligeri v. Arizona Daily Independent, LLC*,
No. 8:23-CV-01318-CEH-AEP, 2026 WL 2161359 (M.D. Fla. June 18, 2026)....11

*Kay v. Ehrler*,
499 U.S. 432 (1991)....4

*Mac Isaac v. Twitter, Inc.*,
557 F. Supp. 3d 1251 (S.D. Fla. 2021)....16

*Millette v. DEK Techs., Inc.*,
No. 08-60639-CV, 2010 WL 11505115 (S.D. Fla. Feb. 12, 2010)....3, 14

*Norman v. Hous. Auth. of City of Montgomery*,
836 F.2d 1292 (11th Cir. 1988)....13

*Nunez v. Allen*,
292 So. 3d 814 (Fla. Dist. Ct. App. 2019)....4

*Olympia Mins. Leasing LLC v. J-Lu Ltd Co LLC*,
No. 2:22-CV-05754, 2025 WL 2810963 (W.D. La. Sept. 26, 2025)....17

*RCDI v. ADS Security, L.P.*,
No. 2:15-cv-01463 (E.D. Tex.)....7

*Rothschild Connected Devices Innovations, LLC v. Garmin Int'l, Inc.*,
No. 2-17-cv-00158 (E.D. Tex. 2017)....7

*Rothschild Digital Confirmation, LLC v. CompanyCam*,
Case No. 1:19-cv-01109-MN....17

*Rothschild Digital Confirmation LLC v. Companycam, Inc.*,
CV 19-1109 (MN), 2021 WL 706411 (D. Del. Feb. 23, 2021)....5

*Rothschild Digital Confirmation v. CompanyCam, Inc.*,
No. 1:19-cv-01109 (D. Del. 2019) ........................................ 7

*Scelta v. Delicatessen Support Servs., Inc.*,
146 F. Supp. 2d 1255 (M.D. Fla. 2001) ........................................ 3, 4

*Tobinick v. Novella*,
No. 14-80781-CV, 2017 WL 8809365 (S.D. Fla. Nov. 29, 2017) ........................................ 16

*Tobinick v. Novella*,
No. 9:14-CV-80781, 2017 WL 8809110 (S.D. Fla. Dec. 18, 2017) ........................................ 16

*Valve Corp. v. Rothschild*,
No. 2:23-cv-1016, Dkt. No. 252 (W.D. Wash. Feb. 17, 2026) ........................................ 10, 13

*WPB Residents for Integrity in Gov't, Inc. v. Materio*,
284 So. 3d 555 (Fla. 4th DCA 2019) ........................................ 2

**Statutes**

28 U.S.C. § 1927 ........................................ 12

35 U.S.C. § 285 ........................................ 17

42 U.S.C. § 1988 ........................................ 4

Cal. Civ. Proc. Code § 425.16(c)(1) ........................................ 16

Fla. Stat. § 768.79 ........................................ 4

Fla. Stat. § 768.295 ........................................ 1

Fla. Stat. § 768.295(1)–(3) ........................................ 2

Fla. Stat. § 768.295(4) ........................................ 2, 16

Fla. Stat. § 772.104(3) ........................................ 4

Florida's Uniform Fraudulent Transfer Act ........................................ 14

**Other Authorities**

Fed. R. Civ. P. 69 ........................................ 18

Fla. R. of Civ. P. 1.442 ........................................ 4

## I. INTRODUCTION

There is a long and contentious history of patent litigation between Plaintiff Leigh M. Rothschild and Defendant Rachael Lamkin. That history motivated Mr. Rothschild to bring his meritless defamation claim against Ms. Lamkin for the improper purpose of pressuring Ms. Lamkin and her clients into early resolution of unrelated cases. This Court dismissed Mr. Rothschild's defamation claim along with his tortious interference claim that relied on the ill-founded defamation claim as a necessary predicate act. [ECF No. 194 at 7–14; ECF No. 200 at 2]. Consequently, this Court found Ms. Lamkin is entitled to her attorneys' fees from Mr. Rothschild under the Florida Anti-SLAPP Statute. [ECF No. 194 at 17; ECF No. 200 at 2]; § 768.295, Fla. Stat.

Given the nuanced issues of patent law that permeated this case based on the parties' backgrounds and preexisting litigation relationships, specialization in intellectual property matters along with defamation were essential to staffing the trial team. Ms. Lamkin—a partner at the law firm of Baker Botts—originally represented herself, having the necessary patent litigation background to efficiently manage the facts pertinent to this case concerning the underlying litigations, with the help of Baker Botts associates. As trial approached, Ms. Lamkin retained a team of litigators from the law firm of Kilpatrick, Townsend, & Stockton ("Kilpatrick") who uniquely fit the bill to present the case to a jury. The award-winning Kilpatrick trial team not only had the intellectual property background, but a record of prevailing at another federal court defamation trial. In addition, the Kilpatrick attorneys have each litigated—some of them more than once—against both Mr. Rothschild and his counsel, prevailing at jury trial over Mr. Rothschild or his counsel. In light of the complexities of the case and the distinct set of skills necessary to litigate it, Ms. Lamkin's request for $3,386,267.18 in attorneys' fees and expenses is reasonable and substantiated.

