**EXHIBIT 9**

Pages 1 - 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JON S. TIGAR, JUDGE

THUNDER POWER NE W ENERGY VEHICLE DEVELOPMENT COMPANY, LIMITED,

Plaintiff,

vs.

BYTON NORTH AMERICA CORPORATION, Et al.,

Defendants.

NO. C 18-03115-JST

San Francisco, California

Tuesday, October 30, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

KILPATRICK TOWNSEND AND STOCKTON LLP
1400 Wewatta Street
Suite 600
Denver, Colorado 80202
**BY: KRISTOPHER L. REED, ESQ.**
**MATTHEW C. HOLOHAN, ESQ.**

KILPATRICK TOWNSEND AND STOCKTON LLP
1420 Fifth Avenue
Suite 4400
Seattle, Washington 98101
**BY: DARIO A. MACHLEIDT, ESQ.**

Reported By: **BELLE BALL, CSR 8785, CRR, RDR**
Official Reporter, U.S. District Court

(Appearances continued, next page)

For Defendants:

WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, North Carolina 27101
**BY: JOHN F. MORROW, JR., ESQ.**

WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street
Suite 1100
Raleigh, North Carolina 27601
**BY: DAVID R. BOAZ, ESQ.**

Also Present:

MATT BARTER, ESQ.
GONG CHEN, ESQ
JESSICA CHUNG, ESQ.



**Tuesday - October 30, 2018** **2:00 p.m.**

**P R O C E E D I N G S**

**THE CLERK:** Calling Civil Case 18-3115, Thunder Power New Energy Vehicle Development Company, Limited, versus Byton North America Corporation, et al.

Counsel, will you please stand and make your appearances.

**MR. REED:** Good afternoon, Your Honor. Kristopher Reed of Kilpatrick Townsend, on behalf of plaintiff Thunder Power.

With me is Matthew Holohan, also of Kilpatrick Townsend, and Dario Machleidt, also of Kilpatrick Townsend.

**THE COURT:** Thank you.

**MR. MORROW:** Good morning, Your Honor, may it please the Court. John Morrow on behalf of the defendants.

Along with me is David Boaz from our law firm; Matt Barter is client representative general counsel for Byton; Gong Chen, also known as "Chen," is in-house IP counsel for Byton; and Jessica Chung is in-house general counsel for Byton as well. Not "the" general counsel, but she kind of does a little bit of everything. As far as I can tell, she does a little bit of everything.

**THE COURT:** General-general counsel.

**MR. MORROW:** Right.

**THE COURT:** Very good. Welcome.

**MR. MORROW:** Thank you.



**THE COURT:** The matter is on calendar this afternoon for two motions, defendant Byton North America Corporation's motion to dismiss and plaintiff Thunder Power's motion for a preliminary injunction. It is also on for initial case-management conference.

I thought it might be helpful for me to do two things. One is to tell you how long our hearing will take, because I know from some email correspondence that was attached to some other email correspondence that at least one of you thinks you have all afternoon, simply by virtue of the fact that there are not other motions on calendar. So the person who thought that will be slightly disappointed.

And the other is to provide you with a tentative ruling with regard to the motions that are in front of me. I don't always do that, but there are so many issues in front of me today I think it would be helpful to focus the parties' efforts on the issues that are likely to make the most difference.

The parties will get 30 minutes a side. It is irrelevant to me how you spend them. We will try to keep loose track as we go along. But you also should keep track, so that you are not unpleasantly surprised by finding out that your time has all expired because you weren't looking at the clock.

I'm likely to grant -- I am likely to find that the patents -- that the plaintiffs' patents are directed to patent-ineligible subject matter, and to grant the motion to

see the cursor moving to the left. There is no leftward movement. So their counter arguments on infringement I think don't carry the day for them.

For the '724 patent, on the validity side, Byton relies on the Tesla patent, the '359. And, very quickly, it does not disclose the automatic switchback feature. They rely on a portion of the patent that says the user can go back to their recorded preferences at any time. That is not the automatic switchback of two panels at a predetermined amount of time. That is the user making the decision.

They also say that turning off the car in the Tesla patent will reset the panels to their original position. Again, as we've pointed out in the briefing, turning off the car is not a predetermined amount of time. That's the amount of time that the driver decides on his or her own. It's not predetermined.

Your Honor, unless you have questions about the likelihood of the success on the merits, I'll very quickly hit the irreparable harm, and then sit down, give it over to my friends at Byton. Does that work for you?

