§UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:24-cv-24669-DPG

LEIGH M. ROTHSCHILD and
ANALYTIC TECHNOLOGIES, LLC,

Plaintiffs,

**JURY TRIAL DEMANDED**

v.

STARBUCKS CORP. and
RACHAEL LAMKIN,

Defendants.

___________________________________

**DECLARATION OF RACHAEL LAMKIN IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Rachael Lamkin, hereby declare as follows:

1. I am a Partner at Baker Botts LLP ("Baker Botts"). I have been admitted *pro hac vice* as counsel in this case and have personal knowledge of the matters set forth in this declaration. If called as a witness, I could and would testify competently as to the following facts.

2. I make this declaration in support of the attorneys' fees and costs that I am requesting in connection with my concurrently filed fee submission relating to the Court's Order adopting the Magistrate Judge's Omnibus Report and Recommendation [ECF No. 194] and finding Ms. Lamkin "is entitled to Attorneys' fees under Florida Anti-SLAPP Statute." [ECF No. 200 at 2]; § 768.295, Fla. Stat.

## I. Ms. Lamkin's Legal Team at Baker Botts

### A. Rachael D. Lamkin

3. I, Rachael D. Lamkin, served as lead counsel on this case through the summary judgment phase of the case. I am a Partner at Baker Botts and have nearly twenty years of experience in intellectual property litigation with a focus on patent litigation. I received a Bachelor of Arts Degree in Philosophy from California State University, Sacramento, cum laude, in 2000. I received my J.D. from the University of California Davis School of Law in 2006.

4. In previous filings with the Court, I've provided some background on my expertise. [ECF No. 91 at 1-3]; *see also* [ECF No. 88 at ¶¶ 1-2.] I am one of the nation's leading patent litigators. Courts have recognized that I have "litigated more than a hundred patent cases and served as lead trial counsel in more than seventy patent cases" and that I "specialize[] in defending companies against patent monetization entities and ha[ve] been repeatedly cited by patent litigation blogs and the Federal Circuit in § 285 [attorneys' fees] decisions." *Rothschild Digital Confirmation LLC v. CompanyCam, Inc.*, No. CV 19-1109 (MN), 2021 WL 706411, at *1 (D. Del. Feb. 23, 2021). In many patent cases, the named plaintiff is an underfunded limited liability company that is judgment-proof by design. This intentional structure often prevents defendants from recovering attorneys' fees after incurring substantial legal expenses. This conduct can, and often does, incentivize many defendants to settle patent lawsuits early for nuisance value, which can, and often does, further incentivize meritless litigation.

5. I have devoted much of my career to changing this perverse incentive structure. In so doing, I have been able to obtain multiple attorneys' fees awards and settlements that alter this incentive structure. For example, in one case in which I served as counsel, a highly litigious

patent monetization entity agreed to a public injunction permanently prohibiting that entity from pursuing future litigation against any California entity.

6. One of the strategies I employ, where appropriate, is a counterclaim under a state's enactment of the Uniform Fraudulent Transfers Act ("UFTA"). When these claims succeed, defendants can enforce attorneys' fees awards not only against the named plaintiff but also against the underlying entity or person who owns and controls the plaintiff.

7. Many patent monetization entities, often referred to as "patent trolls," attempt to avoid litigating against me because of my commitment to minimizing bad-faith litigation. For example, in a federal lawsuit filed by the State of Washington against a patent troll under the Washington Patent Troll Prevention Act, the State's Attorney General recently provided evidence that the alleged patent troll in that case "do[es] all in [its] power to avoid companies represented by patent litigator Rachael Lamkin." [ECF No. 88 at ¶¶ 1–2.]

8. I also apply this expertise to my robust *pro bono* practice that includes defending small companies facing meritless and abusive patent litigation. *Digital Verification Systems, LLC v. Foxit Software, Inc.*, Case No. 4:21-cv-08529-YGR, (N.D. Cal.) is one such example of a pro bono case in which I delivered a highly favorable outcome for my client.

9. In my career as outside counsel, lead counsel, and in-house counsel, I have represented clients in intellectual property matters in federal court, including the Northern, Southern, and Central Districts of California, the Western & Eastern Districts of Texas, Customs, the ITC, the CIT, and the Federal Circuit, and I have coordinated with counsel in the European Union and China where clients have required cross-border collaboration.