## II. LEGAL AUTHORITY

Florida's Anti-SLAPP statute applies to claims that are "without merit" and filed "primarily because" the defendant "has exercised the constitutional right of free speech in connection with a public issue." § 768.295(1)–(3), Fla. Stat. The statute's purpose is clear: "you have a right not to be dragged through the courts because you exercised your constitutional rights." *WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 559 (Fla. 4th DCA 2019) (citation omitted). Accordingly, the statute mandates that the "court shall award the prevailing party reasonable attorney fees and costs" when the underlying suit was brought "in violation of this section." *Id.*; § 768.295(4), Fla. Stat. Fee-shifting under the Anti-SLAPP statute is therefore mandatory. *See, e.g.*, *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020) (explaining that "the statute awards a defendant fees and costs if a plaintiff files a forbidden suit").

## III. ARGUMENT

### A. Ms. Lamkin is entitled to recover all attorneys' fees and costs for litigating Plaintiffs' defamation claim.

This Court already determined that Ms. Lamkin is the prevailing party under the Anti-SLAPP statute and that she is entitled to attorneys' fees. [ECF No. 200] (adopting Omnibus Report and Recommendation [ECF No. 194]); [ECF No. 205] (final judgment). The Court should further find that she is entitled to recover the entirety of her fees and costs incurred litigating against Mr. Rothschild's vindictive, meritless claim. As the Southern District of Florida has explained, the anti-SLAPP statute's "fee provision encompasses attorneys' fees expended in defense of such a suit from its inception." *Corsi v. Newsmax Media, Inc.*, No. 20-CV-81396-RAR, 2022 WL 18586842, at *2 (S.D. Fla. Jan. 6, 2022).

Mr. Rothschild forced Ms. Lamkin into court the day he filed his meritless defamation claim and other claims based on the same meritless allegations: November 27, 2024. Since then,

Ms. Lamkin has devoted significant time and resources defending against these claims, including engaging in discovery, summary judgment briefing, and trial preparation. Ms. Lamkin is therefore entitled to recover all attorneys' fees and costs devoted to litigating against Mr. Rothschild's meritless defamation claim.

**B. Ms. Lamkin is entitled to recover attorneys' fees and costs for her own time and the time Baker Botts spent on the lawsuit.**

Ms. Lamkin is entitled to recover attorneys' fees for her own time and Baker Botts' time spent on this lawsuit. In situations such as this, "[t]he Court recognizes that a client who is an attorney is free to represent herself and, if she prevails, recover the reasonable value of the time she spent litigating the matter pursuant to a fee-shifting statute." *Millette v. DEK Techs., Inc.*, No. 08-60639-CV, 2010 WL 11505115, at *3 n.2 (S.D. Fla. Feb. 12, 2010). The recovery of attorneys' fees for Ms. Lamkin's and Baker Botts' time is further supported by the rationale underpinning Florida's Anti-SLAPP statute. Here, the Anti-SLAPP statute's primary purpose—deterring frivolous lawsuits—supports such an award. *Barmapov v. Amuail*, No. 18-CV-80390, 2020 WL 5899504, at *4 (S.D. Fla. Feb. 24, 2020), *report and recommendation adopted sub nom. Barmapov v. Amuial*, No. 9:18-CV-80390-WPD, 2020 WL 5886896 (S.D. Fla. Oct. 5, 2020) (indicating the key inquiry in determining whether an attorney representing herself may recover fees is the rationale of the specific statute under which the fees are claimed).

The Florida Legislature enacted the Anti-SLAPP statute to deter meritless lawsuits, and "for that reason, the statute awards a defendant fees and costs if a plaintiff files a forbidden suit." *Bongino*, 477 F. Supp. 3d at 1321; *see also Corsi*, 2022 WL 18586842, at *4 ("[T]he Florida Legislature wrote and passed the law explicitly intending to prevent the very filing of SLAPP suits in the first place."). "[A]n award of attorneys' fees to a prevailing defendant deters frivolous lawsuits and protects defendants from burdensome litigation." *Scelta v. Delicatessen Support*

*Servs., Inc.*, 146 F. Supp. 2d 1255, 1261 n.4 (M.D. Fla. 2001). This deterrence is important because "the entire public inevitably suffers when a vindictive plaintiff squanders limited judicial resources by prosecuting frivolous lawsuits." *Id.* (quoting *Am. Family Life Assurance Co. of Columbus v. Teasdale*, 733 F.2d 559, 570 (8th Cir. 1984)).

This reasoning distinguishes the Anti-SLAPP statute from statutes like 42 U.S.C. § 1988, under which fees are not recoverable for attorneys representing themselves because the intent of Section 1988 is to encourage litigants to obtain independent counsel. Thus, any case law addressing Section 1988 and other fee-shifting statutes that have discernably different purposes or requirements is inapposite. *E.g.*, *Kay v. Ehrler*, 499 U.S. 432, 437–438 (1991) (explaining that "the overriding statutory concern [of Section 1988] is the interest in obtaining independent counsel for victims of civil rights violations"); *Nunez v. Allen*, 292 So. 3d 814, 818 (Fla. Dist. Ct. App. 2019) (contrasting purpose of § 768.79 Fla. Stat. and Fla. R. of Civ. P. 1.442 with other fee-shifting statutes, explaining the statute's "purpose was to penalize a party who rejects a reasonable settlement offer" and thus, fees are recoverable by an attorney representing themselves); *see also Barmapov*, 2020 WL 5899504, at *4 (explaining "the clear purpose of Fla. Stat. § 772.104(3) is to penalize plaintiffs who raise Florida civil RICO claims without substantial factual or legal support and to incentivize plaintiffs not to file Florida civil RICO claims that lack factual or legal support, thus" finding attorney representing himself could recover fees under Florida civil RICO statute). As the Anti-SLAPP statute's purpose is not to encourage independent counsel retention but to deter meritless lawsuits, the reasoning set forth in such non-Anti-SLAPP cases based on differently motivated statutes is irrelevant here and should not be considered.