**THE COURT:** It does. Mr. Machleidt.

**MR. MACHLEIDT:** Yes, Your Honor.

**THE COURT:** I hear a lot of arguments in my job, because it's part of the job. You're very good on your feet.

**MR. MACHLEIDT:** Thank you very much, Your Honor.

**THE COURT:** You're welcome.



**MR. MACHLEIDT:** I hope that's enough to convince you to go in our favor, and switch your preliminary ruling, but --

**THE COURT:** You know, without addressing the particular situation that we all find ourselves in, I am -- I do tell my clerks sometimes, that sometimes it isn't enough. They need to remember in their careers that -- well, they need to remember in their day jobs as externs or law clerks that the most excellent lawyering in the world sometimes will not get you there, because the law and the facts will be in your way. Not meaning to suggest anything about today, but I'm just responding to your comment.

But, but the corollary is also true. And that is I -- I want to be able to enjoy good lawyering in whatever environment it occurs. And I rarely comment on someone's argument skills. But yours are very good.

**MR. MACHLEIDT:** Thank you very much, Your Honor.

**THE COURT:** Yeah. Tell me about likelihood -- excuse me. Tell me about irreparable injury, though.

**MR. MACHLEIDT:** Certainly. The irreparable-harm analysis in this case has to take into account the unique position that the parties find themselves in. They are both effectively startup companies, competing in an emerging market, a growing market. They are both working to develop their products.

At the same time, they don't have current customers. They



are trying to build their customer base. They're trying to entice their customers. They need to get money now. They're trying to get investors at the same time. This is a critical period of --

**THE COURT:** Should there be a presumption in favor of a finding of irreparable injury any time I am faced with a startup market?

**MR. MACHLEIDT:** No, Your Honor. I don't think a presumption applies.

**THE COURT:** Me, neither. So why is it, in this particular case, given that a presumption doesn't apply, that I should make a finding that there will be irreparable injury, given the startup condition of the market?

**MR. MACHLEIDT:** Because I think the facts and the context of this situation lead to the conclusion that there is irreparable harm. I don't think it's enough to simply say "startup market," and you're done.

What we have here is a startup market where you have direct competitors in a small market. I submit that this is a two-party -- and they may get up and say Tesla's part of it, too, and we've countered why the Tesla references do not come close to what Thunder Power has developed. But to give them some leeway, I would say at best, this is a two-and-a-half-player market.

When you look at the electric vehicles that are about to



enter the market in terms of this type of technology with this sort of novel user-interface display, this kind of interface aspect, it is a very small market. They are direct competitors. And they are both working very, very hard to get to a U.S. launch not that far out, in the grand scheme of company timing, 2020.

When you look at that situation, I think in this environment, on these facts, that does lead to irreparable harm. Especially when you consider the first-mover advantage that Thunder Power is entitled to, based on its patented technology.

Here, both parties are moving towards launch of 2020. As we've pointed out in the complaint, as we have in our briefing, Byton has already infringed with its concept cars. All evidence indicates that it's ramping up its infringement. That there are more concept cars coming in for testing. Its goal is to obviously launch in 2020.

In this situation, if Byton hits the market first using Thunder Power's technology, Thunder Power loses the ability that is -- that -- loses the ability and the right that it has by its patents to be the first market entrant with this technology.

Your Honor, I know I have been talking for a long time. I think with that, unless you have questions about irreparable harm, those are the key reasons why we believe it exists in

further questions for us, thank you.

**THE COURT:** I don't. It looks like Mr. Reed is on his feet, though.

**MR. REED:** Just one quick issue on the 101 motion. As you review *Aatrix*, I would turn your attention to Pages 5 and 6 of our brief, where we synthesize the allegations in the first amended complaint to assist in seeing what we have alleged, and see how that maps against what Judge Moore said in the *Aatrix* decision.

And also, to the extent after that analysis, Your Honor stills believes that these claims are not patent-eligible and that the allegations are insufficient to meet the *Aatrix* standard, we would renew our request from Footnote 14 of our opposition for leave to amend our complaint to add additional evidence to allegations that go to that issue.

**THE COURT:** Thank you. This is exceedingly well-argued on both sides. Thank you for your arguments this afternoon. I'll take both of these motions under submission.

I don't think it will take me too long to get a ruling out, but I do want to read at least these cases and think about a couple of other things. Thank you.

(Off-the-Record discussion between the Court and Clerk)

**THE COURT:** I'm aware that we have a case-management conference, but I don't think I can know what to do about a schedule until I've resolved the issue of this motion to



dismiss. So let me take that issue under submission also. I did read your case management statement before I took the bench.

Thanks.

(Proceedings concluded)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Belle Ball

/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, November 9, 2018