10. I have won numerous awards for my work, including being named as a Top Intellectual Property Lawyer by the Daily Journal Litigator in 2024, 2025, and 2026. *See, e.g.*,

*Daily Journal Honors Baker Botts Partners Guy and Lamkin for Excellence in Intellectual Property Law* (Baker Botts Apr. 8, 2025), https://www.bakerbotts.com/news/2025/04/dailyjournal-honors-baker-botts-partners-guy-and-lamkin-for-excellence-in-intellectual-property-law; *Daily Journal Names Guske, Guy and Lamkin 2024 'Top Intellectual Property Lawyers* (Baker Botts May 23, 2024), https://www.bakerbotts.com/news/2024/05/daily-journal-names-guske-guyand-lamkin-2024-top-intellectual-property-lawyers. I was also recognized as one of the recipients of the Women Leaders in Tech Law, Intellectual Property Award in both 2024 and 2025. *Women Leaders in Tech Law, Intellectual Property Honoree: Rachael Lamkin, Baker Botts* (Law.com June 11, 2025), https://www.law.com/therecorder/2025/06/11/women-leaders-in-tech-law-intellectual-property-honoree-rachael-lamkin-baker-botts/ (2025); *Women Leaders in Tech Law Winners (Intellectual Property): Rachael Lamkin* (Law.com Oct. 11, 2024), https://www.law.com/therecorder/2024/10/11/women-leaders-in-tech-law-winners-intellectual-property-rachael-lamkin/.

11. I have also served as patent-curriculum faculty at the Practicing Law Institute for the patent litigation curriculum and volunteer as an adjunct law professor at Southern University School of Law (patent law).

12. I am a co-founder of the Lead Counsel Summit, a training and mentoring academy for women poised to occupy the first chair in patent litigation. *See* Lead Counsel Summit, https://www.leadcounselsummit.com.

**B. Brenton H. Cooper**

13. Mr. Cooper served as local counsel for Defendant Rachael Lamkin throughout the entirety of this case. Before the Kilpatrick Townsend & Stockton LLP ("KTS") team appeared, he was also the primary associate responsible for day-to-day matters. He worked closely with

me and the KTS team on all aspects of the case, including having significant responsibility for fact discovery, motions, and hearings.

14. Mr. Cooper is a Senior Associate at Baker Botts. He received a Bachelor of Arts, summa cum laude, in Economics and Philosophy from Texas A&M University in 2015. He received his J.D. from The University of Chicago Law School in 2018.

15. Mr. Cooper has worked in the legal profession since he graduated law school in 2018. He served as a judicial law clerk for the U.S. Court of Appeals for the Fifth Circuit from 2018 to 2019. Since his clerkship, Mr. Cooper has been engaged in the practice of law in private practice, either at Baker Botts or at Holland & Knight LLP, another international law firm. His practice is focused on litigation, and he has represented clients in numerous different industries in numerous different types of civil cases.

16. Mr. Cooper was admitted to The Florida Bar in April 2022 and has, since that time, practiced frequently in state and federal courts in Florida.

**C. Linus M. Nemiroff**

17. Mr. Nemiroff assisted with fact discovery, dispositive motion practice, pre-trial, and trial preparation.

18. Mr. Nemiroff is an associate at Baker Botts. He received a Bachelor of Science Degree in Physics from the University of Maryland in 2021. He received his J.D. from the University of California Davis School of Law in 2024. Since 2024, he has practiced as an intellectual property litigator (with a focus on patent litigation) in the greater San Francisco Bay Area.

**D. Jessica M. Joyce**

19. Jessica M. Joyce is a paralegal at Baker Botts. She was responsible for preparing and finalizing many of the filings in this case, organizing records for fact discovery, and coordinating numerous aspects of the case.

20. Ms. Joyce holds a Bachelor of Arts from Sam Houston State University and a Paralegal Studies Advanced Technical Certificate from the ABA-accredited paralegal program at the Lone State College System in Texas. Ms. Joyce has worked as a Litigation Paralegal for over eight years, beginning in 2018 at Winstead PC, a leading Texas-based law firm with national practices serving clients across the country, before moving with her team to Perkins Coie LLP, a leading international law firm, in 2022. She joined Baker Botts as a Litigation Paralegal in 2025.

21. Ms. Joyce is skilled in maintaining records of client work, monitoring and tracking statutory and court-imposed deadlines, and coordinating discovery, fact-finding, and legal research, and summarizing key information for attorney review.

22. Ms. Joyce's prior litigation experience includes supporting lawyers and clients in complex litigation, fiduciary litigation, and taxpayer defense matters involving complex asset ownership and valuation disputes, including extensive experience preparing materials for hearings, depositions, arbitrations, and trials, as well as drafting pleadings, motions, and orders for Texas and federal courts.

**II. <u>The Baker Botts Law Firm</u>**

23. Baker Botts is an international law firm and has more than 600 attorneys worldwide across 12 global offices, including over 100 attorneys and patent professionals dedicated to intellectual property matters. Baker Botts has an award-winning intellectual property practice. Examples of recent awards and recognitions won by Baker Botts include:

a. Law360's Intellectual Property Practice Group of the Year for 2023 and 2025;

b. Chambers USA 2025 ranked Baker Botts Intellectual Property Department with 11 practice rankings and 15 individual lawyer rankings;

c. *Texas Lawyer* named Baker Botts as Intellectual Property Litigation Department of the Year.