This Court has already found this case to be "without merit." [ECF No. 194 at 18]. Awarding attorneys' fees to Ms. Lamkin would accomplish the stated intent of the Anti-SLAPP

statute by discouraging similar meritless litigation and allowing Ms. Lamkin to recoup a portion of the cost of her defense. Moreover, courts in other jurisdictions have recognized that attorneys may recover fees for defending themselves in Anti-SLAPP suits. *See, e.g.*, *Johnson v. Wexler*, 931 S.E.2d 384, 390 (Ga. Ct. App. 2026), *reconsideration denied* (June 23, 2026) (affirming attorney fee award under anti-SLAPP statute and finding "the trial court did not abuse its discretion in awarding Wexler fees for the work he did in defending himself"). Applying this framework, Ms. Lamkin is entitled to fees for her own time defending herself in this suit.

Ms. Lamkin's specialized expertise further supports an award for her time. She has litigated over a hundred patent cases, served as lead trial counsel in more than seventy of those cases, and previously founded a law firm dedicated to defending companies against patent monetization entities just like Mr. Rothschild's.

Ms. Lamkin has also repeatedly been cited by patent litigation blogs and the Federal Circuit in Section 285 decisions. Courts have recognized that when a party possesses specialized expertise that makes their personal involvement necessary to the defense, they may recover fees for their own time. *See Rothschild Digital Confirmation LLC v. Companycam, Inc.,* CV 19-1109 (MN), 2021 WL 706411, at *1 (D. Del. Feb. 23, 2021), ECF No. 45 (finding that "Ms. Lamkin's special expertise was necessary" and awarding fees for her time).

While this may not have been a patent-infringement suit, nuanced issues of patent law permeated throughout this case (which itself allegedly stemmed from Ms. Lamkin's actions in defense of her client against a vexatious infringement lawsuit Mr. Rothschild filed in Texas). Moreover, Mr. Rothschild chose to sue and hale into court Ms. Lamkin—a lawyer he knows works for a large law firm, charging higher rates, and who from the very beginning of the case would be her own best legal counsel based on her years of experience litigating against and besting Mr.

Rothschild. The Court should put little weight on any complaints Mr. Rothschild may now raise about her reasonable attempt to recoup her fees spent defending herself.

**C. Ms. Lamkin's request for fees is reasonable.**

In determining reasonable attorneys' fees, courts employ the "lodestar" method. *Button v. McCawley*, No. 0:24-CV-60911, 2025 WL 3682758, at *4 (S.D. Fla. Dec. 2, 2025), *report and recommendation adopted*, No. 0:24-CV-60911, 2026 WL 292150 (S.D. Fla. Feb. 4, 2026) (citing *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). This method involves three steps: (1) determining a reasonable hourly rate; (2) calculating the total hours reasonably expended; and (3) multiplying the reasonable hourly rate by the hours reasonably expended to arrive at the lodestar amount. *Id*. As detailed below, Ms. Lamkin's request for $3,386,267.18 in attorneys' fees and expenses—$1,273,364.20 from Baker Botts, and $2,112,902.98 from Kilpatrick—is reasonable in both the hours expended and the hourly rates sought.

1. <u>The rates sought by Ms. Lamkin and charged by her attorneys are reasonable.</u>

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Button*, 2025 WL 3682758, at *4 (citing *Norman*, 836 F.2d at 1299). Evidence of reasonable rates "generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates." *Env't Mfg. Sol., LLC v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298 (M.D. Fla. Aug. 14, 2017).

This case is not a typical defamation dispute. It involves parties with a "long and contentious history of patent litigation between them." [ECF No. 194 at 2]. Mr. Rothschild operates as a non-practicing entity plaintiff, while Ms. Lamkin often serves as defense patent

counsel who has repeatedly litigated against non-practicing entities—including numerous patent troll shell companies Mr. Rothschild created and uses to extract undeserved settlements from hundreds of American companies. *See, e.g.*, *Rothschild Connected Devices Innovations, LLC v. Garmin Int'l, Inc.*, No. 2-17-cv-00158 (E.D. Tex. 2017); *Rothschild Digital Confirmation v. CompanyCam, Inc.*, No. 1:19-cv-01109 (D. Del. 2019); *Digital Verification Sys., LLC v. Encyro, Inc.*, No. 5-22-cv-00686 (C.D. Cal. 2022); *Analytical Techs., LLC v. Am. Dairy Queen Corp.*, No. 2-24-cv-00445 (E.D. Tex. 2024).