## III. <u>Ms. Lamkin's Fees and Expenses from Baker Botts</u>

24. Ms. Lamkin supports her request for fees and costs using the contemporaneous time records of its counsel for legal services and costs rendered by Baker Botts in this lawsuit (Ex. 1). Because Ms. Lamkin represented herself along with other Baker Botts lawyers (and, later, KTS lawyers), Baker Botts did not create invoices for the time worked. Baker Botts timekeepers contemporaneously recorded their time and task descriptions in Baker Botts' timekeeping system, Intapp, under a unique matter number assigned to this litigation. Exhibit 1 is a true and correct copy of the time entries billed to that matter number generated from Intapp.

25. The work reflected in Exhibit 1 was necessary and reasonable for this type of litigation. The amount of work shown, the description of tasks, and the value of the work reflected in Exhibit 1 is true and correct.

26. The information referenced within this Declaration and shown in Exhibit 1 does not include any time worked by Paul R. Elliott, the General Counsel of Baker Botts. Mr. Elliott provided high-level oversight of all phases of the litigation, including providing feedback on case strategy and trial preparation.

27. The following **<u>Table 1</u>** provides the hourly rate and the total hours each timekeeper has thus far devoted to Ms. Lamkin's case. These hours are reflected in Exhibit 1.

The column titled "Reduced Total Hours Billed" reflects the exclusions/cuts/reductions described in Paragraph 29 of this Declaration.

**Table 1: Lead Litigation Team**

| **Name** | **Role** | **Hourly Rate (2024)** | **Hourly Rate (2025)** | **Hourly Rate (2026)** | **Total Hours Billed** | ***Reduced Total Hours Billed*** |
|---|---|---|---|---|---|---|
| Rachael D. Lamkin | Partner | N/A | $1,445 | $1,610 | 420.4 | 381.7 |
| Brenton H. Cooper | Senior Associate | $1,105 | $1,230 | $1,390 | 497.0 | 421.2 |
| Linus M. Nemiroff | Associate | N/A | $715 | $965 | 155.2 | 146.6 |
| Jessica M. Joyce | Paralegal | N/A | $465 | $495 | 42.5 | 36.3 |

28. The redactions in the Exhibit 1 are for information subject to a privilege or other applicable protection. For fully redacted time entries that Ms. Lamkin includes in her request for fees, Ms. Lamkin provides a non-privileged description of those tasks.

29. Exhibit 1 has been annotated with blue highlighting to time entries or descriptions to indicate work that Ms. Lamkin voluntarily excludes from her request for attorneys' fees. These excluded entries include, but are not limited to:

a. Time entries related to work performed that related solely to Ms. Lamkin's abuse of process counterclaim and proposed FUFTA counterclaim. Where the time entry itemized time spent on individual tasks, Ms. Lamkin excludes only the itemized time spent on abuse-of-process or FUFTA-related tasks;

b. Time entries for clerical or ministerial tasks;

c. Time entries for Ms. Lamkin's withdrawn Motion for Sanctions [ECF No. 145]; *see also* [ECF No. 147 (Notice of Withdrawal)]; and

d. Time entries for time worked by various paralegals who provided support for the case, including Yana Makarova, Larissa Soboleva, and Marco Gieguere, who assisted with tasks similar to Ms. Joyce, described above.

30. Exhibit 1 has been annotated with yellow highlighting to time entries that reflect work that only partially relates to abuse-of-process or FUFTA-related tasks, is only partially clerical or ministerial, or only partially relates to Ms. Lamkin's withdrawn Motino for Sanctions. Ms. Lamkin discounts yellow-highlighted time entries by 50 percent.

31. In total, the value of the work reflected in Exhibit 1 amounts to $1,409,168.50, prior to taking into account the above exclusions. Accounting for the exclusions listed above, Ms. Lamkin seeks to recover $1,230,099.07.

32. Baker Botts has also incurred various costs in connection with this action. Those costs are reflected in Exhibit 2-A, which is a true and correct copy of the output generated for this matter from the software system in which Baker Botts tracks costs associated with a given matter. As reflected in Exhibit 2-A, the costs incurred in this action included those associated with necessary and reasonable travel, depositions, and administrative costs. In Exhibit 2-A, a description of each entry of costs is shown. Exhibit 2-B is a collection of the original invoices and receipts documenting each of these of these costs.

33. Exhibit 2-A redacts costs for which Ms. Lamkin is voluntarily not seeking recovery. Exhibit 2-A also highlights in yellow costs that are documented by invoices attached to Ms. Lamkin's Application for Bill of Costs [ECF No. 209]. The costs sought by the Application for Bill of Costs is sought in connection with this Motion only to the extent that the Court holds that those costs are not taxable under 28 U.S.C. § 1920.

34. Not including the redacted costs or the highlighted costs, the total amount of costs incurred by Baker Botts as shown in Exhibit 2 is $43,265.13. Ms. Lamkin seeks recovery of this amount in costs incurred by Baker Botts.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 13, 2026

Rachael D. Lamkin

Attorney for Defendant
Rachael Lamkin