Ms. Lamkin is one of the few successful patent defense lawyers who has obtained fee awards against Mr. Rothschild's companies based on their filing of frivolous lawsuits. As this case has shown, Ms. Lamkin has faced significant difficulty in collecting on lawfully obtained court-ordered fee awards against Mr. Rothschild's most-litigious shells. *See Rothschild Digital Confirmation v. CompanyCam, Inc.*, No. 1:19-cv-01109 (D. Del.) (awarding defendant attorneys' fees, but Mr. Rothschild's company Rothschild Digital Confirmation did not pay those fees); *see also RCDI v. ADS Security, L.P.*, No. 2:15-cv-01463 (E.D. Tex.) (awarding defendant's attorney fees, but RCDI, controlled by Mr. Rothschild, never paid them); *see also* [ECF No. 194 at 2–3]. This history prompted Ms. Lamkin to add Mr. Rothschild individually as a counter-defendant in the infringement lawsuit that was at the heart of Mr. Rothschild's vindictive defamation claim. *See Analytical Techs., LLC v. Am. Dairy Queen Corp.*, No. 2-24-cv-00445, Dkt. 31 (E.D. Tex. Sept. 5, 2024). To avoid any doubt, Ms. Lamkin's and her legal team's patent expertise was critical to prevailing in this defamation suit.

Kilpatrick was compensated on an hourly basis at their normal rates. Machleidt Decl. ¶ 41. The rates of the primary Kilpatrick attorneys, paralegals, and staff who contributed to Lamkin's defense are set forth in the table below.

| Name | Title | 2026 Hourly Rate |
|---|---|---|
| Dario Machleidt | Lead Partner | $1,245 |
| Rachel Saimons | Partner | $800 |
| Kathleen Geyer | Senior Associate | $895 |
| Kristin Adams | Senior Associate | $975 |
| Karina Glushchak | Associate | $645 |
| Faye Miller | Paralegal | $525 |
| Rhondda Ashby | Paralegal | $525 |
| Nita Gray | Trial Technologist | $200 |

*See also* Machleidt Decl. ¶¶ 45–46 (providing the hourly rate claimed and the number of hours reasonably expended for all Kilpatrick timekeeper for whom fees are sought); 3–38 (describing the experience and qualifications for each Kilpatrick timekeeper for whom fees are sought).

While Baker Botts did not invoice Ms. Lamkin for the time worked by Baker Botts timekeepers, those timekeepers contemporaneously recorded their time and task descriptions in Baker Botts' timekeeping system. Lamkin Decl. ¶ 24. The rates of the primary Baker Botts attorneys and paralegals who contributed to Lamkin's defense are set forth in the table below.

| Name | Role | Hourly Rate (2024) | Hourly Rate (2025) | Hourly Rate (2026) |
|---|---|---|---|---|
| Rachael D. Lamkin | Partner | N/A | $1,445 | $1,610 |
| Brenton H. Cooper | Senior Associate | $1,105 | $1,230 | $1,390 |
| Linus M. Nemiroff | Associate | N/A | $715 | $965 |
| Jessica M. Joyce | Paralegal | N/A | $465 | $495 |

*See also* Lamkin Decl. ¶¶ 3–22 (describing the experience and qualifications for each Baker Botts timekeeper for whom fees are sought).

The above-listed rates are justifiable for several reasons. First, the American Intellectual Property Law Association ("AIPLA") 2025 Report of Economic Survey sets forth average billing rates for intellectual property attorneys at various levels of experience and in various geographies. *See* Machleidt Decl. ¶¶ 15–16, 24; *id.*, Ex. 10 at 16, I-35–I-36, I-54. Indeed, even though billing rates are on the rise (*id.* ¶¶ 16–17), each of Kilpatrick's 2026 attorneys' rates fall within or very

close to the 25%–75% range of data reflected in the AIPLA report. *See* Machleidt Decl. ¶¶ 15–16, 24; Ex. 10 at I-35–I-36, I-54. For example, in 2025, the average hourly rate for an intellectual property partner like Mr. Machleidt in a firm with more than 150 intellectual property lawyers and agents (like Kilpatrick) was $1,180 with the Third Quartile 75% being $1,510. Machleidt Decl. ¶ 15; Ex. 10 at I-36. The average hourly rate for an intellectual property partner-track associate like Ms. Geyer and Ms. Adams in a firm with more than 150 intellectual property lawyers and agents was $600 with the Third Quartile 75% being $890. Machleidt Decl. ¶ 24; Ex. 10 at I-54. In 2025, the average hourly rate for an intellectual property partner-track attorney with only 5 years of experience (far fewer than Ms. Geyer's six and Ms. Adams's eight years) was $530 with the Third Quartile 75% being $790. Ex. 10 at I-55. While data is not available for Ms. Geyer's six years and Ms. Adams's eight years of experience for 2025, given their multiple extra years of experience beyond a fifth-year partner-track attorney, their rates are reasonable commensurate to their experience.[1]

The requested rates are also consistent with rates found acceptable by courts in this District. *See Infogroup Inc. v. Off. Depot Inc.*, 2024 WL 4110526, at *3 (S.D. Fla. Aug. 21, 2024), *report and recommendation adopted*, 2024 WL 4104029 (S.D. Fla. Sept. 6, 2024) (finding hourly rates of $1,050 for senior partner, $900 for partner, $850 for counsel, and $800 for associate at DLA Piper and Hogan Lovells to be reasonable in a copyright infringement and contract action).

As previously explained and unlike typical defamation cases, this matter demands

---

[1] Data is not available for 2025 for partner-track attorneys of six and eight years. For reference, for a partner track attorney having only one year less experience at four years, the average hourly billing rate was $290 and the Third Quartile was $370. Ex. 10 at I-55. An increase in the Third Quartile from $370 to $790 from fourth to fifth year attorneys indicates that Ms. Geyer's and Ms. Adams's rates are reasonably within the year-over-year rate increases for partner track associates of their respective years.

specialized knowledge of patent litigation and the tactics employed by non-practicing entities. *Cf. Button*, 2025 WL 3682758, at *4. The parties' longstanding involvement in patent litigation is central to this dispute—it is how they first encountered one another. Ms. Lamkin's allegedly defamatory statements appeared in an article about patent litigation and directly addressed how non-practicing entities operate. Counsel's expertise in the patent system, familiarity with non-practicing entity tactics, and direct experience litigating against Mr. Rothschild and his counsel are therefore not merely desirable—they are essential to effective representation. This specialized nature of the case warrants rates commensurate with that expertise.

Kilpatrick counsel possesses precisely this expertise. As part of Kilpatrick's intellectual property group, counsel is deeply familiar with patent litigation and non-practicing entities. Earlier this year, Mr. Machleidt and Ms. Geyer prevailed in a suit against Mr. Rothschild himself after a week-long jury trial in the U.S. District Court for the Western District of Washington. *Valve Corp. v. Rothschild*, No. 2:23-cv-1016, Dkt. No. 252 (W.D. Wash. Feb. 17, 2026). In that case, the jury found Mr. Rothschild, his management company (Patent Asset Management), several of his shell companies, and his counsel liable for violating Washington State's "anti-troll" act; in other words, the jury found his and his co-defendants' actions amounted to the bad-faith assertion of patent infringement. Included within the jury instructions were issues that bore critical importance to Ms. Lamkin's defense of Mr. Rothschild's vindictive suit here:

> Whether defendant Rothschild intentionally uses uncapitalized companies for issuing threats of patent infringement while being shielded from personal liability under state laws like the Washington Patent Troll Prevention Act.
>
> Whether defendants [Rothschild Broadcast Distribution Systems] RBDS and Display Technologies are shell companies that are intentionally maintained with minimal assets in capital to shield defendant Rothschild from personal liability from the fee-shifting risk associated with baseless infringement assertions.
>
> After Valve filed the present lawsuit accusing the defendants of violating the Washington State Patent Troll Prevention Act, whether defendants or other entities

> they own or control filed patent infringement lawsuits against Valve for retaliatory reasons to gain leverage over Valve in this case.
>
> Whether defendants engaged in a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements with no intention of testing the merits of the infringement claims.
>
> Whether the defendants exploited the high cost to defend a patent litigation to extract nuisance value settlements.

*See* Ex. 16 (Trial Tr., Feb. 13, 2026) at 134:14–135:9. The Washington court granted sanctions against Mr. Rothschild and the corporate defendants under his control as well, once more finding facts there relevant to Ms. Lamkin's defense here:

> The Court has found that Defendants Leigh Rothschild, Rothschild Broadcast Distribution Systems (RBDS), Display Technologies (DT), and Patent Asset Management (PAM) have failed to comply with their discovery obligations and this Court's orders to produce financial records and other documents. Accordingly, the following facts are deemed established for purposes of this action:
>
> 1. Defendants RBDS and Display Technologies are inadequately capitalized entities that do not maintain significant assets or capital reserves.
>
> 2. The funds of Defendants RBDS, Display Technologies, and PAM are not maintained separately from one another or from Defendant Rothschild, but instead flow freely among these entities and Defendant Rothschild.
>
> 3. Defendant Rothschild has failed to produce his personal financial records as ordered by this Court. From this fact, you may infer that the withheld records would have been unfavorable to Defendant Rothschild on the issues of corporate separateness, capitalization, and the movement of funds among Defendants Rothschild, RBDS, Display Technologies, and PAM.

Ex. 17 (Order on Valve's Motion for Sanctions) at 10.

The circumstances of this litigation further support the reasonableness of Kilpatrick's rates. Ms. Lamkin is an out-of-state defendant whose prior experience with Mr. Rothschild and his counsel has shown they will engage in gamesmanship and sanctionable behavior, unnecessarily and knowingly increasing litigation costs. *See Justin Ligeri v. Arizona Daily Independent, LLC*, No. 8:23-CV-01318-CEH-AEP, 2026 WL 2161359, at *3 (M.D. Fla. June 18,

2026) (awarding higher-than-typical rates where "Defendant was out-of-state and litigated the case for over three years and had to pursue three summary judgments"). This experience prompted Ms. Lamkin to seek counsel familiar with—and successful against—both Mr. Rothschild and his lead counsel, Stephen Lobbin ("Mr. Lobbin").

Kilpatrick counsel is uniquely familiar with both Messrs. Rothschild and Lobbin—and has obtained favorable results against both. In *Iconic Mars. Corp. v. Kaotica Corp.*, Kilpatrick (Mr. Machleidt, Ms. Geyer, and Ms. Adams) litigated and won after a jury trial a trade dress case in the Southern District of California against Mr. Lobbin as opposing counsel. No. 22-CV-0092-CAB-DEB, 2025 WL 2440887 (S.D. Cal. Aug. 25, 2025). In that case, the court found the rates charged by Kilpatrick (including Mr. Machleidt, Ms. Geyer, and Ms. Adams) were "reasonable and in line with the prevailing market rates for this type of litigation in this District for the relevant time period." *Id.*

The Kilpatrick team also obtained a sanctions award against Mr. Lobbin personally due to his bad-faith litigation. *See Iconic Mars Corp. v. Kaotica Corp.*, No. 22-CV-0092-CAB-DEB, 2025 WL 405701, at *8 (S.D. Cal. Feb. 5, 2025), *amended*, No. 22-CV-00092-CAB-DEB, 2025 WL 1532886 (S.D. Cal. May 29, 2025), *motion for relief from judgment denied*, No. 22-CV-0092-CAB-DEB, 2025 WL 4750101 (S.D. Cal. Sept. 16, 2025) ("[Kilpatrick client] Kaotica's motion, [Doc. No. 119], presents a compelling summary of the history of this litigation and the unreasonable and vexatious conduct of Mr. Lobbin as lead counsel for Iconic to justify a sanctions award. At the hearing on these motions, the Court enumerated many of the positions and actions taken by counsel that support its finding of bad faith."); *id.* at * 9 ("The Court finds it appropriate to sanction Mr. Lobbin pursuant to its inherent authority and under 28 U.S.C. § 1927 for his bad faith tactics and conduct in the litigation of this case to (1) compensate Kaotica

for the unnecessary expenses it incurred and (2) as a deterrent to his future conduct. Kaotica's motion for sanctions against Mr. Lobbin is GRANTED and he will be personally responsible, jointly and severally with Iconic, for the fees and costs awarded to Kaotica."); *Iconic Mars Corp. v. Kaotica Corp.*, No. 22-CV-0092-CAB-DEB, 2025 WL 2440887, at *8 (S.D. Cal. Aug. 25, 2025) ("Counsel's [Stephen Lobbin's] conduct throughout this litigation has exhibited reckless disregard of his duties of candor and professionalism to the Court . . . . This conscious disregard for facts and law demonstrated by Mr. Lobbin in this case is unfortunately not an aberrant occurrence. Mr. Lobbin has previously been sanctioned by courts in this and other judicial districts.").

More recently and as explained above, a jury found Mr. Rothschild in violation of the Washington Patent Troll Prevention Act and Washington Consumer Protection Act in a case where Kilpatrick (including Mr. Machleidt and Ms. Geyer) represented Valve. *Valve*, Dkt. No. 252. The unique circumstances of this case—the parties' history, the required patent expertise, and counsel's track record against this Plaintiff—further support the reasonableness of the rates charged.

2. The hours spent litigating this case are reasonable.

Ms. Lamkin seeks $3,144,783.57 in attorneys' fees for 3,072.1 hours of attorney time, supported by detailed records justifying the hours claimed, including descriptions of tasks done during those hours. Lamkin Decl., ¶¶ 24–31; Ex. 1; Machleidt Decl., ¶¶ 41–51; Ex. 14. Counsel "maintained records to show that time spent on the different claims, and the general subject matter." *Norman*, 836 F.2d at 1303. The hours spent by Baker Botts and Kilpatrick attorneys are reasonable on several grounds.[2]

[2] The following facts are supported by the declarations of Rachael Lamkin and Dario A. Machleidt.

Ms. Lamkin is employed by the Baker Botts law firm. By representing herself alongside support from other attorneys at the Baker Botts firm, Ms. Lamkin and the Baker Botts team were able to bill at a highly efficient number of hours per task given their familiarity with the matter at hand, including Ms. Lamkin's relevant history of litigating about Mr. Rothschild. Ms. Lamkin was further reasonable her choice of counsel in retaining Kilpatrick as trial counsel due to their unique combination of legal experience germane to the claims in this case and their experiences litigating through jury trial against both Mr. Rothschild and his counsel—and Kilpatrick's lower average billable rates than Baker Botts. Proceeding in this manner is reasonable and resulted in lower fees than if the combination of Ms. Lamkin's own time, Baker Bott's time, and Kilpatrick's time had not been utilized. As Florida courts have explained:

> The Court recognizes that a client who is an attorney is free to represent herself and, if she prevails, recover the reasonable value of the time she spent litigating the matter pursuant to a fee-shifting statute. Alternatively, a client who is an attorney is free to hire counsel to litigate the matter on her behalf, thereby freeing up the client to devote her time to her other affairs. The client, if she prevails, may then recover the fees she owes to the hired counsel (assuming the fees are reasonable and the fee shifting is authorized by statute). Likewise, the Court recognizes that litigation is often highly complex and may require the contributions of multiple attorneys. In such a scenario, a client who is an attorney may represent herself, in part, and hire other counsel to handle the remaining portion of the litigation.

*Millette*, 2010 WL 11505115, at *3.

Furthermore, Kilpatrick's time entries demonstrate that the vast majority of hours charged relate exclusively to work on the defamation claim. Wherever possible, Kilpatrick separated out time spent solely on issues concerning abuse-of-process or Florida's Uniform Fraudulent Transfer Act—even though those claims shared a "common core of facts and are based on related legal theories" with the defamation claim. *Hayden v. Urvan*, No. 21-CV-82051, 2025 WL 826697, at *5 (S.D. Fla. Mar. 14, 2025) (internal quotation marks omitted) ("When the facts and claims are closely related, courts are not required to parse counsel's time."). Here, the tortious interference

claim required a predicate showing of defamation and rose and fell with that claim. [ECF No. 194 at 13–14 ("Because Rothschild's Defamation Claim Fails, Plaintiffs' Claim for Tortious Interference with Business Relations Fails")]. Similarly, the abuse-of-process claim, which requires showing no basis in law or fact, necessarily overlapped with the defamation defense. [*Id.* at 15 ("Lamkin's abuse of process claim is based entirely on the Plaintiff's defamation claim filed in this matter")]. Nevertheless, Kilpatrick seeks only fees for hours billed in connection with the defamation claim and the tortious interference claim, which requires the defamation as the predicate act. The Baker Botts team took a similar reasonable approach, only seeking to recover fees billed in connection with Rothschild's claims against Lamkin.

Trial preparation work was appropriately allocated among team members. Ms. Adams and Ms. Geyer split responsibilities for day-to-day tasks. Mr. Machleidt, as lead trial counsel, supervised and reviewed all work product. When Kilpatrick was engaged as trial counsel after summary judgment briefing had concluded, all team members reviewed the pleadings and familiarized themselves with the case. As trial preparation progressed, the team conducted meetings to discuss strategy and integrate the various aspects of the case. *See Hayden*, 2025 WL 826697, at *7 (noting that billing for "case strategy meetings involving multiple attorneys, without further elaboration" may be unreasonable). This was a necessary part of trial preparation given the Kilpatrick team being hired as trial counsel only a few months before the scheduled July 27, 2026 trial date. As trial approached, the team traveled to San Francisco to meet with Ms. Lamkin for witness preparation and to develop case themes. Shortly before the scheduled trial date, the team traveled to Miami to finalize trial preparation. Machleidt Decl., Ex. 18 (July 22, 2026 Calendar Call Tr.), at 5:23–6:17 ("This is Dario Machleidt on behalf of Ms. Lamkin. You mentioned you had a bench trial and we were here and we learned about the bench trial starting on August 3rd.

Our schedule said that our trial date for this case is July 27th and our team, Ms. Lamkin's team is in Miami. We have moved to Miami. We are in the hotel and we've been preparing for trial to begin on Monday. So we figured perhaps some of the rulings, because we don't have them yet, would be just rendered moot and we would be going to trial starting on Monday . . . This may be sort of crying into the void, but we are ready and we are getting ready for trial starting next week. It sounds like if that's off we will change some travel plans, but that's what we have been preparing for and that's where we sit.").

**D. Ms. Lamkin is entitled to recover all reasonable nontaxable costs.**

Ms. Lamkin is entitled to reasonable costs. Florida's anti-SLAPP statute states that the "court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." § 768.295(4) Fla. Stat.; *see also Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1262 (S.D. Fla. 2021) (awarding prevailing party an award of attorneys' fees and costs under Florida's anti-SLAPP state); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021) (same). This Court has found that costs associated with printing, copying, Westlaw costs, and travel associated with oral argument are "ordinarily recoverable as non-taxable expenses" in an Anti-SLAPP suit. *Tobinick v. Novella*, No. 14-80781-CV, 2017 WL 8809365, at *7 (S.D. Fla. Nov. 29, 2017), *report and recommendation adopted,* No. 9:14-CV-80781, 2017 WL 8809110 (S.D. Fla. Dec. 18, 2017).[3] The total litigation non-taxable

[3] *Tobinick* applied the California Anti-SLAPP statue, the award language of which is almost identical to Florida's Anti-SLAPP statue. *Compare* Cal. Civ. Proc. Code § 425.16(c)(1) ("a prevailing defendant on a special motion to strike shall be entitled to *recover that defendant's attorney's fees and costs*" (emphasis added), with § 768.295(4) Fla. Stat. ("court shall award the prevailing party *reasonable attorney fees and costs*" (emphasis added)). Further the *Tobinick* court applied Southern District Court of Florida Local Rule 7.3 to find that movant is required to "document with invoices" all non-taxable expenses. *Tobinick*, 2017 WL 8809365, at *7.

costs of $241,483.61[4] are reasonable and compensable. Machleidt Decl. ¶¶ 52–53; Exs. 14 & 15; Lamkin Decl. ¶¶ 31–33; Ex. 2. Ms. Lamkin should recover these nontaxable costs because they were incurred in the course of defending and preparing for trial of the meritless defamation case.

**E. The Court should set a date by when Mr. Rothschild must comply with his obligation to pay Ms. Lamkin's fees.**

Ms. Lamkin requests that the Court exercise its inherent authority to enforce any fee award by ordering Mr. Rothschild to pay within a specified timeframe. "[A] court has 'inherent authority' to enforce its orders and ensure prompt disposition of legal actions." *Fisher v. Whitlock*, 784 F. App'x 711, 712 (11th Cir. 2019). This authority rests on the principle that courts must have the means to prevent abuse of the judicial process and maintain authority over their orders. *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Trial courts have discretion "to determine when an award of costs imposed as a discovery sanction shall be paid," and setting such payment deadlines "is entirely appropriate." *Olympia Mins. Leasing LLC v. J-Lu Ltd Co LLC*, No. 2:22-CV-05754, 2025 WL 2810963, at *3 (W.D. La. Sept. 26, 2025).

A payment deadline is particularly warranted here given Mr. Rothschild's history of failing to pay court-ordered fee awards. In *Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.*, the court ordered RCDI—an entity controlled by Mr. Rothschild through PAM—to pay fees, but RCDI did not pay because it had an intentionally *de minimis* amount of funds in its bank account ($5.00). No. 2:15-CV-01431-JRG-RSP, 2019 WL 6002198, at *1 (E.D. Tex. Mar. 11, 2019) ("RCDI never paid the attorneys' fee award"). Similarly, in *Rothschild Digital Confirmation, LLC v. CompanyCam*, Case No. 1:19-cv-01109-MN, the court awarded CompanyCam attorneys' fees pursuant to 35 U.S.C. § 285, but RDC—also controlled by Mr. Rothschild through PAM—

[4] Ms. Lamkin requests certain expenses only if the Court does not award those expenses in Ms. Lamkin's Bill of Costs [ECF No. 209]. Lamkin Decl. ¶ 33.

again failed to pay. Mem. Order at 3, No. 1:19-cv-01109 (D. Del. Feb. 23, 2021), ECF No. 45. In both instances, Mr. Rothschild, his companies, and his counsel led the defendants and their lawyers through over a year of intentional delay before ultimately succeeding in the goal of *not paying court-ordered fee awards.* This pattern demonstrates Mr. Rothschild's history of non-compliance with court orders.

A payment deadline serves an important practical purpose: if Mr. Rothschild fails to comply, he would be in contempt of court. The threat of contempt is a far more effective enforcement tool than requiring Ms. Lamkin to pursue costly and protracted Rule 69 discovery—which would only prolong this already meritless litigation and require her to expend additional time and resources to recover what she is owed for defending against a vindictive and frivolous suit. Ms. Lamkin therefore respectfully requests that the Court set a date certain by which Mr. Rothschild must pay.

## IV. CONCLUSION

Ms. Lamkin respectfully requests that the Court grant her Motion for Attorneys' Fees and Costs under Florida's Anti-SLAPP statute.

Dated: October 13, 2026

Respectfully submitted,

*/s/ Brenton H. Cooper*
Brenton H. Cooper
Florida Bar No. 1035909
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, D.C. 20001
T: 202-639-1325
F: 202-639-7890
brent.cooper@bakerbotts.com

Paul R. Elliott
Texas Bar No. 06547500
*Admitted pro hac vice*
**BAKER BOTTS L.L.P.**
910 Louisiana St.
Houston, Texas 77002
T: 713-229-1226
F: 713-229-1522
paul.elliott@bakerbotts.com

Rachael D. Lamkin
*Admitted pro hac vice*
California Bar No. 246066
**BAKER BOTTS L.L.P.**
101 California Street
San Francisco, California 94111
T: 415-291-6264
F: 415-291-6364
rachael.lamkin@bakerbotts.com

Dario A. Machleidt
Washington Bar No. 41860
*Admitted pro hac vice*
Kathleen R. Geyer
Washington Bar No. 55493
*Admitted pro hac vice*
**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
T: 206-224-2857
F: 206-374-2199
dmachleidt@ktslaw.com
kgeyer@ktslaw.com

Kristin M. Adams
Georgia Bar No. 474008
*Admitted pro hac vice*
Karina Glushchak
Georgia Bar No. 233307
*Admitted pro hac vice*
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
T: 404-815-6138
F: 404-541-3233
kmadams@ktslaw.com
kglushchak@ktslaw.com

*Attorneys for Defendant Rachael Lamkin*

## VERIFICATION OF COUNSEL

I have read the foregoing Defendant Rachael Lamkin's Motion for Attorneys' Fees and Costs, and I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13, 2026.

*/s/ Dario A. Machleidt*
Dario A. Machleidt

## CERTIFICATE OF CONFERRAL

I hereby certify that counsel for Ms. Lamkin made a good faith attempt to confer with Plaintiffs in compliance with Local Rules 7.3(a), (a)(8) and (b).

Ms. Lamkin served a copy of her motion and supporting declarations and exhibits on September 11, 2026 through Kiteworks. Kiteworks tracks whether the recipients viewed the message and downloaded the files. According to Kiteworks, counsel for Plaintiffs have never viewed the service message or downloaded the service files.

On September 21, 2026, counsel for Ms. Lamkin emailed counsel for Plaintiffs: "Under Local Rule 7.3(b), the parties are required to meet and confer regarding Ms. Lamkin's request for attorneys' fees before October 2. Please let us know what your availability is to meet and confer next week after we receive any of Plaintiffs' objections as detailed in Local Rules 7.3(a) & (b)."

Counsel for Plaintiffs did not respond to this email, nor did they provide any objections as required in Local Rules 7.3(a) & (b).

On September 25, counsel for Ms. Lamkin emailed counsel for Plaintiffs again: "We have not received a response to our below request. Please let us know what your availability is to meet and confer next week."

Counsel for Plaintiffs did not respond to this email.

On September 29, 2026, in response to an email regarding Plaintiffs' position on Ms. Lamkin's Bill of Costs, counsel for Plaintiffs stated: "For your costs and fees requests/motions, we will oppose and you can note a conferral via email...SML."

In light of Plaintiffs' counsel's representation, none of the issues related to entitlement to fees or amount of fees were resolved by agreement.

*/s/ Dario A. Machleidt*
Dario A. Machleidt

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 13, 2026, a true and correct copy of the above document was provided to all counsel of record through the Court's CM/ECF system.

*/s/ Brenton H. Cooper*
Brenton H. Cooper